## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COGNIPOWER LLC, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Case No.: _____ |
| | : |
| FANTASIA TRADING LLC D/B/A | : JURY TRIAL DEMANDED |
| ANKERDIRECT and | : |
| ANKER INNOVATIONS LIMITED, | : |
| | : |
| Defendants. | : |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff CogniPower LLC ("CogniPower" or "Plaintiff") files this Complaint against Defendants Fantasia Trading LLC d/b/a AnkerDirect and Anker Innovations Limited (collectively, "Anker" or "Defendant") and alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq*.  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

## THE PARTIES

2.      Plaintiff CogniPower is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 3217 Phoenixville Pike, Malvern, Pennsylvania 19355.

3.      CogniPower is committed to inventing better, more efficient power converters by re-examining accepted wisdom regarding power converters in light of new control technology, improved components, new semiconductor process technologies, and changing economics driven by energy cost and availability.  CogniPower's robust and growing patent portfolio continues to

1

be the basis for fundamental improvements in how effectively and efficiently power is transformed.

4.      Upon information and belief, Fantasia Trading LLC d/b/a AnkerDirect is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 9155 Archibald Avenue, Suite 202, Rancho Cucamonga, California 91730, and can be served through its registered agent Business Filings Incorporated at 108 W. 13th Street, Wilmington, Delaware 19801.

5.      Upon information and belief, Anker Innovations Limited is a Hong Kong company with a principal place of business at Room 1318-19, Hollywood Plaza, 610 Nathan Road, Mongkok, Kowloon, Hong Kong SAR, People's Republic of China, and can be served at this address.  Upon information and belief, Anker Innovations Limited was formerly known as Anker Technology Co. Ltd.

6.      Upon information and belief, Fantasia Trading LLC is the account holder for the AnkerDirect Amazon storefront which lists various consumer electronics for sale, including wireless chargers, car chargers, portable chargers, and wall chargers.  Upon information and belief, Fantasia Trading LLC ships products in bulk to Amazon in anticipation of consumer purchases on Amazon.com.

7.      Upon information and belief, Fantasia Trading LLC owns and operates anker.com (the "Anker Website").  Upon information and belief, the Anker Website is hosted by Amazon Web Services.

8.      Upon information and belief, Fantasia Trading LLC fulfills orders completed on the Anker Website by shipping products from Fantasia's warehouse in California to consumers.

9.     Upon information and belief, Power Mobile Life, LLC, is a limited liability company organized under the laws of the State of Washington with its principal place of business at 400 108th Ave. NE, Suite 400, Bellevue, Washington 98004 and can be served through its registered agent Meng Yang at 400 108th Ave. NE, Suite 400, Bellevue, Washington 98004.

10.    Upon information and belief, Power Mobile Life, LLC, owns and operates an Amazon storefront under the name "EufyHome" to sell smart home devices and appliances.

11.    Upon information and belief, Anker Technology Corporation was a corporation organized under the laws of the State of Delaware with its principal place of business at 113 Barksdale Professional Center, Newark, Delaware 19711.  Upon information and belief, Anker Technology Corporation was dissolved on December 22, 2015.

12.    Upon information and belief, Anker Holding Ltd. is a Cayman Islands entity.

13.    Upon information and belief, Anker Innovations Technology Co. Ltd. is a Chinese corporation with its principal place of business at Room 701 7/F Unit 1, Changsha Zhongdian, Software Park CO L, Changsha, Hunan 410205, People's Republic of China.  Upon information and belief, Anker Innovations Technology Co. Ltd. was formerly known as Hunan Oceanwing E-commerce, Co., Ltd.

14.    Upon information and belief, Fantasia Trading LLC is a wholly owned subsidiary of Anker Innovations Limited.

15.    Upon information and belief, Power Mobile Life, LLC, is a wholly owned subsidiary of Anker Innovations Limited.

16.    Upon information and belief, Anker Technology Corporation was a wholly owned subsidiary of Anker Innovations Limited.

17.    Upon information and belief, Anker Innovations Limited is a wholly owned subsidiary of Anker Holding Ltd.

18.    Upon information and belief, Anker Holding Ltd. is a wholly owned subsidiary of Anker Innovations Technology Co. Ltd.

19.    Upon information and belief, Romeo Luo is a Sales Director for the Southeast Asia & Oceania Regional Sales Office of Anker Innovations Limited.

