IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| COGNIPOWER LLC, | |
| Plaintiff, | |
| v. | C.A. No. 19-cv-02293-CFC |
| FANTASIA TRADING LLC D/B/A ANKERDIRECT and ANKER INNOVATIONS LIMITED, | |
| Defendants. | |

**OPENING BRIEF IN SUPPORT OF DEFENDANT FANTASIA TRADING LLC D/B/A ANKERDIRECT'S MOTION TO STAY**

Warren K. Mabey, Jr. (#5775)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE  19801
302-652-5070
mabey@fr.com

*Attorney for Defendant*
*Fantasia Trading, LLC d/b/a AnkerDirect*

Dated:  February 10, 2020

# TABLE OF CONTENTS

I.   NATURE AND STAGE OF THE PROCEEDINGS ..........................1

II.  INTRODUCTION AND SUMMARY OF THE
     ARGUMENT ..................................................................................2

III. STATEMENT OF FACTS ...............................................................3

     A.   The Patents at Issue, CogniPower's Complaint, and the
          Accused Functionality ..........................................................3

     B.   PI's Declaratory-Judgment Action............................................7

IV.  LEGAL STANDARD ........................................................................9

V.   ARGUMENT....................................................................................10

     A.   All Three Traditional Factors Weigh in Favor of
          Granting a Stay........................................................................10

          1.   Staying This Case While PI's Action Proceeds
               Will Simplify the Issues for Trial ................................10

          2.   Discovery Is in the Early Stages and No Trial
               Date Is Set .....................................................................14

          3.   Granting a Stay Would Not Subject CogniPower
               to Undue Prejudice or any Clear Tactical
               Disadvantage ................................................................14

     B.   The Customer-Suit Exception Also Favors a Stay.................17

          1.   Anker Is the Mere "Reseller" of the Accused
               Chips ..............................................................................17

          2.   All Parties Will Be Bound by Any Infringement
               Finding in the PI Action................................................18

          3.   PI Is the Sole Source of the Accused Chips.................19

VI.  CONCLUSION................................................................................20

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Glenayre Elecs., Inc. v. Jackson*,
   443 F.3d 851 (Fed. Cir. 2006) ...........................................................................15

*In re Google Inc.*,
   588 F. App'x 988 (Fed. Cir. 2014) .............................................................11, 12

*Infinite Data LLC v. Amazon.com Inc.*,
   No. 12-1616-RGA, 2014 WL 266798 (D. Del. Jan. 23, 2014) .........................20

*Katz v. Lear Siegler, Inc.*,
   909 F.2d 1459 (Fed. Cir. 1990) ...........................................................10, 12, 13

*Landis v. North Am. Co.*,
   299 U.S. 248 (1936)........................................................................................9, 17

*Pragmatus Telecom, LLC v. Advanced Store Co., Inc.*,
   2012 WL 2803695 (D. Del. July 10, 2012) ...............................................*passim*

*Rothschild Mobile Imaging Innovations, LLC v. Mitek Sys., Inc.*,
   No. 14-617-GMS, 2015 WL 4624164 (D. Del. July 31, 2015).................*passim*

*Sequoia Tech., LLC v. Dell, Inc.*,
   No. 18-1127 (LPS) (CJB) (D. Del. Oct. 17, 2019)................................10, 13, 18

*Spectrum Pharm., Inc. v. Innopharma, Inc.*,
   No. 12-260-RGA-CJB, 2015 WL 3374922 (D. Del. May 22, 2015),
   *report and recommendation adopted*, No. 12-260-RGA,
   2015 WL 4634827 (D. Del. Aug. 4, 2015).......................................................19

*Vehicle IP, LLC v. Wal-Mart Stores, Inc.*,
   No. 10-503-SLR, 2010 WL 4823393 (D. Del. Nov. 22, 2010).....................9, 16

Fantasia Trading LLC d/b/a AnkerDirect ("Anker")[1] respectfully moves to stay this action pending resolution of a related declaratory-judgment action brought by Anker's supplier, Power Integrations, Inc. ("PI").  The circumstances here satisfy all of the factors for granting a stay under both this Court's traditional stay analysis as well as the specific "customer suit exception" cases.

