# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COGNIPOWER LLC, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Case No.:  19-cv-02293-CFC |
| | : |
| FANTASIA TRADING LLC D/B/A | : |
| ANKERDIRECT and | : JURY TRIAL DEMANDED |
| ANKER INNOVATIONS LIMITED, | : |
| | : |
| Defendants. | : |
| | : |

## PLAINTIFF COGNIPOWER'S RESPONSE IN OPPOSITION TO DEFENDANT FANTASIA TRADING LLC D/B/A ANKERDIRECT'S MOTION TO STAY

**COLE SCHOTZ P.C.**
Michael F. Bonkowski (No. 2219)
Bradley P. Lehman (No. 5921)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
(302) 652-3131 (Telephone)
(302) 652-3117 (Facsimile)
mbonkowski@coleschotz.com
blehman@coleschotz.com

*Attorneys for Plaintiff*
*CogniPower LLC*

Dated: <u>February 24, 2020</u>

## <u>TABLE OF CONTENTS</u>

I.   BACKGROUND ................................................................................1

     A.    Procedural posture................................................................1

     B.    Technology background.......................................................2

II.  LAW ..............................................................................................5

     A.    The traditional stay.............................................................5

     B.    The customer suit exception...............................................6

III. ARGUMENT..................................................................................6

     A.    All three traditional stay factors weigh against ordering a stay............6

          1.    Staying CogniPower's lawsuit in favor of PI's case would not simplify the issues of infringement, invalidity, or damages for trial. ..................................................................7

          2.    Anker's Motion is premature *because* both cases are in such early stages................................................11

          3.    CogniPower would suffer undue prejudice and clearly be tactically disadvantaged if this case were stayed in favor of PI's case. ..................................................13

     B.    All three customer suit exception factors weigh against ordering a stay.............................................................17

          1.    Anker is not a "mere reseller" of the InnoSwitch....................17

          2.    PI is not a source of *any* of the Accused Products...................20

          3.    Anker's "agreement to be bound" insufficiently addresses several issues..........................................20

     C.    Alternative means to simplify this litigation may exist. .....................23

IV. CONCLUSION................................................................................24

CERTIFICATE OF COMPLIANCE WITH STANDING ORDERS ...................26

i

## TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Beck Sys., Inc. v. Marimba, Inc.*,
    No. 01 C 5207, 2001 WL 1502338 (N.D. Ill. Nov. 20, 2001) ......................16

*Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*,
    No. SACV111011JSTANX, 2012 WL 12898803 (C.D. Cal. Mar. 6,
    2012) ........................................................................................................21

*In re Dell Inc.*,
    600 F. App'x 728 (Fed. Cir. 2015) .................................................... 19, 23-24

*In re Google Inc.*,
    588 F. App'x 988 (Fed. Cir. 2014) ........................................................19, 23

*InfoGation Corp. v. ZTE Corp.*,
    No. 16-cv-01901-H-JLB, 2016 WL 9525235 (S.D. Cal. Dec. 1, 2016) ......11

*Jamesbury Corp. v. Litton Indus. Prod., Inc.*,
    839 F.2d 1544 (Fed. Cir. 1988) ................................................................16

*Mirror Worlds Techs., LLC v. Dell Inc.*,
    No. 6:13-CV-941, 2014 WL 11268268 (E.D. Tex. Sept. 29, 2014) ...... 18-19

*PPS Data, LLC v. Allscripts Healthcare Sols., Inc.*,
    No. 3:11-CV-273-J-37TEM, 2012 WL 243346 (M.D. Fla. Jan. 25, 2012) .13

*Pragmatus Telecom, LLC v. Advanced Store Co.*,
    No. CIV.A. 12-088-RGA, 2012 WL 2803695 (D. Del.
    July 10, 2012) ......................................................................................*passim*

*Rembrandt Wireless Techs., LP v. Apple Inc.*,
    No. 2:19-CV-00025-JRG, 2019 WL 6344471 (E.D. Tex. Nov. 27, 2019) ..22

*Rothschild Mobile Imaging Innovations, LLC v. Mitek Sys., Inc.*,
    No. CV 14-1142-GMS, 2015 WL 4624164 (D. Del. July 31, 2015) ...........19

*SoftView LLC v. Apple Inc.*,
    No. CIV. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012) ............22

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*,
  458 F.3d 1335 (Fed. Cir. 2006) ..............................................................6, 20

