# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COGNIPOWER LLC, <br><br> Plaintiff, <br><br> v. <br><br> FANTASIA TRADING, LLC D/B/A ANKERDIRECT and ANKER INNOVATIONS LIMITED, <br><br> Defendant, <br><br> POWER INTEGRATIONS, INC., <br><br> Intervenor. | C.A. No. 19-cv-2293-JLH <br><br> REDACTED |

**ANSWERING BRIEF IN OPPOSITION TO COGNIPOWER'S SECOND MOTION
TO DISMISS POWER INTEGRATIONS' COUNTERCLAIMS**

Douglas E. McCann (No. 3852)
Warren K. Mabey, Jr. (No. 5775)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-5070
Email: dmccann@fr.com; mabey@fr.com

*Attorneys for Defendants Fantasia Trading,
LLC d/b/a AnkerDirect and Anker Innovations
Ltd., and Intervenor Power Integrations, Inc.*

Dated: September 30, 2024

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ............................................................................................................. 1

II. LEGAL STANDARDS .................................................................................................... 1

III. STATEMENT OF FACTS ............................................................................................... 2

IV. ARGUMENT .................................................................................................................... 3

    A. CogniPower Violates the Law of the Case ............................................................ 3

    B. The Scope of PI's Counterclaims is Clear and Should Not Be Limited ................ 7

    C. The Record Establishes an Actual Controversy ..................................................... 9

        1. CogniPower Has Made Implied Assertions of Contributory Infringement .... 11

        2. CogniPower Has Made Implied Assertions of Induced Infringement ............ 13

V. CONCLUSION ............................................................................................................... 14

# **TABLE OF AUTHORITIES**

                                                                                                             **Page(s)**

**Cases**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
    637 F. Supp. 3d 141 (D. Del. 2022) ......................................................................................... 7

*Arris Grp., Inc. v. British Telecomm. PLC*,
    639 F.3d 1368 (Fed. Cir. 2011) .......................................................................................... 9, 11

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988) ................................................................................................................. 1

*In re Cont'l Airlines, Inc.*,
    279 F.3d 226 (3d Cir. 2002) ................................................................................................. 1, 4

*Gould Elecs. Inc. v. United States*,
    220 F.3d 169 (3d Cir. 2000) ................................................................................................. 2, 9

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. (UAW)
v. Visteon Corp.*, No. CV 13-1742-RGA, 2015 WL 4126742 (D. Del. July 9,
    2015) ..................................................................................................................................... 1, 2

*Lincoln Ben. Life Co. v. AEI Life, LLC*,
    800 F.3d 99 (3d Cir. 2015) ....................................................................................................... 1

*Lowe v. ShieldMark, Inc.*,
    No. 2021-2164, 2022 WL 636100 (Fed. Cir. Mar. 4, 2022) .................................................... 3

*Matthews v. Norristown State Hosp.*,
    528 F. App'x 115 (3d Cir. 2013) ............................................................................................. 3

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ................................................................................................................. 2

*Microchip Tech. Inc. v. Chamberlain Grp., Inc.*,
    441 F.3d 936 (Fed. Cir. 2006) ................................................................................................. 6

*Microsoft Corp. v. DataTern, Inc.*,
    755 F.3d 899 (Fed. Cir. 2014) ....................................................................................... 6, 9, 13

*Mitek Sys., Inc. v. United Servs. Auto. Ass'n*,
    34 F.4th 1334 (Fed. Cir. 2022) .............................................................................................. 10

**Statutes**

35 U.S.C. § 271(c) ....................................................................................................................... 11

## I.  INTRODUCTION

CogniPower's latest motion to dismiss violates the law of the case and misstates the previous holdings of this Court. CogniPower has tried *twice* to eliminate PI's counterclaims, and lost both times, including this year (first on PI's motion to intervene, and then on CogniPower's first motion to dismiss). Yet CogniPower would have this Court ignore its two previous rulings without any plausible basis to do so. ***None*** of the Court's findings in its opinion granting PI's motion to intervene back in February 2021 has been disturbed, and there is no question that a genuine case or controversy between PI and CogniPower exists. Rather, CogniPower's new motion to dismiss makes almost exactly the same arguments that this Court ***denied*** a few months ago, when it denied CogniPower's first motion to dismiss in April, and is barred by the law of the case. *See* D.I. 120. Accordingly, CogniPower's motion to dismiss should be denied.