20.    Upon information and belief, Mr. Luo has access to at least documents prepared in the ordinary course of business from Anker Innovations Limited, Anker Technology Corporation, Power Mobile Life, LLC, and Fantasia Trading, LLC.

## JURISDICTION AND VENUE

21.    This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq*.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

22.    Defendant Fantasia Trading LLC is subject to this Court's general and specific personal jurisdiction due to its incorporation in the State of Delaware and the substantial business it does in this forum.

23.    With respect to Defendant Fantasia Trading LLC, venue is proper in this judicial district under 28 U.S.C. § 1400(b) because Defendant is incorporated in and is a resident of this district.

24.    Defendant Anker Innovations Limited is subject to this Court's specific personal jurisdiction due to its continuous and systematic contacts with the State of Delaware.  For example, upon information and belief, Anker Innovations Limited designed and manufactured the Accused Products for export and sale throughout the world, including Delaware and the rest of the United

States.  Upon information and belief, Anker Innovations Limited sold the Accused Products throughout the United States including Delaware directly or through its subsidiaries, including Fantasia Trading LLC.

25.    With respect to Defendant Anker Innovations Limited, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(c)(3).  *See, e.g.*, *In re HTC Corp.*, 889 F.3d 1349, 1354 (Fed. Cir. 2018).

## JOINDER

26.    Anker Innovations Limited and Fantasia Trading LLC are properly joined under 35 U.S.C. § 299(a)(1) because a right to relief is asserted against these parties jointly, severally, and in the alternative with respect to the same transactions, occurrences, or series of transactions or occurrences relating to the making, using, importing into the United States, offering to sell, and/or selling the same Accused Products.  Specifically, as alleged in detail below, Anker Innovations Limited and Fantasia Trading LLC are alleged to infringe the Patents-in-Suit with respect to the same products as described hereinafter.

27.    Anker Innovations Limited and Fantasia Trading LLC are properly joined under 35 U.S.C. § 299(a)(2).  Common questions of fact that will arise include, for example, whether the Accused Products have features that meet the limitations of one or more claims of the Patents-in-Suit, and what damages are adequate to compensate the owner of the Patents-in-Suit for infringement.

28.    At least one right to relief is asserted against Anker Innovations Limited and Fantasia Trading LLC jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering to sell, or selling of the same Accused Products.

## PATENTS-IN-SUIT

29.    CogniPower is the owner and assignee of U.S. Reissue Patent No. RE47,031 (the "`031 Patent"), entitled "Power converter with demand pulse isolation."  A true and correct copy of the `031 Patent is attached as Exhibit "A."

30.    The `031 Patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

31.    CogniPower is the owner and assignee of U.S. Reissue Patent No. RE47,713 (the "`713 Patent"), entitled "Power converter with demand pulse isolation."  A true and correct copy of the `713 Patent is attached as Exhibit "B."

32.    The `713 Patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

33.    The `031 and `713 Patents are collectively the "Patents-in-Suit."

## ACCUSED PRODUCTS

34.    Upon information and belief, Defendant makes, uses, offers to sell, sells, and/or imports charging technology, including wireless chargers, car chargers, portable chargers, and wall chargers.  Such products include but are not limited to Anker's PowerPort Atom PD 1, PowerPort Atom PD 2, Power Port Atom III Slim, PowerPort+ 1, Power Port C1, PowerPort PD 2, 18W Power Delivery USB C, 60W Compact, Slim 30W, and 60W Multiport chargers and any other similar products (collectively, the "Accused Products") that incorporate circuitry providing demand pulse regulation such as a Power Integrations InnoSwitch or LytSwitch-6 chip.

## COUNT I
### (Infringement of the `031 Patent)

35.    CogniPower alleges and hereby incorporates by reference every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

6

36.     The `031 Patent is presumed valid.

37.     In violation of 35 U.S.C. § 271, Defendant has directly infringed and continues to directly infringe, both literally and/or under the doctrine of equivalents, the `031 Patent by making, using, offering for sale, selling, and/or importing the Accused Products in the United States, including within this District, which Accused Products infringe at least independent claims 1, 10, 18, and 64, and dependent claims 2, 5-6, 8, 11-12, 19-21, 23-27, 29, 31-33, 36-40, 42, 44-46, 49, 50-55, 57, 59, and 60-61 of the `031 Patent without the authority of CogniPower.