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff CogniPower LLC ("CogniPower") filed the present action on December 18, 2019, asserting U.S. Reissue Patents RE47,031 and RE47,713 (the '031 and '713 patents, respectively).  According to CogniPower's complaint, the accused products all "incorporate circuitry providing demand pulse regulation such as a Power Integrations InnoSwitch or LytSwitch-6 chip."  (D.I. 1, ¶ 34.)  Anker's response to CogniPower's complaint is now due February 10, 2020.  (*See* D.I. 6.) Discovery has not begun, and no trial date has been scheduled.

On January 6, 2020, PI filed a declaratory-judgment action in this district against CogniPower regarding the '031 and '713 patents and related U.S. Reissue Patent RE47,714, and also asserting two of PI's own patents (hereafter the "PI Action").  The PI Action has been assigned to Judge Noreika and given case number 1:20-cv-00015-MN.  On January 10, 2020, the Court granted the parties'

---

[1]   Named Defendant Anker Innovations Limited has not been served with the Complaint.

1

stipulation extending CogniPower's time to respond to PI's complaint until February 27, 2020.  (*See* PI Action, D.I. 6.)

## II.      INTRODUCTION AND SUMMARY OF THE ARGUMENT

This Court should stay the present customer action, brought by CogniPower for alleged infringement of the '031 and '731 patents by circuitry incorporating PI chips, until resolution of the co-pending declaratory action brought by PI. CogniPower's complaint alleges infringement based on functionality provided by chips that are sold by PI, who also designed, developed, and is ultimately responsible for the accused circuitry.  According to CogniPower's complaint, the '031 and '731 patents can only be infringed (if they are infringed at all) through use of PI's chips.  As the basis for its infringement allegations, CogniPower's complaint also cites exclusively to documents describing circuitry in PI's chips, including PI's datasheets.

For this reason, PI filed a declaratory-judgment action to protect its customers—both Anker and those that may be targets in the future (including other PI customers that CogniPower has been harassing with accusations of infringement outside of court)—and PI seeks to resolve the dispute in a single lawsuit.  (*See* PI Action, D.I. 1.)  Given CogniPower's focus on PI's chips, CogniPower's counterclaim for infringement against PI in the PI Action will undoubtedly be substantively identical to CogniPower's claims against Anker.  Accordingly, Anker

respectfully submits that this Court should stay this customer suit pending the PI declaratory-judgment suit rather than litigate the same issues *seriatim* against every PI customer, whether currently sued or to be sued in the future.

The issues of whether PI's chips meet the limitations of the asserted claims will be the same across all lawsuits.  CogniPower's decision to identify Anker's products as "accused products" makes no difference to whether the PI chips meet the limitations of the claims—Anker does not modify or customize the PI chips included in its products.

Likewise, the issue of damages should be resolved by the PI declaratory-judgment action.  Under well-settled law, CogniPower cannot recover twice for the same alleged infringement.

In view of the efficiencies in resolving all customers' alleged liability in a single suit, Anker respectfully submits that the Court should grant its Motion to Stay pending the outcome of PI's declaratory-judgment action, under either or both of two well-established legal standards.

## III.    STATEMENT OF FACTS

### A.    The Patents at Issue, CogniPower's Complaint, and the Accused Functionality

The '031 and '713 patents are both entitled "Power converter with demand pulse isolation."  (D.I. 1, Exs. A and B.)  CogniPower asserts claims 1, 10, 18, and 64, and dependent claims 2, 5-6, 8, 11-12, 19-21, 23-27, 29, 31-33, 36-40, 42, 44-

46, 49, 50-55, 57, 59, and 60-61 of the '031 Patent, along with claims 18 and 48, and dependent claims 19-28, 31-36, 38, 40-43, 45, and 49-51 of the '713 Patent. (D.I. 1, ¶¶ 37, 59.) Consistent with the title of the patents, all of the asserted claims reference demand pulse isolation.