*Wapp Tech Ltd. P'ship v. Bank of Am. Corp.*,
  No. 4:18-CV-00519, 2019 WL 3890171 (E.D. Tex. Aug. 19, 2019) ..........11

*Wistron Corp. v. Phillip M. Adams & Assocs., LLC*,
  No. C-10-4458 EMC, 2011 WL 1654466 (N.D. Cal. Apr. 28, 2011) .........12

**Statutes and Rules**                                              **Page(s)**

37 CFR 1.102 ..........................................................................................14

Manual of Patent Examining Procedure § 708.02 ..................................................14

Plaintiff CogniPower LLC ("CogniPower") files this Response in Opposition to Defendant Fantasia Trading LLC d/b/a AnkerDirect's ("Anker") Motion to Stay (D.I. 8, "Anker's Motion"; D.I. 9, "Anker's Brief"). For the reasons below, Anker's Motion should be denied.

## I. BACKGROUND

### A. Procedural posture.

CogniPower filed its complaint in the instant case against Anker on December 18, 2019 (D.I. 1, "CogniPower's Complaint"). CogniPower alleges that Anker infringes U.S. Reissue Patent Nos. RE47,031 and RE47,713 (collectively, the "Patents-in-Suit"). CogniPower's Complaint, ¶¶ 29-33.

On January 6, 2020, Power Integrations, Inc. ("PI") filed a complaint against CogniPower in this District alleging that CogniPower infringes PI's patents, seeking a declaration that PI does not infringe the Patents-in-Suit, and seeking a declaration that PI does not infringe a third patent which is not at issue in this case (Case No. 1:20-cv-00015, D.I. 1, "PI's Complaint"). PI has not sought a declaration of invalidity of any of CogniPower's patents.

In accordance with CogniPower and Anker's agreement, Anker answered CogniPower's Complaint on February 10, 2019 (D.I. 7, "Anker's Answer"). Anker's Answer denied infringement and asserted invalidity of CogniPower's two Patents-in-Suit, among other defenses. Anker's Answer, p. 9. At the same time,

1

Anker filed the instant Motion requesting that this case be stayed pending the outcome of PI's case.

On February 18, 2020, PI's case was reassigned to this Court. CogniPower has not yet responded to PI's complaint but will do so by the deadline of February 27, 2020.

### B.      Technology background.

*CogniPower and its technological innovations.* CogniPower was formed in 2009 to develop and license power conversion technology that provides higher efficiency and better performance. Demand Pulse Regulation ("DPR"), the subject of the Patents-in-Suit, was developed at CogniPower's expense in response to a request made in early 2012 by a large multi-national company. CogniPower's approach is transformative, not incremental. DPR is fundamentally different from conventional techniques for controlling power converters. The impressive success of DPR in the marketplace is evidence of its inherent superiority.

*Power Converters.* A power converter is a system for transforming input power into output power. For example, Anker's accused chargers are power converters that transform input power from a wall outlet (typically 120 volts alternating current in the United States) into output power suitable for charging personal electronics like cell phones (typically between 5 and 20 volts direct current).

2

The object of an isolated power converter is to provide a safe, efficient, regulated output on the output side of the power converter. The isolated power converters considered here include, among other components, a power transformer for transmitting input power from the converter's input side to converted, output power on the converter's output side; an output-side capacitor; a transistor-based input switch that is turned on to allow power to be transmitted through the power transformer; and control circuitry that controls whether the input switch is on or off.

Conventional isolated power converters have input-side control circuitry that determines when to turn on and when to turn off the input switch. Such a control scheme limits both performance and efficiency.

***CogniPower's Demand Pulse Regulation Technology.*** In simple terms, DPR is a reorganization of the elements used to control an isolated power converter. A DPR Power Converter has output-side control circuitry that determines when to turn on the input switch and input-side control circuitry that determines when to turn off the input switch. In DPR, the information transmitted from the output side to the input side is reduced to an instant of time that is embodied in a demand pulse generated by the output-side control circuitry and transmitted to the input side. In this way, the determination of when to turn on the input switch is made at the optimal place, directly at the output, while the determination of when to turn off the input

3

switch is made at the optimal place, locally on the input side. The result is uncompromised performance and greater efficiency.

Isolated power converters that implement DPR as claimed in the Patents-in-Suit are referred to herein as "DPR Power Converters."