## II.  LEGAL STANDARDS

"The doctrine of the law of the case . . . limits relitigation of an issue once it has been decided." *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. (UAW) v. Visteon Corp.*, No. CV 13-1742-RGA, 2015 WL 4126742, at *3 (D. Del. July 9, 2015) (quoting *In re Cont'l Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir. 2002)). The law-of-the-case doctrine is a precept that "posits that when a court decides upon a rule of law, that decision should continue to govern the *same* issues in subsequent stages in the *same* case." *In re Cont'l*, 279 F.3d at 233 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)).

As Judge Connolly has previously explained in a related case, PI has the burden of proving subject matter jurisdiction. (20-15-CFC, D.I. 17 at 4, citing *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015).) A party seeking a declaratory judgment must show that, "under all the circumstances, . . . there is a substantial controversy, between . . . parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment." (*Id.* at 5, citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).) In evaluating jurisdictional facts, the Court may weigh and consider evidence outside the pleadings. (*Id.* at 4-5, citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).)

### III.   STATEMENT OF FACTS

On March 3, 2021, CogniPower moved to dismiss PI's counterclaims for declaratory judgment of noninfringement, arguing, in pertinent part, that PI had not established that there is a case or controversy between PI and CogniPower sufficient to provide subject-matter jurisdiction over PI's counterclaims—the same arguments it raises in this motion. D.I. 67. The Court denied this motion on April 1, 2024. D.I. 120; *compare* D.I. 68 § III.B (arguing that no case or controversy exists between PI and CogniPower) *with* D.I. 71 § IV.A ("The Record Establishes an Actual Controversy").

The Court set forth the other most salient facts in granting PI's motion to intervene. *See* D.I. 59. The Court found "Power Integrations has a sufficient interest in this case. Its chips lie at the heart of CogniPower's infringement claims and there is credible record evidence that CogniPower is telling at least one other customer of Power Integrations that the customer's use of the same chips at issue here exposes that customer to claims of infringing CogniPower's patents." *Id.* at 3. Indeed, the Court found "CogniPower has told at least one existing Power Integrations customer that CogniPower's patents 'can be mapped to any power converter containing any [PI] InnoSwitch controller.'" *Id.* Moreover, the Court found that intervention as of right was justified so that PI could "litigate this case to a judgment that would protect most fully *Power Integrations' chips* and its *other customers* who use those chips." *Id.* at 3-4 (emphasis added). The "other customers" before the Court at that time included Samsung, and still do. *See* D.I. 28 at 2.

In addition, PI submitted its proposed answer and counterclaims along with its motion to intervene. *See* D.I. 29-2. After the Court granted that motion, PI filed its answer and counterclaims.

2

D.I. 60. The counterclaims that PI actually filed are the same as the ones previously submitted in all material respects; the only difference is that PI omitted confidential information the Court had already seen, so PI could make its pleading public. *Compare* D.I. 29-2 pp. 12-22 with D.I. 60 at pp. 12-20.

## IV.     ARGUMENT

### A.     CogniPower Violates the Law of the Case

CogniPower's motion seeks to relitigate issues that CogniPower raised before this Court twice before and ***lost***, both times. D.I. 120;[1] D.I. 38. CogniPower's loss—and the Court's findings that it has subject-matter jurisdiction over PI's counterclaims—are both law of the case. CogniPower cannot identify any valid reason to justify relitigating the question of subject-matter jurisdiction, and therefore CogniPower's motion should be denied for that reason alone.