38.     The following descriptions focus on Anker's PowerPort+ 1 and PowerPort Atom PD 1 chargers, exemplar Accused Products.



Fig. 1 (Anker PowerPort+ 1 Charger Box)

59788/0001-18722673v1



Fig. 2 (Anker PowerPort Atom PD 1 Charger Box)

59788/0001-18722673v1

39.     Upon information and belief, the Accused Products include a flyback switched-mode power converter.  For example:




Fig. 3 (Anker PowerPort+ 1 Charger; InnoSwitch SC1271K Datasheet, p. 1)[1]




Fig. 4 (Anker PowerPort Atom PD 1 Charger; InnoSwitch3-CP Datasheet, p. 1)[2]

---

[1] A true and correct copy of the InnoSwitch SC1271K Datasheet is attached hereto as Exhibit "C."

[2] A true and correct copy of the InnoSwitch3-CP Datasheet is attached hereto as Exhibit "D."

40.    Upon information and belief, the Accused Products have a primary side with an input port that receives power.  For example:



Fig. 5 (InnoSwitch SC1271K Datasheet, Ex. C, p. 1; Anker PowerPort+ 1 Charger)



Fig. 6 (InnoSwitch3-CP Datasheet, Ex. D, p. 1; Anker PowerPort Atom PD 1 Charger)

41.    Upon information and belief, the Accused Products have a secondary side with an output port.  For example:



Fig. 7 (Anker PowerPort+ 1 Charger; InnoSwitch SC1271K Datasheet, Ex. C, p. 1)



Fig. 8 (Anker PowerPort Atom PD 1 Charger; InnoSwitch3-CP Datasheet, Ex. D, p. 1)

42.     Upon information and belief, the Accused Products have a power transformer that transfers input power to the output port.  *See, e.g.*, Figs. 3-4 above.

43.     Upon information and belief, the Accused Products include circuitry that controls the flyback converter.  For example, upon information and belief, the Accused Products include a Power Integrations InnoSwitch chip.  For example:



Fig. 9 (Anker PowerPort+ 1 Charger Internals)

11



Fig. 10 (Anker PowerPort Atom PD 1 Charger Internals)

44.     Upon information and belief, this control circuitry includes both primary-side and secondary-side circuitry.  For example:



Fig. 11 (InnoSwitch SC1271K Datasheet, Ex. C, p. 1)



Fig. 12 (InnoSwitch3-CP Datasheet, Ex. D, p. 1)

45.    Upon information and belief, the secondary side of the Accused Products are isolated from the primary side.  For example:



Fig. 13 (InnoSwitch SC1271K Datasheet, Ex. C, p. 1)

59788/0001-18722673v1

46.    Upon information and belief, the primary side of the Accused Products have a switch that can selectively transfer input power to the output port.  For example:



Fig. 14 (InnoSwitch SC1271K Datasheet, Ex. C, p. 2; InnoSwitch3-CP Datasheet, Ex. D, p. 2)

47.    Upon information and belief, the secondary side of the Accused Products have circuitry that generates demand pulses to adjust the switching frequency of the primary-side switch to control the output power.  For example:



59788/0001-18722673v1

### InnoSwitch3-CP Functional Description

conduction mode (DCM). <mark>The controller uses both variable frequency and variable current control schemes.</mark> The primary controller consists of a frequency jitter oscillator, a receiver circuit magnetically coupled to the secondary controller, a current limit controller, 5 V regulator on the PRIMARY BYPASS pin, audible noise reduction engine for light load operation, bypass overvoltage detection circuit, a lossless input line sensing circuit, current limit selection circuitry, over-temperature protection, leading edge blanking, secondary output diode / SR FET short protection circuit and a 650 V / 725 V power switch.

The InnoSwitch3-CP secondary controller consists of a transmitter circuit that is magnetically coupled to the primary receiver, a constant voltage (CV) and a constant current (CC) control circuit, a 4.4 V regulator on the SECONDARY BYPASS pin, synchronous rectifier FET driver, QR mode circuit, oscillator and timing circuit, and numerous integrated protection features.



Figure 7.    Normalized Primary Current vs. Frequency.