CogniPower identifies the "accused products" as Anker power chargers, including but not limited to enumerated examples, that "incorporate circuitry providing demand pulse regulation such as a Power Integrations InnoSwitch or LytSwitch-6 chip." (D.I. 1, ¶ 34.) In support of its infringement allegations, CogniPower's complaint relies *exclusively* on PI's documentation for *all* technical details. For example, as to the "isolation" issue, CogniPower provides the following contention, which reproduces a portion of a PI InnoSwitch™ datasheet:

45. Upon information and belief, the secondary side of the Accused Products are isolated from the primary side. For example:



Fig. 13 (InnoSwitch SC1271K Datasheet, Ex. C, p. 1)

(D.I. 1, ¶ 45.) Notably, CogniPower attaches PI datasheets as Exhibits C and D to its Complaint, and it attaches no Anker technical documentation. As other

examples, CogniPower repeatedly relies upon PI's technical diagrams from the InnoSwitch™ datasheet to illustrate the internal operation of Anker's products:

39.    Upon information and belief, the Accused Products include a flyback switched mode power converter.  For example:

 

Fig. 3 (Anker PowerPort+ 1 Charger; InnoSwitch SC1271K Datasheet, p. 1)[1]

 

Fig. 4 (Anker PowerPort Atom PD 1 Charger; InnoSwitch3-CP Datasheet, p. 1)[2]

40.     Upon information and belief, the Accused Products have a primary side with an input port that receives power.  For example:



Fig. 5 (InnoSwitch SC1271K Datasheet, Ex. C, p. 1; Anker PowerPort+ 1 Charger)



Fig. 6 (InnoSwitch3-CP Datasheet, Ex. D, p. 1; Anker PowerPort Atom PD 1 Charger)

41.     Upon information and belief, the Accused Products have a secondary side with an output port.  For example:



Fig. 7 (Anker PowerPort+ 1 Charger; InnoSwitch SC1271K Datasheet, Ex. C, p. 1)



Fig. 8 (Anker PowerPort Atom PD 1 Charger; InnoSwitch3-CP Datasheet, Ex. D, p. 1)

(*Id.*, ¶¶ 39-41.)  On other occasions, CogniPower attempts to satisfy claim

elements merely by reciting that "the Accused Products include a Power

Integrations InnoSwitch chip."  (*E.g.*, *id.*, ¶ 43.)  In the end, CogniPower relies

upon PI documents and/or the mere presence of a PI chip for *all* claim elements.

(*E.g.*, *id.*, ¶¶ 39-49, 70-72.)

###### B.    **PI's Declaratory-Judgment Action**

PI filed its declaratory-judgment action to protect its customers, including

Anker.  PI seeks a declaratory judgment that its products, including its

InnoSwitch™ and LytSwitch-6™ chips, do not infringe the '031 and '713 patents.

(PI Action, D.I. 1, ¶¶ 54-69.)  PI also seeks declaratory judgment as to a third,

related CogniPower patent, and it seeks relief for CogniPower's infringement of

two PI patents.  (*Id.*, ¶¶ 30-53, 70-76.)  In its complaint, PI cites the present case,

among other facts, to establish a substantial controversy between PI and

7

CogniPower.  (*Id.,* ¶¶ 18, 21, 24, 26, 55, 57, 63, 65.)  PI also explains that

CogniPower has threatened other PI customers.  (*Id.*, ¶ 15 ("Defendant has

engaged in a broad and aggressive campaign to harass and threaten Power

Integrations' customers with assertions of patent infringement liability"); *id.,* ¶¶

23-26 (providing details).)

PI's complaint also explains the function of its accused products:

> 13. Power Integrations' products include its InnoSwitch™ families of power conversion integrated circuit devices, which are used in power supplies for electronic devices such as cellular telephones, LCD monitors, and computers.  The InnoSwitch™ Family of ICs combines primary, secondary and feedback circuits in a single surface-mounted off-line flyback switcher IC.  The InnoSwitch IC incorporates a high-voltage primary-side switch, a primary-side controller, a secondary-side controller for synchronous rectification, and an innovative new FluxLink™ technology that eliminates the need for an optocoupler.

(*Id.*, ¶ 13.)  Finally, PI's complaint explains why it does not infringe:

> 59. Power Integrations' InnoSwitch™ and LytSwitch-6™ products do not infringe any claim of the '031 patent; likewise no power supply product using Power Integrations' InnoSwitch™ and LytSwitch-6™ products infringes any claim of the '031 patent.  By way of example only, claim 1 of the '031 patent recites, in part, "a capacitor and a second rectifier both galvanically connected to the secondary winding, wherein: the second rectifier is different from the first rectifier and is poled to charge the capacitor during forward pulses of the apparatus; and the demand pulse generator is powered by energy stored in the capacitor to generate the demand pulses."  At least this element of claim 1 is not met by Power Integrations' InnoSwitch™ and LytSwitch-6™ products or any power supply utilizing Power Integrations' InnoSwitch™ and LytSwitch-6™ products, and therefore any such products and/or power supplies do not infringe.