***Anker's Accused Chargers.*** Anker's accused chargers are DPR Power Converters. Each Anker accused charger has, among other components, a power transformer, an output-side capacitor, an input switch, output-side control circuitry that determines when to turn on the input switch, and input-side control circuitry that determines when to turn off the input switch. In Anker's accused chargers, the input switch, the output-side control circuitry, and the input-side control circuitry are embodied in PI's InnoSwitch product, while Anker's power transformer, output-side capacitor, and other components are external to PI's InnoSwitch product.

***PI's InnoSwitch Products.*** PI's InnoSwitch products (the "InnoSwitch") are "surface-mounted off-line flyback switcher IC[s]." *See* PI's Complaint, ¶ 13.

4



Fig. 1, Anker PowerPort+ 1
CogniPower's Complaint, ¶ 39 (annotations added)

An InnoSwitch is not a DPR Power Converter. Rather, an InnoSwitch may be used to make a DPR Power Converter. In particular, Anker's accused chargers are DPR Power Converters made using an InnoSwitch in combination with other components such as a power transformer and an output-side capacitor. Significantly, DPR Power Converters can also be made without using an InnoSwitch.

## II.    LAW

### A.    The traditional stay.

Courts in this District consider three factors in deciding a typical motion to stay: "(1) whether granting the stay will simplify the issues for trial; (2) whether discovery is complete and a trial date is set; and (3) whether granting a stay would cause the non-moving party to suffer undue prejudice from any delay, or a clear tactical disadvantage." *Pragmatus Telecom, LLC v. Advanced Store Co.*, No. CIV.A.

5

12-088-RGA, 2012 WL 2803695, at *1 (D. Del. July 10, 2012). Deciding whether to grant or deny a stay lies within the discretion of this Court. *See id.*

> **B.    The customer suit exception.**

In assessing the propriety of applying the customer suit exception, courts in this District look at three factors: "(1) whether the Customers are merely resellers; (2) whether the Customers agree to be bound by any decision in the Manufacturer's case; and (3) whether the Manufacturer is the sole source of infringing products." *Id.* at *3. "[T]he guiding principles in the customer suit exception cases are efficiency and judicial economy." *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006).

## III.    ARGUMENT

> **A.    All three traditional stay factors weigh against ordering a stay.**

A traditional stay is inappropriate in this case because it would not simplify the issues of infringement, invalidity, or damages; is premature considering it is not yet clear whether PI's lawsuit will go forward; and would unduly prejudice and clearly tactically disadvantage CogniPower. Because all three traditional stay factors weigh against ordering a stay, this Court should deny Anker's Motion.

> ### 1.    Staying CogniPower's lawsuit in favor of PI's case would not simplify the issues of infringement, invalidity, or damages for trial.

The first traditional stay factor, "whether granting the stay will simplify the issues for trial," weighs in CogniPower's favor, and against ordering a stay. *Pragmatus*, 2012 WL 2803695, at *1.

*A stay would not simplify CogniPower's infringement claims.* Claim 1 of the `031 Patent and Claim 18 of the `713 Patent recite elements, such as a transformer and a capacitor among others, that are part of a DPR Power Converter, but are external to an InnoSwitch. As such, since the InnoSwitch does not directly infringe either of those two claims in the Patents-in-Suit, PI could succeed in its declaratory judgment claims of non-infringement of the Patents-in-Suit. But that does not mean that Anker's accused chargers, which do include the recited transformer and capacitor, do not infringe the Patents-in-Suit.

PI's stated non-infringement positions relied upon by Anker highlight the issue. PI's positions actually identify certain components external to the InnoSwitch. With respect to the `031 Patent, PI makes the following argument:

> [C]laim 1 of the '031 patent recites, in part, "*a capacitor* and a second rectifier both galvanically connected to the secondary winding, wherein: the second rectifier is different from the first rectifier and is poled to charge *the capacitor* during forward pulses of the apparatus; and the demand pulse generator is powered by energy stored in *the capacitor* to generate the demand pulses." At least this element of claim 1 is not met by Power Integrations' InnoSwitch™ and LytSwitch-6™ products or any power supply utilizing Power

7

Integrations' InnoSwitch™ and LytSwitch-6™ products, and therefore any such products and/or power supplies do not infringe.

PI's Complaint, ¶ 59 (emphasis added); Anker's Brief, p. 8. PI makes a similar

argument regarding claim 18 of the '713 Patent. *See* PI's Complaint, ¶ 67.