The two instances in which the Court has seen CogniPower's arguments before—and rejected them—are D.I. 120 (denying CogniPower's previous motion to dismiss) and D.I. 59 (granting PI's motion to intervene as of right). In its March 2021 motion to dismiss (D.I. 68), and in its opposition to PI's motion to intervene (D.I. 38), CogniPower made the same arguments it makes here: the allegations CogniPower made in the customer slides—which say that "[c]laims of the CogniPower DPR patent family can be mapped to ***any*** power converter containing any InnoSwitch controller," D.I. 29-1 (emphasis added)—along with the complaint, the infringement

---

[1] CogniPower seems to suggest that the Court did not mean to deny its first motion to dismiss, claiming that "the parties and Court were focused on setting a case schedule" when the Court issued its order denying that motion, D.I. 166 at 7. Putting aside the fact that the Court is not required to issue a written opinion (*see, e.g., Lowe v. ShieldMark, Inc.*, No. 2021-2164, 2022 WL 636100, at *7 (Fed. Cir. Mar. 4, 2022); *Matthews v. Norristown State Hosp.*, 528 F. App'x 115, 117-18 (3d Cir. 2013) (affirming motion to dismiss ruling made without written opinion)), the Court's ruling was no accident—the Court correctly denied CogniPower's motion. D.I. 120; *compare* D.I. 68 § III.B (arguing that no case or controversy exists between PI and CogniPower) *with* D.I. 71 § IV.A ("The Record Establishes an Actual Controversy").

3

contentions, and CogniPower's opposition to Anker and PI's motion to strike—allegedly do not form the basis for a controversy between PI and CogniPower. *Compare* D.I. 68 § III.B.1 *and* D.I. 38 § IV.C *with* D.I. 166 § III; *see also* D.I. 175 ("CogniPower's initial contentions put Anker/PI on notice that CogniPower's infringement claims covered *any* Anker product using *any* InnoSwitch chip."). But the Court has repeatedly rejected multiple flavors of this argument. Judge Connolly noted that at the time of PI's motion to intervene, "it [was] **undisputed** that Power Integrations' InnoSwitch chips ***lie at the heart*** of CogniPower's [infringement] claims." D.I. 59 at 3 (emphasis added). Accordingly, Judge Connolly held that PI's interest in defending against claims of infringement rooted so deeply in PI's chips justify PI's intervention here ***as of right***. *Id.* at 1–2 ("Power Integrations has satisfied all four elements" of Rule 24(*a*) intervention as of right, not just Rule 24(b) permissive intervention). This Court rejected CogniPower's contrary argument ***again*** by denying CogniPower's March 2021 motion to dismiss. D.I. 120; *compare* D.I. 68 § III.B (arguing that no case or controversy exists between PI and CogniPower) *with* D.I. 71 § IV.A ("The Record Establishes an Actual Controversy").

In short, the Court has ***already decided*** on a rule of law—there is a sufficient case or controversy between PI and CogniPower. "[T]hat decision should continue to govern the ***same*** issues in subsequent stages in the ***same*** case." *In re Cont'l*, 279 F.3d at 233 (emphasis added).

Further, the Court has already exercised jurisdiction over PI's counterclaims and should continue to do so. PI's dispute with CogniPower "lies at the heart" of the present case, and it is also significant for PI and PI's other customers. D.I. 59 at 3. CogniPower, through its contentions, complaint, customer slides, ***and*** its latest brief opposing Anker and PI's motion to strike (D.I. 175) has repeatedly alleged that key elements of the claims of the asserted patents exist only in PI's chips, not any other components. *See* Ex. A; D.I. 1 at ¶¶ 39-49, 70-72; D.I. 29-1 at 13-16, 58-60,

4

63-64, 66-67; D.I. 175. PI, through its counterclaims, argues otherwise. If PI is right—and PI will show that it is—then nothing else matters for CogniPower's claims against Anker, because none of CogniPower's asserted patent claims would be infringed. In particular, the fact that CogniPower relies on certain circuit elements which are not themselves part of PI's chips to satisfy other claim limitations does not matter. If the necessary elements CogniPower points to and alleges are *in* the PI chips, in fact, fail to meet those claim limitations (as they do), nothing else matters.

Similarly, the existence of other chip suppliers for some of Anker's unaccused products—the only alleged "changed circumstance" that CogniPower can muster—does not affect PI's right to have its counterclaims decided here. Whether or not CogniPower *also* has disputes with other chipmakers does not negate its dispute with PI. Moreover, putting aside the fact that CogniPower cannot demonstrate good cause nor meet the *Pennypack* factors to justify its years-late "supplement" (D.I. 173; D.I. 174), CogniPower's only infringement accusations with any detail all rely nearly *exclusively* on PI documentation and schematics. As the Court has held, PI has a strong interest in bringing its counterclaims here to "protect most fully Power Integrations' chips and its other customers who use those chips," including Anker *and* Samsung (who CogniPower entirely ignores in its motion). D.I. 59 at 3-4. The specter of other products involving other suppliers does not lessen **PI's** interest in the slightest.