Fig. 15 (InnoSwitch3-CP Datasheet, Ex. D, pp. 3, 4, 6)

48.     Upon information and belief the primary-side switch turns on in response to the demand pulses from the secondary side, and the primary-side circuitry determines when to turn off the switch.  For example:



Fig. 16 (InnoSwitch SC1271K Datasheet, Ex. C, pp. 2)

59788/0001-18722673v1



Fig. 17 (InnoSwitch3-CP Datasheet, Ex. D, pp. 2, 4)

**Current Limit Operation**

The primary-side controller has a current limit threshold ramp that is linearly decreasing to the time from the end of the previous primary switching cycle (i.e. from the time the primary switch turns off at the end of a switching cycle).

This characteristic produces a primary current limit that increases as the switching frequency (load) increases (Figure 7).

This algorithm enables the most efficient use of the primary switch with the benefit that this algorithm responds to digital feedback information immediately when a feedback switching cycle request is received.

At high load, switching cycles have a maximum current approaching 100% $I_{LIM}$.  This gradually reduces to 30% of the full current limit as load decreases.  Once 30% current limit is reached, there is no further reduction in current limit (since this is low enough to avoid audible noise). The time between switching cycles will continue to increase as load reduces.

49.     Upon information and belief, the secondary-side circuitry includes a capacitor and rectifier poled to charge the capacitor during forward pulses of the flyback converter, and the

secondary-side circuitry uses the energy stored in the capacitor to generate the demand pulses. For example:

> During CC operation, when the output voltage falls, the device will directly power itself from the secondary winding. During the on-time of the primary-side power switch, the forward voltage that appears across the secondary winding is used to charge the decoupling capacitor C10 via resistor R13 and an internal regulator. This allows

Fig. 18 (InnoSwitch3-CP Datasheet, Ex. D, p. 9)

50.     Upon information and belief, Anker provides its users with instructions on how to use the Accused Products. For example:



Fig. 19 (Anker PowerPort Atom PD 1 Charger User Manual)

51.     Upon information and belief, all of the Accused Products operate in a similar manner as Anker's PowerPort+ 1 and PowerPort Atom PD 1 chargers.

52.     Accordingly, Anker has directly infringed and continues to directly infringe the `031 Patent, both literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing into the United States the Accused Products without the authority of CogniPower.

53.     Anker has been on notice of the `031 Patent since at least the filing of this Complaint.

54.     In violation of 35 U.S.C. § 271(b), Defendant has indirectly infringed the `031 Patent by inducing its customers to directly infringe the `031 Patent, both literally and/or under the doctrine of equivalents, at least by providing its customers with instructions on using the Accused Products and by making, using, offering for sale, selling, and/or importing the Accused Products in the United States without the authority of CogniPower. *See, e.g.*, Fig. 19 above.

55.     Unless enjoined by this Court, Anker will continue to infringe the `031 Patent.

56.     Because of Anker's infringing activities, CogniPower has suffered damages and will continue to suffer damages in the future.

## COUNT II
### (Infringement of the `713 Patent)

57.     CogniPower alleges and hereby incorporates by reference every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

58.     The `713 Patent is presumed valid.

59.     In violation of 35 U.S.C. § 271, Defendant has directly infringed and continues to directly infringe, both literally and/or under the doctrine of equivalents, the `713 Patent by making, using, offering for sale, selling, and/or importing the Accused Products in the United States, including within this District, which Accused Products infringe at least independent claims 18 and 48, and dependent claims 19-28, 31-36, 38, 40-43, 45, and 49-51 of the `713 Patent without the authority of CogniPower.

60.     The following descriptions focus on Anker's PowerPort+ 1 and PowerPort Atom PD 1 chargers, exemplar Accused Products. *See, e.g.*, Figs. 1-2 above.

61.     Upon information and belief, the Accused Products include a flyback switched-mode power converter. *See, e.g.*, Figs. 3-4 above.

62.     Upon information and belief, the Accused Products have a primary side with an input port that receives power. *See, e.g.*, Figs. 5-6 above.

63.     Upon information and belief, the Accused Products have a secondary side with an output port. *See, e.g.*, Figs. 7-8 above.

64.     Upon information and belief, the Accused Products have a power transformer that transfers input power to the output port. *See, e.g.*, Figs. 3-4 above.

65.     Upon information and belief, the Accused Products include circuitry that controls the flyback converter. For example, upon information and belief, the Accused Products include a Power Integrations InnoSwitch chip. *See, e.g.*, Figs. 9-10 above.