(*E.g.*, *id.*, ¶ 59.)  Notably, PI's noninfringement defense extends not only to its own chips but also any "products and/or power supplies" incorporating the same.  (*Id.*)

## IV.  LEGAL STANDARD

The power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Pragmatus Telecom, LLC v. Advanced Store Co., Inc.*, 2012 WL 2803695, at *1 (D. Del. July 10, 2012), quoting *Cheyney State Coll. Faculty v. Hufstedler,* 703 F.2d 732, 737 (3d Cir. 1983) and *Landis v. North Am. Co.*, 299 U.S. 248, 254–55 (1936).  The traditional *Landis* factors for determining the propriety of a stay are "(1) whether granting the stay will simplify the issues for trial; (2) whether discovery is complete and a trial date is set; and (3) whether granting a stay would cause the non-moving party to suffer undue prejudice from any delay, or a clear tactical disadvantage."  *Pragmatus*, 2012 WL 2803695, at *1; *see also Vehicle IP, LLC v. Wal-Mart Stores, Inc.*, No. 10-503-SLR, 2010 WL 4823393, at *1 (D. Del. Nov. 22, 2010) (following same test to grant stay in favor of reexamination).

In addition to considering the three traditional stay factors, courts in this District have stayed cases pursuant to the "customer-suit exception" to the "first-filed rule."  That exception provides that litigation by or against the supplier of infringing goods "takes precedence over a suit by the patent owner against

customers." *Pragmatus*, 2012 WL 2803695, at *3 (granting stay in favor of

declaratory-judgment action filed by supplier), quoting *Katz v. Lear Siegler, Inc.,*

909 F.2d 1459, 1464 (Fed. Cir. 1990) (affirming injunction against customer suit).

The factors used to determine applicability of the customer-suit exception are "(1)

whether the Customers are merely resellers; (2) whether the Customers agree to be

bound by any decision in the Manufacturer's case; and (3) whether the

Manufacturer is the sole source of infringing products." *Pragmatus*, 2012 WL

2803695, at *3; *see also Sequoia Tech., LLC v. Dell, Inc.*, No. 18-1127 (LPS)

(CJB) (D. Del. Oct. 17, 2019) (granting stay using same test) (attached as Ex. 1

hereto).

## V.    ARGUMENT

### A.    All Three Traditional Factors Weigh in Favor of Granting a Stay

#### 1.    Staying This Case While PI's Action Proceeds Will Simplify the Issues for Trial

The first factor favors a stay, because PI's co-pending declaratory-judgment

action will eliminate or at least simplify the issues in this case.  In particular, based

on the allegations in PI's complaint, PI's action should resolve the issue of

infringement by the PI chips that form that basis of CogniPower's accusations of

infringement against Anker.  The same infringement allegations will be raised in

both actions: CogniPower's expected counterclaim against PI in the declaratory-

judgment action will essentially mirror its claims against Anker here.  PI's action

10

will also resolve similar allegations made against other PI customers.  (*See* PI Action, D.I. 1, ¶¶ 23-26.)  There is no reason to litigate the same claims against multiple defendants, where PI is in the best position—as the designer of the chips—to litigate the issues.

The resolution of PI's non-infringement claims regarding the accused chips will "moot[] or at least advanc[e] the 'major premises'" at issue in this case.  *In re Google Inc.*, 588 F. App'x 988, 991 (Fed. Cir. 2014) (granting mandamus when Eastern District of Texas denied stay of customer suit); *see also Rothschild Mobile Imaging Innovations, LLC v. Mitek Sys., Inc.*, No. 14-617-GMS, 2015 WL 4624164, at *3 (D. Del. July 31, 2015) (noting customers are liable only if a court finds the manufacturer liable; staying customer suit).