But CogniPower believes that Anker's accused chargers—not the InnoSwitch

itself—includes the referenced capacitor. This belief is supported by PI's

documentation, as illustrated below and cited in CogniPower's complaint:



*Figure 11.  5 V, 3 A ; 9 V, 3 A ; 15 V, 3 A USB PD 2.0 Compliant Adapter.*

Fig. 2, USB PD 2.0 Adapter Reference Design
CogniPower's Complaint, Ex. D, p. 9 (annotations added)

"During the on-time of the primary-side power MOSFET, the forward voltage that appears across the secondary winding is used to charge the decoupling capacitor C10 via resistor R13 and an internal regulator."

CogniPower's Complaint, ¶¶ 49, 72 (citing Ex. D, InnoSwitch3-CP Datasheet, p. 9

attached thereto). Anker cites CogniPower's use of PI's documentation as a reason

for stay, but the fact that CogniPower relied in part on PI's documentation in

assessing Anker's infringement is very different from asserting that the InnoSwitch directly infringes the Patents-in-Suit. *See* Anker Brief, p. 4.

The reason CogniPower relied on PI's documentation for the InnoSwitch in performing its due diligence is that these documents contain publicly-available example schematics of completed DPR Power Converters while Anker's actual schematics for its many different DPR Power Converters are not publicly available. In view of these example reference designs, finding an InnoSwitch in a power converter provides a basis for believing that the power converter likely infringes Claim 1 of the `031 Patent and Claim 18 of the `713 Patent, among others. That said, CogniPower requires discovery from Anker on the actual design and operation of its accused chargers in order to prove infringement. As shown in a few examples below, each of Anker's accused chargers is a uniquely designed product with a different board layout and different component selections:





Anker PowerPort Atom III Slim                    Anker PowerPort+1









Anker PowerPort Atom PD-2

Anker PowerPort Atom PD-1

Fig. 3, Exemplar Anker Accused Chargers

Because of this, questions regarding Anker's infringement remain regardless of the outcome of PI's case.

**A stay would not simplify Ankers' invalidity claims.** Indeed, as discussed below, PI has not sought declaratory judgment for invalidity. *See* Section III(B)(3).

**A stay would not simplify CogniPower's damages claims.** Anker also argues that, if CogniPower receives damages for PI's sales of the InnoSwitch, then CogniPower will be fully compensated. Anker Brief, pp. 11-12, 18-19. This is incorrect. The Patents-in-Suit cover DPR Power Converters. The appropriate royalty

10

base is on the DPR Power Converter, not on the InnoSwitch. Indeed *Pragmatus*, heavily relied upon by Anker in its Brief, recognized that ordering a stay does not box in or limit a plaintiff's royalty base to the manufacturer's part when that part is only one component of the customer's larger infringing system. 2012 WL 2803695, at *3 (explaining that "[a] stay, however, would not bar Pragmatus from receiving full compensation, where compensation is due"). And Courts have found that the existence of different damages measures for customers and manufacturers can itself be a factor that weighs against a stay. *See, e.g.*, *InfoGation Corp. v. ZTE Corp.*, No. 16-cv-01901-H-JLB, 2016 WL 9525235, at *3 (S.D. Cal. Dec. 1, 2016).

### 2. Anker's Motion is premature *because* both cases are in such early stages.

The second traditional stay factor, "whether discovery is complete and a trial date is set," weighs against ordering a stay. *C.f. Wapp Tech Ltd. P'ship v. Bank of Am. Corp.*, No. 4:18-CV-00519, 2019 WL 3890171, at *2-3 (E.D. Tex. Aug. 19, 2019) (denying motion to stay premised on customer suit exception as premature).

Anker argues that, because this case is in its early stages, this factor weighs in Anker's favor. Anker Brief, p. 14. This case is in its early stages; however, PI's claims for declaratory judgment of non-infringement of the Patents-in-Suit, which are also in their early stages, suffer a number of deficiencies and should be dismissed entirely. It would be premature to issue a stay in this case when it is not yet clear whether PI's case will go forward. CogniPower's response to PI's complaint has not

11

been filed yet but will be on file within the week. CogniPower believes a brief summary of just one of the problems with PI's complaint highlights why Anker's request is premature.

Anker argues that PI is seeking not only a declaration that the InnoSwitch does not infringe, but also that "no power supply product using" the InnoSwitch infringes. Anker Brief, p. 9. But this request is so broad and so vague that it is insufficient to create an actual, judiciable case or controversy over which this Court would have subject matter jurisdiction.