CogniPower emphasizes it does not currently accuse PI itself of infringement—likely because CogniPower prefers to sue PI's customers, such as Anker and Samsung—but nothing stops CogniPower from changing its mind down the road and deciding to allege direct and indirect infringement explicitly against PI. As PI explained previously and **the Court has ruled**, CogniPower has made very clear implicit allegations of indirect infringement against PI. D.I. 59 at 3–4; *see also* D.I. 120. While PI agrees that CogniPower has not yet made those implicit

5

allegations explicit by bringing infringement claims against PI itself, PI does not have to stand by waiting to see if CogniPower decides to change its mind. PI thus retains the same interest noted by Judge Connolly—the interest in "protect[ing] most fully Power Integrations' chips and its other customers who use those chips." D.I. 59 at 3–4. PI also has a strong interest in defending its customers by filing a single case to resolve all issues regarding PI's chips.

None of CogniPower's cited cases are relevant here. While "Microchip ha[d] not identified a single legal claim that it believe[d] Chamberlain could have brought" absent a declaratory judgment action, PI has *repeatedly* identified multiple claims that CogniPower could have brought absent PI's counterclaims—claims of indirect infringement against PI under the asserted patents. *See Microchip Tech. Inc. v. Chamberlain Grp., Inc.*, 441 F.3d 936, 943 (Fed. Cir. 2006).

While the patentee in *Allied Min. Prods., Inc. v. Osmi, Inc.* "took no actions directed" at the declaratory judgment plaintiff there, this Court has **already ruled** that CogniPower **has** taken actions directed at PI: "telling at least one other customer of Power Integrations [Samsung] that the customer's use of the same chips at issue here exposes that customer to claims of infringing CogniPower's patents." D.I. 59 at 3.

Similarly, while PI might not have a "right to bring [its counterclaims] *solely* because [its] customers have been sued," *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014) (emphasis added), the Court has **already ruled** that CogniPower's implied allegations of indirect infringement put PI *itself* at sufficient legal risk to justify its counterclaims. D.I. 59 at 3 ("If Defendants' accused products are found to infringe the asserted patents and those patents are found to be valid, Power Integrations would face significant risks" beyond just economic harm, not least because "CogniPower has told at least one existing Power Integrations customer that CogniPower's patents 'can be mapped to any power converter containing any InnoSwitch

6

controller.'" (quoting D.I. 29-1 at 14)). These risks were why Judge Connolly granted PI's motion to intervene, even though he had originally dismissed PI's separate complaint for declaratory judgment before PI discovered the Samsung evidence. *See id.* at 3.

Finally, because CogniPower has brought a second motion to dismiss on the same grounds as its first one, CogniPower's second motion is, in effect, an untimely motion for reconsideration filed *months* after the 14-day deadline for such motions under the Local Rules. *Acceleration Bay LLC v. Activision Blizzard, Inc.*, 637 F. Supp. 3d 141, 151 (D. Del. 2022) ("Defendant previously moved for summary judgment of non-infringement, however, and I ruled on that motion. . . . Thus, Defendant's present request for summary judgment of non-infringement is, in essence, an untimely motion for reconsideration."); D. Del. L.R. 7.1.5 ("If a party chooses to file a motion for reargument, said motion shall be filed within 14 days after the Court issues its opinion or decision . . ."). CogniPower has provided no sufficient reason for the Court to hear reargument on the motion it already denied, and thus CogniPower's motion must be dismissed for this reason as well.

### B. The Scope of PI's Counterclaims is Clear and Should Not Be Limited

If at one time it was "***undisputed*** that Power Integrations' InnoSwitch chips lie at the heart of CogniPower's [infringement] claims," D.I. 59, and CogniPower has not identified any changed circumstances as to subject-matter jurisdiction, then what *has* changed? The real purpose of CogniPower's motion is to prevent PI from obtaining a judgment that helps its customer Samsung in CogniPower's second-filed case pending in Texas. This was the subject of a hearing and order earlier in the year, in which the Court set a schedule consistent with PI's request that its first-filed action should be not be delayed. *See* D.I. 147; D.I. 154 ("The court is not inclined to disrupt the trial schedule by ordering a six-month extension of the fact discovery deadline).