66.     Upon information and belief, this control circuitry includes both primary-side and secondary-side circuitry. *See, e.g.*, Fig. 11-12 above.

67.     Upon information and belief, the secondary side of the Accused Products are isolated from the primary side. *See, e.g.*, Fig. 13 above.

68.     Upon information and belief, the primary side of the Accused Products have a switch that can selectively transfer input power to the output port. *See, e.g.*, Fig 14 above.

69.     Upon information and belief, the secondary side of the Accused Products have circuitry that generates demand pulses to adjust the switching frequency of the primary-side switch to control the output power. *See, e.g.*, Fig. 15 above.

70.    The demand pulse generator includes an oscillator that generates pulses that may be selectively blocked and includes a comparator that compares a feedback signal based on the output voltage or output current to a reference signal.



Fig. 20 (InnoSwitch SC1271K Datasheet, Ex. C, pp. 2)



Fig. 21 (InnoSwitch3-CP Datasheet, Ex. D, pp. 2)

71.    Upon information and belief the primary-side switch turns on in response to the demand pulses from the secondary side, and the primary-side circuitry determines when to turn off the switch. *See, e.g.*, Figs. 16-17 above.

72.    Upon information and belief, the secondary-side circuitry includes a capacitor and rectifier poled to charge the capacitor during forward pulses of the flyback converter, and the secondary-side circuitry uses the energy stored in the capacitor to generate the demand pulses. *See, e.g.*, Fig. 18 above.

73.    Upon information and belief, Anker provides its users with instructions on how to use the Accused Products. *See, e.g.*, Fig. 19 above.

74.    Upon information and belief, all of the Accused Products operate in a similar manner as Anker's PowerPort+ 1 and PowerPort Atom PD 1 chargers.

75.    Accordingly, Anker has directly infringed and continues to directly infringe the `713 Patent, both literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the Accused Products in the United States without the authority of CogniPower.

76.    Anker has been on notice of the `713 Patent since at least the filing of this Complaint.

77.    In violation of 35 U.S.C. § 271(b), Defendant has indirectly infringed the `713 Patent by inducing its customers to directly infringe the `713 Patent, both literally and/or under the doctrine of equivalents, at least by providing its customers with instructions on using the Accused Products and by making, using, offering for sale, selling, and/or importing the Accused Products in the United States without the authority of CogniPower. *See, e.g.*, Fig. 19 above.

78.    Unless enjoined by this Court, Anker will continue to infringe the `713 Patent.

79.     Because of Anker's infringing activities, CogniPower has suffered damages and will continue to suffer damages in the future.

## MARKING

80.     CogniPower has complied with the requirements of 35 U.S.C. § 287(a).

## DEMAND FOR JURY TRIAL

81.     Pursuant to Fed. R. Civ. P. 38, CogniPower demands a trial by jury of all causes of action that are so triable.

## PRAYER FOR RELIEF

WHEREFORE, CogniPower respectfully requests that this Court enter judgment for CogniPower and against Defendant as follows:

A.      An adjudication that Defendant has infringed the Patents-in-Suit;

B.      An award of damages to be paid by Defendant adequate to compensate CogniPower for Defendant's past infringement of the Patents-in-Suit and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses, and an accounting of all infringing acts;

C.      An order requiring Defendant to pay an ongoing royalty in an amount to be determined for any continued infringement after the date judgment is entered;

D.      If no ongoing royalty after judgment is awarded, a permanent injunction;

E.      An award to CogniPower of such further relief at law or in equity as the Court deems just and proper.

59788/0001-18722673v1

COLE SCHOTZ P.C.

*/s/ Bradley P. Lehman*
Michael F. Bonkowski (No. 2219)
Bradley P. Lehman (No. 5921)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
(302) 652-3131 (Telephone)
(302) 652-3117 (Facsimile)
mbonkowski@coleschotz.com
blehman@coleschotz.com

*Attorneys for Plaintiff,*
*CogniPower LLC*

OF COUNSEL:

Gary R. Sorden
Texas Bar No. 24066124
gsorden@coleschotz.com
Timothy J.H. Craddock
Texas Bar No. 24082868
tcraddock@coleschotz.com

COLE SCHOTZ, P.C.
901 Main Street, Suite 4120
Dallas, Texas 75202
Tel: (469) 557-9390
Fax: (469) 533-1587

Dated:  December 18, 2019

59788/0001-18722673v1