CogniPower's evidence of alleged infringement is also likely to be primarily sourced from PI—such as the PI datasheets extensively quoted and reproduced in CogniPower's complaint.  It will be simpler for CogniPower to obtain relevant discovery from PI in the PI Action.

In addition, should there be a finding of liability by PI, the question of any damages resulting from Anker's distribution of products based on the accused PI chips will also be adjudicated.  That is, should CogniPower collect royalty damages from PI, it cannot also seek royalty damages from Anker for the same infringement—so that issue would likewise be simplified.  *See Rothschild*, 2015

WL 4624164, at *3 (holding a patentee can collect only one royalty for an infringement).

Notably, both this Court and the Federal Circuit have approved stays where, as here, the *primary* issue relates to the supplier's component, even if a customer adds additional components. For example, in *Google*, the Federal Circuit granted mandamus because "the Eastern District of Texas relied heavily on each defendant mobile phone manufacturer's ability to modify and customize the Android platform to its own particular purpose." 588 F. App'x at 990. This fact was negated by the fact that the patentee in that case "provided nearly identical infringement contentions to all defendants that rely almost exclusively on the underlying functionalities provided in the base Android source code provided by Google." *Id.* CogniPower has done the same here, relying entirely on PI technical documentation to allege infringement. Thus, as in *Google*, "the record strongly suggests there will be substantial similarity involving the infringement and invalidity issues in all the suits." *Id.* Similarly, in *Katz*, the Federal Circuit affirmed an injunction against a customer suit, explaining "[a]lthough there may be additional issues involving the defendants . . . their prosecution will be advanced if [the plaintiff] is successful on the major premises being litigated in [the supplier suit], and may well be mooted if he is unsuccessful." *Katz*, 909 F.2d at 1464.

This Court has held the same.  In *Rothschild*, this Court relied upon similarities in infringement allegations to stay a customer suit:

> RMII attempts to argue that the Bank defendants' mobile applications are separate and distinct accused products from the Mitek Mobile Imaging Instrumentalities; this argument does not hold water. As the Banks correctly point out, RMII's argument contradicts prior assertions it has made throughout this litigation.  In all four complaints, RMII asserts the allegations against Defendants involve "the same or similar related and commonly derived instrumentalities." RMII has also asserted the "Chase Mobile application infringed the [patents-in-suit] through its use of Mitek's Mobile Imaging Instrumentalities." Consequently, the court accepts RMII's own allegations, and determines the infringement claims against the Banks are peripheral to the infringement claims against Mitek.

2015 WL 4624164, at *3 (internal citations omitted).  This Court reached the same conclusion recently in *Sequoia*.  Ex. 1 ("a substantial portion of the direct infringement analysis . . . will be focused on how the accused Red Hat LVM software works, and not how any associated server-related hardware works").  And in *Pragmatus*, this Court rejected the patentee's argument that customers use "other, non-LivePerson technology for their infringing systems and therefore the action against the Customers will not be resolved by the LivePerson action." *Pragmatus*, 2012 WL 2803695, at *4.  The Court responded: "[a]s the Federal Circuit noted in *Katz* . . . the manufacturer's case need only promise to resolve the 'major issues' concerning the claims against the customer, and not every conceivable issue." *Id.*

Here, a stay is appropriate because CogniPower's infringement allegations focus on Power Integrations and its chips, and the major issues will be litigated and determined in the PI Action, thereby drastically reducing and simplifying the issues left in this case, if any.

###     2.     Discovery Is in the Early Stages and No Trial Date Is Set

Each of these actions is still in its infancy.  One of the named Defendants, Anker Innovations Limited, has not yet been served with the Complaint.  The Court has not entered a schedule or set a trial date.  Discovery has not yet begun. The early stage of the case weighs in favor of a stay.  *See Rothschild*, 2015 WL 4624164, at *3 n.5 (factor favored a stay where trial date was two years away); *Pragmatus*, 2012 WL 2803695, at *2 (granting a stay where motion was filed before trial date was set).