A declaratory judgment action for non-infringement must, among other things, identify the products at issue. *See Wistron Corp. v. Phillip M. Adams & Assocs., LLC*, No. C-10-4458 EMC, 2011 WL 1654466, at *12 (N.D. Cal. Apr. 28, 2011) (granting motion to dismiss counterclaim for declaratory judgment of non-infringement where the products were inadequately defined and noting that "without identifying the accused products, there simply is no way to adjudicate an infringement claim. Absent identification of the products accused of infringement, there is no concrete case or controversy [of] sufficient specificity to satisfy *Twombly* and *Iqbal*"). Considering that PI's website claims that the InnoSwitch can be used in utility smart meters, industrial applications, motor control, notebook adapters, PC's, set top boxes, LCD monitors, and major appliances, a request for declaratory judgment that none of those products infringe—products designed, manufactured,

12

and sold by unidentified third parties—is so broad and so vague that it is tantamount to no identification at all. *See* Ex. A, https://ac-dc.power.com/products/innoswitch-family/build-your-own-innoswitch/; *PPS Data, LLC v. Allscripts Healthcare Sols., Inc.*, No. 3:11-CV-273-J-37TEM, 2012 WL 243346, at *4 (M.D. Fla. Jan. 25, 2012) (granting motion to dismiss counterclaim for declaratory judgment of non-infringement where the products were inadequately defined and noting that the defendant "seeks a generalized holding of non-infringement—relief which is not cabined by conduct, an accused product, or a relevant time period. This Court will not give Defendant a judicial imprimatur that all of its products, services, and conduct are 'ok'").

In view of this, Anker's Motion should be denied as premature.

### 3. CogniPower would suffer undue prejudice and clearly be tactically disadvantaged if this case were stayed in favor of PI's case.

The third traditional stay factor, "whether granting a stay would cause the non-moving party to suffer undue prejudice from any delay, or a clear tactical disadvantage," weighs in CogniPower's favor, and against ordering a stay. *Pragmatus*, 2012 WL 2803695, at *1.

***Undue prejudice.*** Mr. William Morong, named co-inventor on both Patents-in-Suit and part owner of CogniPower, is 74 years old. Mr. Thomas Lawson, named co-inventor on both Patents-in-Suit, Founder, President, and part owner of

13

CogniPower, is 69 years old. As a practical matter, both of these gentleman will be unduly prejudiced by the delay a stay would cause. The U.S. Patent and Trademark Office ("USPTO") recognizes these realities in allowing individuals over 65 to apply for accelerated patent examination. *See* 37 CFR 1.102 ("Advancement of examination"); Manual of Patent Examining Procedure ("MPEP") § 708.02, Section II (Petition To Make Special, Applicant's Age).

In an effort to argue that CogniPower will not suffer undue prejudice, Anker tries to cast CogniPower as a troll filing lawsuits as "part of an attempt to extract money from PI customers" engaged in "a broad and aggressive campaign to harass and threaten PI's customers." Anker's Brief, p. 15. *See also* Anker's Brief, p. 2 (referencing "PI customers that CogniPower has been harassing with accusations of infringement outside of court"). These statements are a completely unfounded attempt to generate prejudice against CogniPower. The truth is that Mr. Lawson and Mr. Morong are the co-inventors of DPR technology and both have an ownership interest in CogniPower. Since founding CogniPower, Mr. Lawson has exhibited at the Applied Power Electronics Conference ("APEC") every year to present CogniPower's latest technology and to seek business relationships with those looking to license the technologies that CogniPower has developed.



Fig. 4, CogniPower 2019 APEC Presentation
PI's Complaint, Ex. C, p. 21

CogniPower has had a number of business meetings with large companies to explore licensing DPR technology. In fact, CogniPower initially developed DPR technology in response to a request from a large multi-national company. That CogniPower chose a licensing business model in no way diminishes its innovations, its contributions to the field, or its right to protect its business by protecting its in-demand innovations from infringement.