PI has been consistent in the scope of its counterclaims across the pleadings and discovery: PI seeks a declaratory judgment that ***no*** InnoSwitch or LytSwitch-6 products—none—***or their use***

7

***in a power supply*** infringe the asserted patents. D.I 60 ¶¶ 24-25, 32-33. CogniPower's alleged confusion ignores the clear statements that PI has made, and that the Court has understood when ruling on PI's motion to intervene and PI's motion to amend its counterclaims.

Even the excerpt from the counterclaims CogniPower reproduces is clear: PI alleges that "no power supply product using PI's InnoSwitch and LytSwitch-6 products infringes" the asserted patents. D.I. 166 at 15 (quoting D.I. 60). What could possibly be unclear about that statement? Moreover, PI reinforced this statement in the interrogatory response CogniPower quotes, saying that "any product that incorporates an InnoSwitch chip falls within the scope of PI's counterclaim" for noninfringement, whether that product is an Anker product, Samsung product, or otherwise. *Id.* at 15. Further, the Court—contrary to CogniPower's claim that the scope of PI's counterclaims was "never discussed"—has noted, while granting PI's motion to intervene, that PI's claims and interest extend to protect both "Power Integrations' chips *and* [PI's] other customers who use those chips." That Samsung, for example, uses PI InnoSwitch chips is no surprise to CogniPower, as CogniPower has sued Samsung *alleging infringement based on the use of InnoSwitch*. D.I. 59 at 3-4. And, as noted above, the very CogniPower presentation on which the Court relied in granting PI intervention was about Samsung's use of PI's chips.

Finally, CogniPower's complaint about PI's production and discovery responses ignores the law of relevance. The scope of PI's counterclaims—all products incorporating InnoSwitch and LytSwitch-6 chips do not infringe the asserted patents—has been consistent since the beginning. As noted above, PI can and will prove noninfringement of any product using those chips based on the absence of critical claim limitations that CogniPower points to in the chips themselves; discovery into other customer components is unnecessary and irrelevant. And PI has *already produced* all relevant documents for its counterclaims, because the only relevant documents with

8

respect to PI's noninfringement counterclaim are the PI technical documents that CogniPower has had since 2020. By contrast, the only products accused in CogniPower's operative infringement contentions are Anker products, and thus any discovery into customer products CogniPower has *not* accused is irrelevant to CogniPower's affirmative claims (including damages). Moreover, as explained in Anker and PI's multiple letter briefs on this issue, CogniPower cannot satisfy the *Invensas* factors to justify obtaining discovery into non-accused products. D.I. 173; D.I. 174.

### C. The Record Establishes an Actual Controversy

There is no question that the record establishes an actual controversy between PI and CogniPower. CogniPower has now made multiple accusations of indirect infringement against PI across multiple forums—all of a piece with the accusations that this Court previously found justified PI's intervention. CogniPower's motion should be denied for this independent reason alone.

As Judge Connolly previously explained in a related case, when a patentee accuses a supplier's customer of patent infringement, "there may be an implicit assertion that the supplier has indirectly infringed the patent." (20-15-CFC, D.I. 17 at 6, citing *Arris Grp., Inc. v. British Telecomm. PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011).) As the Court further explained, "[i]n determining whether a defendant made an implied assertion of indirect infringement, the court analyzes each element required for indirect infringement." (*Id.* at 6-7, citing *DataTern*, 755 F.3d at 905.) As detailed below, PI's motion to intervene included ample evidence that CogniPower made implied assertions of both contributory and induced infringement. CogniPower's strategic attempt to run away from those assertions just as it attempts to run away from this jurisdiction does not change the analysis. And, as noted above, the Court may weigh and consider evidence outside the pleadings in evaluating subject matter jurisdiction. (20-15-CFC, D.I. 17 at 4-5, citing *Gould*, 220 F.3d at 176.)