###     3.     Granting a Stay Would Not Subject CogniPower to Undue Prejudice or any Clear Tactical Disadvantage

Granting a stay at this point would not prejudice CogniPower.  As discussed above, CogniPower cannot recover monetary damages from both PI and its customers for liability arising from the same transactions.  *Rothschild*, 2015 WL 4624164, at *3 ("a patentee can collect only one royalty from a patent infringement"; granting stay where accusations of infringement focused on supplier's products despite fact that supplier provided only a component of customers' mobile applications); *Pragmatus*, 2012 WL 2803695, at *2, 4 (noting

14

"Pragmatus would be barred from seeking further compensation from the Customers based on the same harm" despite argument that customers also used other technology); *see also Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 858 (Fed. Cir. 2006) (holding patentee is barred from collecting damages from customer after supplier/manufacturer of voicemail system had already been compensated patentee for customers' *use* of infringing product).  To the extent that CogniPower is able to show it is entitled to any monetary damages relating to PI's accused chips, it cannot be compensated twice for the same conduct.  Moreover, even if there were some additional, as-yet-undisclosed basis for CogniPower to seek separate damages from Anker, a stay still would not prejudice CogniPower, given the availability of prejudgment interest to make CogniPower whole for any delay associated with the stay.

Indeed, it appears that this case is simply part of an attempt to extract money from PI customers.  As PI alleges in its Complaint, CogniPower "has engaged in a broad and aggressive campaign to harass and threaten Power Integrations' customers with assertions of patent infringement liability."  (PI Action, D.I. 1, ¶ 15; *see also id.,* ¶¶ 23-26 (providing details).)  Also, CogniPower has not sought— and could not reasonably seek—a preliminary injunction against Anker, nor can it reasonably expect to be entitled to injunctive relief.  While PI has accused CogniPower of infringement of its own patents based on a CogniPower product

that was shown at a trade show (PI Action, D.I. 1, ¶ 9-11), there is no evidence that CogniPower competes with either PI or Anker.  To be sure, CogniPower does not so allege in its own Complaint, nor does it allege that it has lost any sales because of the alleged infringement.  Thus, because any remedy that might be awarded if CogniPower were to prevail in this case is almost certain to be monetary in nature, a stay would not prejudice CogniPower's ability to be made whole for any liability that is adjudicated down the line.  For such reasons, courts in this District frequently grant motions to stay where, as here, the patentee does not compete with the accused infringer.  *See, e.g.*, *Pragmatus*, 2012 WL 2803695, at *2 ("Pragmatus is solely in the business of monetizing patents, and since Customers are not 'direct competitors,' injunctive relief is not available.  Any purported harm that Pragmatus suffers from a stay can be fully compensated by monetary damages."); *Rothschild*, 2015 WL 4624164, at *3 n.5 ("Indeed, in cases where plaintiffs are in the business of monetizing patents, rather than practicing—as is the case with RMII—any purported harm can be 'fully compensated by monetary damages.'"); *Vehicle IP*, 2010 WL 4823393, at *2 ("Of particular importance is the fact that plaintiff does not develop or sell any products of its own and is not a competitor of defendants.").

Similarly, CogniPower will not suffer any tactical disadvantage from a stay.  To the contrary, a stay of this case will allow CogniPower to focus its efforts on the PI Action, involving all customers known to have been approached by

16

CogniPower, rather than have to spread its litigation resources across separate, active cases.  Litigating its infringement claims directly against PI will be more efficient for CogniPower, which will be able to obtain party discovery from PI regarding the design, development, and marketing of the accused chips.  And, discovery requests in the present case would still focus on *PI's* chips, because that is the basis for CogniPower's infringement allegations.  Further, CogniPower will be able to obtain discovery relating to PI's customers, including Anker, in the PI Action.  CogniPower cannot realistically argue that a stay of this suit would hinder its ability to obtain discovery regarding Anker's use of the accused chips.

Thus, all of the *Landis* factors support entering a stay.

### B.      The Customer-Suit Exception Also Favors a Stay

Even beyond the three traditional stay factors, the three factors that govern the customer-suit exception also strongly support Anker's motion.