**Clear tactical disadvantage.** As it stands, PI is seeking declaratory judgment of non-infringement on a huge class of unidentified products—"any power supply utilizing PI's InnoSwitch™ and LytSwitch-6™ products." PI's Complaint, ¶¶ 59, 67. Because PI is *not* the designer or manufacturer of these third-party products, but is asking for declaratory judgment that no third-party products using the InnoSwitch infringe, staying this case in favor of PI's case as-is would effectively require

15

CogniPower to litigate against all possible defendants all at once *without* adequate discovery tools. CogniPower does not believe that PI would, or even could, provide the discovery necessary for CogniPower to prove infringement by every third party that designs and manufactures a product containing an InnoSwitch. This would leave CogniPower having to rely on obtaining discovery from innumerable third parties over which this District may not have effective subpoena power in order to obtain technical and damages discovery. Courts have recognized the reality that patentees have limited resources and cannot be expected to litigate against everyone at once, much less with their hands tied behind their back. *C.f. Jamesbury Corp. v. Litton Indus. Prod., Inc.*, 839 F.2d 1544, 1552 (Fed. Cir. 1988) (noting, in the context of the now-defunct defense of laches, that "[i]t may well be, though we do not now so hold, that suit on one or more test cases, instead of suing every known infringer, was reasonable in light of the high cost of patent litigation").

Further, the simple fact that Anker would still be subject to discovery weighs against ordering a stay. *C.f.*, *Beck Sys., Inc. v. Marimba, Inc.*, No. 01 C 5207, 2001 WL 1502338, at *3 (N.D. Ill. Nov. 20, 2001) (denying motion to separate and stay where defendants were represented by the same attorneys and where the customers would remain subject to third-party discovery in any event).

Because all three traditional stay factors weigh against ordering a stay, Anker's Motion should be denied.

**B.      All three customer suit exception factors weigh against ordering a stay.**

The customer suit exception is inapplicable in this case because Anker is the *only* source of Anker's accused chargers—the Accused Products—and not a "mere reseller" of the InnoSwitch as Anker claims.[1] Further, as discussed below, Anker's "agreement to be bound" is insufficient. Because all three customer suit exception factors weigh against ordering a stay, this Court should deny Anker's Motion.[2]

**1.      Anker is not a "mere reseller" of the InnoSwitch.**

The first factor considered in evaluating the customer suit exception, "whether the Customers are merely resellers," weighs in CogniPower's favor, and against ordering a stay. *Pragmatus*, 2012 WL 2803695, at *3.

Anker's Brief is based on the false premise that the InnoSwitch is the Accused Product. *See, e.g.*, Anker's Brief, p. 11, 17 (repeatedly referencing the "accused PI

---

[1] The Accused Products include but are not limited to Anker's PowerPort Atom PD 1, PowerPort Atom PD 2, Power Port Atom III Slim, PowerPort+ 1, Power Port C1, PowerPort PD 2, 18W Power Delivery USB C, 60W Compact, Slim 30W, and 60W Multiport chargers and any other similar products that incorporate circuitry providing demand pulse regulation such as PI's InnoSwitch or LytSwitch-6 chip. CogniPower's Complaint, ¶ 34.

[2] Of note, *Pragmatus* explained that the customer suit exception "does not directly apply" in cases when the two lawsuits at issue are in the same district. 2012 WL 2803695, at *3. Indeed, avenues for judicial economy exist in cases before the same Court that do not in cases in different districts. *See* Section III(C). Nevertheless, *Pragmatus* considered the customer suit exception factors in circumstances procedurally similar to this one, and so addresses each.

17

chips"). It is not. Anker's accused chargers are. Anker does not resell the InnoSwitch—Anker designs, manufactures, and sells Anker accused chargers that include many components in addition to the InnoSwitch. CogniPower's Complaint, ¶ 24. PI does not sell Anker accused chargers—PI sells the InnoSwitch.

*Mirror Worlds Techs., LLC v. Dell Inc.*, reviewed by the Federal Circuit, illustrates the difference. No. 6:13-CV-941, 2014 WL 11268268 (E.D. Tex. Sept. 29, 2014). *Mirror Worlds* involved infringement allegations against Microsoft, Dell, HP, Lenovo, Samsung, and Best Buy. *Id.* at *1. The plaintiff alleged infringement against the Microsoft Windows operating system itself, against Dell, HP, Lenovo, and Samsung ("the PC Manufacturers") regarding their use and implementation of Microsoft Windows on the computers they manufactured, and against Best Buy for selling the PC Manufacturers' computers. *Id.* at *2.

Best Buy requested, and was granted, a customer suit stay because the court found it was truly a "mere reseller of the accused products." *Id.* at *2. The PC Manufacturers also moved for a customer suit stay claiming they too were "mere resellers" of Microsoft Windows. *Id.* at *2. The court denied the PC Manufacturer's motion, noting that unlike Best Buy the plaintiff "accuses the PC Manufacturers of infringement beyond their mere purchase of the Windows operating system from Microsoft." *Id.* at *2. The PC Manufacturers petitioned the Federal Circuit for mandamus, and the Federal Circuit denied their petition. *In re Dell Inc.*, 600 F.