9

Here, CogniPower's contentions, as well as its complaint and the customer slides at issue in the previous intervention motion, all allege that PI's product documentation, such as diagrams in datasheets, tells PI's customers how to build the power converters that CogniPower accuses of infringement. *See* Ex. A; D.I. 1 at ¶¶ 39-49, 70-72; D.I. 29-1 at 13-16, 58-60, 63-64, 66-67. CogniPower's contentions—just like its complaint, and just like its customer slides—extensively excerpt that PI documentation to make its infringement allegations. This Court, looking only at the complaint and customer slides, held that "there is credible record evidence that CogniPower is telling at least one other customer of Power Integrations that the customer's use of the same chips at issue here exposes that customer [Samsung] to claims of infringing CogniPower's patents." D.I. 59 at 2-3. CogniPower does not acknowledge the Court's holding, which is law of the case.

Moreover, ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████ D.I. 44 ¶¶ 3–4. The "existence of an indemnity agreement" alone "giv[es] [PI] the required concrete stake in litigating [███████████] freedom from infringement liability to [CogniPower]." *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 34 F.4th 1334, 1346 (Fed. Cir. 2022) ("But we have never held that the validity of an indemnity demand, *i.e.*, the applicability of an indemnity agreement to the demander's circumstances, needs to be conceded to establish subject-matter jurisdiction. Indeed, other cases refer only to the '*existence* of an indemnity agreement,' not its conceded applicability in the particular case." (cleaned up; emphasis added)).

### 1. CogniPower Has Made Implied Assertions of Contributory Infringement

As this Court previously held, "Power Integrations' InnoSwitch chips lie at the heart of CogniPower's claims that Defendants' products infringe CogniPower's patents," as "CogniPower is telling at least one other customer of Power Integrations that the customer's use of the same chips at issue here exposes that customer to claims of infringing CogniPower's patents." D.I. 59 at 2. That allegation—the asserted patents "can be mapped to any power converter containing any InnoSwitch controller," D.I. 29-1 at 13—is a straightforward assertion of contributory infringement that CogniPower *repeated* in its opposition to Anker and PI's motion to strike CogniPower's supplemental infringement contentions since filing the instant motion to dismiss. D.I. 175 at 1 (CogniPower arguing that "CogniPower's initial contentions put Anker/PI on notice that CogniPower's infringement claims covered *any* Anker product using *any* InnoSwitch chip"). Nothing has disturbed the Court's finding, and CogniPower's motion should be denied.

As previously explained by Judge Connolly in a related case, "[t]o hold a component supplier liable for contributory infringement, a patent holder-must show, inter alia, that (a) the supplier's product was used to commit acts of direct infringement; (b) the product's use constituted 'a material part of the invention'; (c) the supplier knew its product was 'especially made or especially adapted for use in an infringement' of the patent; and (d) the product is 'not a staple article or commodity of commerce suitable for substantial noninfringing use.'" (20-15-CFC D.I. 17 at 7, citing *Arris*, 639 F.3d at 1376 and 35 U.S.C. § 271(c).)

Just as it did at the time of CogniPower's previous motion to dismiss, the record contains ample evidence to support each element. First, CogniPower has alleged that PI's chips have been used to commit infringement—both by the defendants here and by the other PI customer identified in PI's motion to intervene. *See* Ex. A; D.I. 1 at ¶ 34 (the accused products all "incorporate circuitry

11

providing demand pulse regulation such as a Power Integrations InnoSwitch or LytSwitch-6 chip"); D.I. 29-1 (CogniPower slides given to PI customer) at 13 ("Claims of the CogniPower DPR patent family can be mapped to any power converter containing any InnoSwitch controller"); *id.* at 8 (specifically identifying '713 and '013 patents at issue); *id.* at 11 (identifying specific accused products)).

Second, CogniPower has repeatedly alleged, in substance, that PI's chips constitute "a material part of the invention." Indeed, the Court has already found PI's chips "lie at the heart of CogniPower's infringement claims." D.I. 59 at 3. For example, CogniPower's contentions, complaint, and slides all rely extensively on PI's InnoSwitch documentation to allege infringement. *E.g.*, Ex. A; D.I. 1 at ¶¶ 39-49, 70-72; D.I. 29-1 at 13-16, 58-60, 63-64, 66-67. Those allegations show that CogniPower itself believes PI's chips are a material part of the claims.