### 1.      Anker Is the Mere "Reseller" of the Accused Chips

The first customer-suit exception factor—whether defendant is a mere "reseller" of the accused chips—is plainly satisfied.  Anker does not further develop or modify the accused PI chips; PI's accused chips are not subject to customization in the field, and Anker incorporates the accused chips into certain of its power supplies without modification.  Because Anker does not modify the chips, it is simply a "reseller" of them. *Pragmatus*, 2012 WL 2803695, at *3-4

(finding reseller factor favored stay where "ordinary use" of supplier's product was accused, despite use of other technology by customers' systems); *Sequoia*, Ex. 1 (finding customers to be resellers even where they incorporate accused software into larger computers; "With regard to whether the customer-Defendants are mere 'resellers' of the products in dispute, as to the key LVM software functionality (which, as noted above, appears to be largely what is at issue as to the accused products), the record suggests that it is appropriate to consider the customer-Defendants to be mere resellers (since they do not alter that software before sending it downstream.").

As the source of the accused chips, PI is the "true defendant" in CogniPower's case against Anker.  *E.g.*, *Pragmatus*, 2012 WL 2803695, at *3; *Rothschild*, 2015 WL 4624164, at *3.  Because Anker does not design or manufacture the accused chips, it is appropriate for the Court to resolve the "major issue" of PI's alleged infringement—as presented in PI's declaratory-judgment action against CogniPower—before the Court considers any other allegations that might remain against Anker.  *Pragmatus*, 2012 WL 2803695 at *3-4.

### 2.    All Parties Will Be Bound by Any Infringement Finding in the PI Action

The second factor—whether the customers will be bound by decisions in the supplier's case—is also satisfied.  As detailed above, CogniPower relies upon PI chips and PI datasheets to allege the presence of all of its claim elements.  Thus, if

CogniPower's patents are found not infringed in PI's declaratory-judgment action, CogniPower will be bound by collateral estoppel with respect to these issues. *Spectrum Pharm., Inc. v. Innopharma, Inc.*, No. 12-260-RGA-CJB, 2015 WL 3374922, at *3 (D. Del. May 22, 2015), *report and recommendation adopted*, No. 12-260-RGA, 2015 WL 4634827 (D. Del. Aug. 4, 2015) ("collateral estoppel prevents a patentee from relitigating a determination of invalidity or non-infringement").  In addition, as also detailed above, to the extent PI fails in its declaratory-judgment action and CogniPower is awarded damages for sales of its accused chips, CogniPower will be fully compensated and cannot seek damages for PI's customers' sales of the same chip.  *E.g.*, *Rothschild*, 2015 WL 4624164, at *3; *Pragmatus*, 2012 WL 2803695, at *2.  Finally, Anker agrees to be bound by any adverse findings made against PI regarding the use of PI's chips.

### 3.    PI Is the Sole Source of the Accused Chips

The third factor—whether the supplier is the sole source of the infringing products—likewise is satisfied.  PI is the sole source and provider of the accused chips.  PI therefore controls the content of the accused products.  As discussed above, Anker simply installs these chips into its power supplies without any modification.  Unlike Anker, PI is uniquely situated to litigate the merits of CogniPower's infringement case, because PI "knows its technology better than the [customer] defendants [and] is in the best position, and probably has the most

19

motivation, to litigate issues of infringement and invalidity." *Infinite Data LLC v. Amazon.com Inc.*, No. 12-1616-RGA, 2014 WL 266798, at *1 (D. Del. Jan. 23, 2014) (granting stay as to all customers who agreed to be bound).  As the sole source of the accused chips, PI should be given the opportunity to defend its products through its declaratory-judgment action before any claims that might remain against its customers proceed.

## VI.    CONCLUSION

For the reasons discussed above, Anker respectfully requests that the Court stay this action pending the resolution of PI's related declaratory-judgment action.

Dated:  February 10, 2020           FISH & RICHARDSON P.C.

By:   /s/ Warren K. Mabey, Jr.
Warren K. Mabey, Jr. (#5775)
222 Delaware Avenue, 17th Floor
Wilmington, DE  19801
302-652-5070
mabey@fr.com

*Attorney for Defendant*
*Fantasia Trading, LLC d/b/a AnkerDirect*

## **WORD COUNT CERTIFICATION**

The undersigned counsel hereby certifies that the Opening Brief in Support of Defendant Fantasia Trading LLC d/b/a AnkerDirect's Motion to Stay contains 3,982 words (exclusive of the title, caption, tables, and signature block) in Times New Roman 14-point font.


Dated: February 10, 2020                    /s/ *Warren K. Mabey, Jr.*
                                         Warrren K. Mabey, Jr.