18

App'x 728, 730 (Fed. Cir. 2015). Of note, the Federal Circuit distinguished *In re Google*, cited by Anker, as discussed in Section III(C).

Like the PC Manufacturers in *Mirror Worlds*, Anker is more than a "mere reseller" of the InnoSwitch. Anker designs, develops, and manufactures, and sells an entire ecosystem of DPR Power Converters. CogniPower's Complaint, ¶ 24. As explained in Sections I(A) and III(A)(1), building a DPR Power Converter requires more than an InnoSwitch; it requires making additional design decisions and including a number of additional components.

The Patents-in-Suit cover DPR Power Converters. *See* Section III(A)(1). CogniPower has accused Anker's accused chargers—DPR Power Converters—of infringement. CogniPower's Complaint, ¶ 34. Thus, CogniPower's claims against Anker are not "peripheral" to PI's claim that the Patents-in-Suit do not cover the InnoSwitch. *See* Anker's Brief, p. 13; *Rothschild Mobile Imaging Innovations, LLC v. Mitek Sys., Inc.*, No. CV 14-1142-GMS, 2015 WL 4624164, at *3 (D. Del. July 31, 2015). Anker is not a "second-hand entit[y]like retailers or distributors". *Id.* at *3. Rather. Anker itself is the "manufacturer/supplier" and the "'true defendant' and the real party in interest." *Id.*

### 2.    PI is not a source of *any* of the Accused Products.

The third customer suit exception factor, "whether the Manufacturer is the sole source of infringing products," weighs in CogniPower's favor, and against ordering a stay. *Pragmatus*, 2012 WL 2803695, at *3.

PI is not a source of any of the Accused Products, let alone the sole source of those products—Anker is. Anker designs, manufactures, and sells the Accused Products, not PI. CogniPower's Complaint, ¶ 24. This factor weighs in CogniPower's favor, and against ordering a stay.

### 3.    Anker's "agreement to be bound" insufficiently addresses several issues.

The second customer suit exception factor, "whether the Customers agree to be bound by any decision in the Manufacturer's case," weighs in CogniPower's favor, and against ordering a stay. *Pragmatus*, 2012 WL 2803695, at *3.

Courts have explained that the guiding principle underlying each of the customer suit exception factors is "efficiency and judicial economy." *Tegic*, 458 F.3d at 1343. Typically, infringement and invalidity are litigated in parallel, promoting judicial economy. Indeed, advancement of this case requires advancement of CogniPower's claims for infringement against Anker and advancement of Anker's affirmative defenses, including invalidity. Anker's Answer, p. 9. Ostensibly Anker's agreement "to be bound by any adverse findings made against PI regarding the use of PI's chips" is offered in a misguided attempt to

20

promote efficiency with respect to CogniPower's infringement claim. But this offer does not make clear whether Anker contemplates that findings made against PI would foreclose Anker from raising additional defenses like invalidity after the conclusion of PI's case, should it go forward.

Indeed, PI has not filed for declaratory judgment of invalidity. *See* PI's Complaint. At this point, it is unclear what PI's intentions are. It may have decided to forego invalidity challenges. Or it may be plotting an attempt to circumvent the statutory bar on filing *inter partes* reviews ("IPRs") imposed by 35 U.S.C. § 315(a) by awaiting counterclaims by CogniPower to which it can counterclaim for invalidity and then argue that it can raise invalidity challenges before both this Court and the Patent Trial and Appeal Board ("PTAB"). In any event, given that the true scope of PI's case is unknown at this point, it is not really possible to assess what kind of agreement to be bound would appropriately promote judicial economy in the event PI's case goes forward. This highlights the prematurity of Anker's request, discussed in Section III(B)(3) below.