Third, CogniPower has alleged that PI's chips are "especially made or especially adapted for use in an infringement." CogniPower's statement to Samsung that the patent claims "can be mapped to *any* power converter containing any InnoSwitch controller" (D.I. 29-1 at 13, emphasis added) is an assertion that "use of the same chips at issue here exposes [Samsung] to claims of infringing CogniPower's patents"—a clear assertion that PI's chips are especially adapted for use in an infringement. D.I. 59 at 3. The same is true of the infringement allegations in CogniPower's contentions and complaint, as noted above, which rely extensively on PI's own product documentation.

Fourth, CogniPower has alleged that PI's chips are "not a staple article or commodity of commerce suitable for substantial noninfringing use." Again, CogniPower's statement that its patent claims "can be mapped to *any* power converter containing any InnoSwitch controller" is at least an implied assertion that PI's InnoSwitch chips have no substantial noninfringing use.

12

CogniPower's present contention otherwise is at odds not only with the customer slides, but also with its statements to the Court. As PI noted at the hearing on PI's motion to amend its counterclaims, CogniPower is "inconsistent on this very point." Ex. B (D.I. 130) at 22:13-14. On one hand, CogniPower claims that PI's chips have become commodities, but then in its letter brief regarding PI's motion to amend, CogniPower recounts the many "***material differences***" (emphasis in original) between chips made by PI, Dialog, and Diodes. D.I. 117 at 1 (noting that "these 'material differences' are reflected in CogniPower's contentions").

Therefore, as the Court ruled, an actual controversy exists between PI and CogniPower.

### 2. CogniPower Has Made Implied Assertions of Induced Infringement

CogniPower's assertions of induced infringement have only grown since its previous motion to dismiss. As previously explained by Judge Connolly, "[t]o prove inducement of infringement, unlike direct infringement, the patentee must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement." (20-15-CFC, D.I. 17 at 9, citing *DataTern*, 755 F.3d at 904.)

Here, CogniPower's two sets of contentions, as well as its complaint and the customer slides at issue in the previous motion, all allege that PI's product documentation, such as diagrams in datasheets, tells PI's customers how to build the power converters that CogniPower accuses of infringement. *See* Ex. A; D.I. 1 at ¶¶ 39-49, 70-72; D.I. 29-1 at 13-16, 58-60, 63-64, 66-67. CogniPower's contentions—just like its complaint, and just like its customer slides—extensively excerpt that PI documentation to make its infringement allegations. Further, CogniPower alleges that "Power Integrations . . . had knowledge" of U.S. Patent No. 9,071,152, which became the reissue patents in suit here. Ex. C at 40. Moreover, in its recent opposition to Anker and PI's motion to strike new contentions that CogniPower served in September of this year, CogniPower argued that "CogniPower's initial contentions put Anker/PI on notice that CogniPower's infringement

13

claims covered *any* Anker product using *any* InnoSwitch chip." D.I. 175 at 1. Thus, CogniPower has made at least an implied assertion that PI induces infringement, so an actual controversy exists.

## V. CONCLUSION

For the reasons discussed above, PI respectfully requests that CogniPower's motion be denied.

Date:  September 30, 2024

**FISH & RICHARDSON P.C.**

By: */s/ Warren K. Mabey, Jr.*
Douglas E. McCann (No. 3852)
Warren K. Mabey, Jr. (No. 5775)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-5070
Email: dmccann@fr.com; mabey@fr.com

Frank E. Scherkenbach
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Telephone: (617) 542-5070
Email: scherkenbach@fr.com

Michael R. Headley
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Telephone: (650) 839-5070
Email: headley@fr.com

*Attorneys for Defendants*
*FANTASIA TRADING, LLC D/B/A*
*ANKERDIRECT, ANKER INNOVATIONS*
*LIMITED, and Intervenor POWER*
*INTEGRATIONS, INC.*

14

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2024, I caused the foregoing to be served via electronic mail upon all counsel of record.

>  */s/ Warren K. Mabey, Jr.*
>  Warren K. Mabey, Jr. (# 5775)