If the Court is inclined to grant a stay, CogniPower requests, at a minimum, any such stay be conditioned on Anker's express agreement to be bound by this Court's rulings on the issues of infringement, validity, enforceability, damages, and injunctive relief. *See Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, No. SACV111011JSTANX, 2012 WL 12898803, at *2 (C.D. Cal. Mar. 6, 2012)

21

(denying motion for stay based on customer suit exception where customer defendants agreed to be bound by rulings of infringement, validity, and enforceability, but refused to be bound by rulings regarding damages and injunctive relief). Further, because the filing of an IPR by a purported customer is "inconsistent with the purpose of the customer-suit exception," CogniPower requests that any stay further be conditioned on Anker's agreement not to petition for *inter partes* review of the Patents-in-Suit and to be bound by the outcome of any IPR filed by PI on the Patents-in-Suit. *See Rembrandt Wireless Techs., LP v. Apple Inc.*, No. 2:19-CV-00025-JRG, 2019 WL 6344471, at *2 (E.D. Tex. Nov. 27, 2019) (denying motion to stay based on the customer suit exception where the customer filed IPRs four days after requesting a stay noting that the purpose of the customer suit exception is to relieve customers of the burdens of litigation, and that initiating additional proceedings is inconsistent with that purpose). *See also SoftView LLC v. Apple Inc.*, No. CIV. 10-389-LPS, 2012 WL 3061027, at *3 (D. Del. July 26, 2012) (addressing appropriate scope of agreement to be bound in the context of a motion for stay pending reexamination proceedings before the PTO).

Additionally, because CogniPower will need discovery from Anker even if this case is stayed, as explained in Sections III(A)(1) and III(B)(3), CogniPower requests that any stay be conditioned on Anker's agreement to cooperate with discovery.

In sum, this Court should decline to apply the customer suit exception because (1) Anker is *the* seller of the Accused Products, not a "mere reseller" of the InnoSwitch; (2) PI is *not* a source of any of the Accused Products, much less the sole source; and (3) Anker's agreement to be bound is insufficient to promote judicial economy.

### C.   Alternative means to simplify this litigation may exist.

Anker points to *In re Google* in support of its Motion. Anker Brief, pp. 11-12; *In re Google Inc.*, 588 F. App'x 988 (Fed. Cir. 2014). But *In re Google* involved circumstances where plaintiffs were maintaining two separate actions in two separate districts against a common defendant. *Id.* at 989-90. The court in the Northern District of California denied the plaintiffs' motion to transfer or dismiss, and the court in the Eastern District of Texas denied the defendants' motion to transfer or stay. *Id.* On mandamus, the Federal Circuit held that the Eastern District of Texas' denial of the defendants' motion to stay frustrated "the comity doctrine, requiring two federal district courts and the parties to expend resources to resolve substantially similar claims and issues." *Id.* at 991. That issue is not present here— this Court controls both actions and is free to consolidate Anker's case and PI's case under Fed. R. Civ. P. 42, for example. Indeed, in distinguishing *In re Google*, the Federal Circuit in *In re Dell* noted that there is no requirement that a district court stay proceedings against a purported customer "in the very same litigation that will,

regardless of the requested stay, go forward against the supplier." *In re Dell Inc.*, 600 F. App'x 728, 730 (Fed. Cir. 2015).

To be clear, CogniPower believes that considering whether to consolidate this action and PI's case is premature at this point for the same reasons that Anker's Motion is premature. That said, CogniPower believes that it is important to point out that this Court has options that are not present when actions reside in different districts.

## IV.    CONCLUSION

Because all of the traditional stay and customer suit exception factors weigh against ordering a stay, this Court should deny Anker's Motion. However, in the event this Court decides in its discretion that a stay is appropriate, CogniPower requests that the Court condition any such stay on the conditions outlined in Section III(B)(3) above.

59788/0001-19865231v1

COLE SCHOTZ P.C.

Michael F. Bonkowski (No. 2219)
Bradley P. Lehman (No. 5921)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 652-3131 (Telephone)
(302) 652-3117 (Facsimile)
mbonkowski@coleschotz.com
blehman@coleschotz.com

*Attorneys for Plaintiff*
*CogniPower LLC*

OF COUNSEL:
Gary R. Sorden
Texas Bar No. 24066124
gsorden@coleschotz.com
Timothy J.H. Craddock
Texas Bar No. 24082868
tcraddock@coleschotz.com

COLE SCHOTZ, P.C.
901 Main Street, Suite 4120
Dallas, Texas 75202
Tel: (469) 557-9390
Fax: (469) 533-1587

Dated: February 24, 2020

59788/0001-19865231v1

## **CERTIFICATE OF COMPLIANCE WITH STANDING ORDERS**

The undersigned counsel hereby certifies that it has complied with this Court's

November 6, 2019 Standing Order regarding Briefing in All Cases in that this

document contains 4,930 words as calculated by Microsoft Word and that it is typed

in Times New Roman 14-point font.

Dated:  February 24, 2020

Michael F. Bonkowski (No. 2219)

26