IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COGNIPOWER LLC, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-2293-JLH-SRF |
| | ) | |
| FANTASIA TRADING, LLC D/B/A ANKERDIRECT and ANKER INNOVATIONS LIMITED, | ) ) ) ) | |
| Defendants, | ) ) | |
| POWER INTEGRATIONS, INC., | ) ) | |
| Intervenor/Counterclaim Plaintiff. | ) | |

**MEMORANDUM ORDER**

At Wilmington this **23rd** day of **October, 2024**, the court having considered the parties' letter submissions (D.I. 172; D.I. 173; D.I. 174; D.I. 175; D.I. 205; D.I. 209), and the arguments presented during the discovery dispute motion hearing on October 21, 2024, IT IS ORDERED that the pending motions at D.I. 163, D.I. 181, and D.I. 203 are addressed as follows:

1. **Procedural background.** This patent infringement action was filed by plaintiff CogniPower LLC ("Plaintiff") on December 18, 2019. (D.I. 1) The complaint alleges that defendants Fantasia Trading LLC d/b/a AnkerDirect and Anker Innovations Limited (collectively, "Anker") infringe the asserted patents by making, using, offering to sell, selling, and/or importing chargers "that incorporate circuitry providing demand pulse regulation such as a Power Integrations InnoSwitch or LytSwitch-6 chip." (*Id.* at ¶ 34) Power Integrations, Inc. ("PI") intervened in the action and filed its answer and counterclaims for declaratory judgment of

noninfringement by its InnoSwitch™ and LytSwitch-6™ products on February 3, 2021. (D.I. 60 at ¶ 33)

**2.** Under the original scheduling order in this case, infringement contentions were due in August of 2020, the deadline to amend the pleadings passed on May 3, 2021, and the case was originally scheduled to go to trial in May of 2022. (D.I. 23) On July 15, 2021, the court entered an order staying the case pending resolution of *inter partes* review ("IPR") proceedings before the U.S. Patent and Trademark Office. (D.I. 85) Final written decisions were expected in May of 2022, and the Federal Circuit issued its judgment following Anker's appeal from the IPRs on February 9, 2024. (D.I. 78 at 5; D.I. 112 at 3)

**3.** While the case was stayed, the parties notified the court that a scheduling order had been entered in a parallel action in Texas that was filed by Plaintiff against Samsung Electronics Co., Ltd. (D.I. 108) Jury selection in the Texas action is scheduled to begin in March of 2025. (*Id.*, Ex. A at 1; E.D. Tex. C.A. No. 2:23-160-JRG, D.I. 231)

**4.** The stay of this case was lifted on February 26, 2024. (D.I. 113) The court entered a new scheduling order setting a fact discovery cutoff of August 20, 2024 and a trial date of August 18, 2025. (D.I. 121; D.I. 130 at 49:22-50:2) The amended scheduling order did not include revised deadlines for amended pleadings or infringement and invalidity contentions. (D.I. 121) The parties have since stipulated to amend the fact discovery cutoff to November 1, 2024. (D.I. 183) The August 18, 2025 trial date remains in place. (*Id.*)

**5. Plaintiff's motion for leave to supplement its infringement contentions is DENIED without prejudice.** Plaintiff CogniPower LLC's infringement contentions were due in August of 2020. (D.I. 23 at ¶ 3) The scheduling order advised that "[a]mendment of the Infringement Contentions . . . may be made only by order of the Court upon a timely showing of

2

good cause." (*Id.* at ¶ 7) When the scheduling order deadline for contentions has passed, good cause may be shown by demonstrating "diligence both in discovering that an amendment was necessary and in moving to amend after that discovery." *Brit. Telecommc'ns PLC v. IAC/InterActiveCorp*, C.A. No. 18-366-WCB, 2020 WL 3047989, at *2 (D. Del. June 8, 2020) ("Unlike the liberal policy for amending pleadings, the philosophy behind amending infringement . . . contentions is decidedly conservative[.]"); *see also Impossible Foods Inc. v. Motif Foodworks, Inc.*, C.A. No. 22-311-WCB, 2024 WL 3742229, at *2 (D. Del. July 26, 2024).

**6.** About six months after the stay was lifted in this case, Plaintiff served its proposed supplemental infringement contentions. Plaintiff sought leave to amend the contentions one week later, on September 11, 2024. (D.I. 163) The parties' dispute regarding the proposed supplemental infringement contentions focuses primarily on three changes: (1) the identification of new accused products that are allegedly "reasonably similar" to the previously accused products; (2) the inclusion of an earlier date of conception with citations to supporting evidence; and (3) the addition of new doctrine of equivalents ("DOE") allegations and a post-suit willful infringement claim. (D.I. 172, Ex. B) For the following reasons, Plaintiff has not shown the requisite good cause to supplement its infringement contentions.

**7.** *"Reasonably similar" products.* Plaintiff argues that it has consistently asserted a scope that includes all Anker products having PI InnoSwitch™ or LytSwitch-6™ chips, and the products added to its proposed supplemental infringement contentions fall within this scope. (D.I. 172 at 3) But Plaintiff's interrogatories served on April 29, 2024 define "Accused Products" as "any product that provides, implements, embodies and/or supports power conversion, management and/or regulation by way of a switched-mode or flyback power

3

converter . . . as exemplified in, but not limited to, the Accused Products identified in CogniPower's Infringement Contentions and Anker products that are substantially similar to those Accused Products." (*Id.*, Ex. N at 3) Plaintiff's original infringement contentions identified twelve products from the InnoSwitch3™ family, reflecting a narrower scope than the original complaint which identified products from other InnoSwitch™ and LytSwitch-6™ chip families. (D.I. 173, Ex. 5) Thus, Plaintiff's interrogatories served more than two months after the stay was lifted reflect the narrower scope of the original 2020 infringement contentions encompassing Anker products with chips from the InnoSwitch3™ family.

**8.** Before the stay was entered, Plaintiff served requests for production that defined "Pertinent Products" to broadly encompass the products identified in the complaint, including products containing the InnoSwitch™, InnoSwitch3™, or LytSwitch-6™ products. (D.I. 172, Ex. G at 3) This pre-stay definition confirms that Plaintiff knew how to define the products accused of infringement and had three years to consider the scope of the accused products during the stay. Yet Plaintiff's post-stay interrogatories served in April of 2024 direct Anker to look at the products charted in the original infringement contentions, which specifically identified products only in the InnoSwitch3™ family. (*Id.*, Ex. N at 3; D.I. 173, Ex. 5) The catch-all language in the post-stay discovery requests about "reasonably similar" products is not sufficient to inform Anker that Plaintiff intended to re-assert infringement claims against the pre-stay "Pertinent Products" or the full scope of accused products identified in the complaint. The differences in the scope of Plaintiff's pre-stay and post-stay discovery requests demonstrate Plaintiff's lack of diligence in pursuing its claims across the broader spectrum of Anker products.

**9.** Plaintiff also fails to tie the new allegations in its supplemental infringement contentions to documents and evidence it received only recently in discovery. Because of PI's

4

counterclaims seeking a declaratory judgment of noninfringement, PI already produced extensive discovery on its InnoSwitch™ and LytSwitch-6™ products. (D.I. 91, Ex. 2 at ¶ 33) For example, PI began producing documents on the original InnoSwitch™ chips in 2020. (*See, e.g.,* D.I. 1 at ¶¶ 40-46; D.I. 174 at 2) Now, Plaintiff identifies Anker products having the original InnoSwitch™ chips in its proposed amended contentions even though it has had the relevant documents on the original InnoSwitch™ chips for years. (D.I. 172, Ex. B at 4-5)

**10.** In a footnote, Plaintiff suggests that Anker products using different supplier chips from other manufacturers are also infringing. (D.I. 172 at 2 n.3) Plaintiff does not elaborate on how these products would be "reasonably similar" to products containing PI chips, and the court need not consider arguments raised in passing, such as in a footnote. *See Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023). Anker further represents that information on Anker products using chips from other manufacturers has been publicly available on product pages from Anker's website since at least 2022. (D.I. 174 at 2) These circumstances undercut Plaintiff's assertion of diligence.

**11.** The prejudice Anker would suffer from the addition of almost 40 new accused products also weighs against allowing Plaintiff to supplement its infringement contentions at this late stage. *See Brit. Telecommc'ns*, 2020 WL 3047989, at *2 (considering the potential prejudice to the opposing party from the untimely amendment of contentions as a factor in the good cause analysis).[1] Both sides have emphasized the importance of maintaining the case schedule and

---

[1] Plaintiff does not present any argument on the importance of the new allegations, the difficulty of locating the new information, or any gamesmanship evident from PI and Anker's alleged untimely disclosure. (D.I. 172) These factors weigh against permitting Plaintiff's supplementation of the infringement contentions. The importance of the new allegations is further diminished by Plaintiff's shifting positions on whether to accuse Anker products containing chips from the original InnoSwitch™ family. (*See, e.g.,* D.I. 1 at ¶¶ 40-46; D.I. 174 at 2; D.I. 172, Ex. B at 4-5)

5

avoiding disruption of the trial date. (D.I. 173, Ex. 2 at 19:8-22, 34:4-11) Expanding the infringement contentions to encompass nearly 40 additional accused products would frustrate the goal of keeping the case schedule on track. *Cf. British Telecommc'ns*, 2020 WL 3047989, at *4 (finding no severe prejudice where additional fact discovery was not required and the new prior art reference could be addressed within the allotted period for expert discovery).

**12.** *Date of conception.* Plaintiff has not shown diligence regarding its proposal to modify the conception date. Evidence of the conception date is necessarily in Plaintiff's possession. *See Guardian Media Techs., Ltd. v. Amazon.com, Inc.*, 2014 WL 12561616, at *5 (C.D. Cal. Dec. 9, 2014) ("[T]o prove a conception date prior to the actual filing of his patent application, Plaintiff must produce independent evidence corroborating the earlier date."). Yet Plaintiff does not persuasively explain why it could not modify the conception date earlier in the proceedings. (D.I. 174 at 3)

**13.** Moreover, Plaintiff's proposed modification to the conception date would result in undue prejudice to Anker. (D.I. 173 at 3) (explaining that Plaintiff's new conception date "could eliminate some of the key asserted prior art Anker has relied upon—*i.e.*, the original InnoSwitch™ development . . . –and Anker was not given an opportunity to develop invalidity theories in this case or prepare IPRs in view of the newly alleged date."). An untimely assertion of an earlier conception date may prejudice an accused infringer if the new date range pre-dates the accused infringer's prior art references, impacting the invalidity theories. *See, e.g., Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, 2017 WL 3888869, at *2 (N.D. Cal. Apr. 17, 2017). Considerations of prejudice therefore weigh against granting Plaintiff's motion to supplement the infringement contentions to assert a new conception date.

14. ***Willful infringement and DOE allegations.*** For the reasons set forth at ¶ 24, *infra*, Plaintiff has not shown the requisite diligence in moving to add allegations of post-suit willful infringement to its supplemental infringement contentions and proposed amended pleading. (D.I. 172, Ex. A at 3) Regarding the proposed amended DOE allegations, Plaintiff argues that the supplemental contentions elaborate on the DOE theory asserted in the original contentions. (10/21/2024 Tr.) But Plaintiff's original contentions contained only a single conclusory paragraph addressing its DOE theory of infringement. (D.I. 173, Ex. 5 at 5) Plaintiff offers no explanation for why it could not supplement its DOE contentions to provide more detail prior to September of 2024. Consequently, Plaintiff's motion to supplement the infringement contentions is DENIED in all respects.

15. **Plaintiff's motion to compel Anker to produce the requested discovery in accordance with Plaintiff's definition of "reasonably similar products" is DENIED without prejudice.** In considering a motion to compel discovery on unaccused products, the court assesses on a case-by-case basis: (1) "the specificity with which the plaintiff has articulated how the unaccused products are relevant to its existing claims of infringement (and how they are thus 'reasonably similar' to the accused products at issue in those claims); (2) whether the plaintiff had the ability to identify such products via publicly available information prior to the request and (3) the nature of the burden on defendant(s) to produce the type of discovery sought." *Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 282 (D. Del. 2012). Plaintiff's submission only addresses the first *Invensas* factor. (D.I. 172 at 1-2)

16. In an Oral Order entered on August 26, 2024, the court denied Plaintiff's request to compel discovery on unaccused products because Plaintiff did not provide "a clear and precise definition of what is sought" in accordance with the *Invensas* factors. (D.I. 154) The court

7

ordered Plaintiff to provide Anker with a specific definition of "reasonably similar" products and further confer on the issue. (*Id.*)

**17.** Now, Plaintiff defines "reasonably similar" products as "Anker products that implement power conversion, management and/or regulation that incorporate circuitry providing demand pulse regulation such as PI's InnoSwitch™, InnoSwitch3™, and InnoSwitch4™ chips." (D.I. 172 at 1) Plaintiff elaborates that the PI controller chip is "the specific component . . . which is essential to establishing infringement of the asserted patents by the accused Anker products[.]" (*Id.*) But Plaintiff adds ambiguity by suggesting in a footnote that "reasonably similar" products may include Anker products that use chips from different, unidentified suppliers. (*Id.* at 2 n.3)

**18.** Plaintiff also does not address how PI's InnoSwitch™ and InnoSwitch4™ chips are "reasonably similar" to the InnoSwitch3™ chips included in the original infringement contentions. Plaintiff alleges in its proposed supplemental infringement contentions that each of the InnoSwitch™ chip families "incorporate circuitry providing demand pulse regulation, and are the same in relevant part for infringement purposes." (D.I. 172 at 1-2; Ex. B at 4-32) But Anker maintains that even the accused InnoSwitch3™ products do not meet the "demand pulse regulation" claim term. (D.I. 70 at 2-3; D.I. 174 at 4) PI and Anker have provided discovery showing that these different families of PI chips "use a different control algorithm for controlling the primary-side switch," among other differences that are directly relevant to Plaintiff's proposed supplemental infringement contentions. (D.I. 174, Ex. 1 at 10-11; D.I. 172, Ex. B at 9)

**19.** Plaintiff presents no argument on the second and third *Invensas* factors regarding the public availability of the information and the burden to produce the requested discovery. (D.I. 172 at 1-2) The court finds that these factors also weigh against compelling discovery on

8

unaccused products. Anker represents that Plaintiff's new contentions for unaccused products are based on publicly available schematics and datasheets. (D.I. 174 at 4) Moreover, Plaintiff seeks discovery on approximately 40 new products without addressing the burden imposed on Anker. (*Id.*) Obtaining the necessary discovery on these additional products is further complicated by Anker's representation that the documents must be obtained from China, where Anker is located. (*Id.*) On balance, the *Invensas* factors weigh against granting Plaintiff's requested discovery.

**20. Anker and PI's motion to strike Plaintiff's supplemental infringement contentions is DENIED as moot due to the denial of Plaintiff's motion to supplement.** PI and Anker move to strike Plaintiff's supplemental infringement contentions in their entirety. (D.I. 173, Proposed Order) The court has denied Plaintiff's motion to supplement its infringement contentions and, as a result, Plaintiff's original infringement contentions from 2020 are the operative contentions. Thus, PI and Anker's motion to strike the supplemental contentions is moot.

**21.** The *Pennypack* factors governing a motion to strike largely overlap with the test governing the motion for leave to supplement the infringement contentions. For example, the tests set forth in both *Pennypack* and *British Telecommunications* require consideration of prejudice, the importance of the information, and bad faith or gamesmanship. *Compare Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) *with Brit. Telecommc'ns*, 2020 WL 3047989, at *2. The *Pennypack* analysis also requires consideration of the potential disruption of an orderly and efficient trial. *Konstantopoulous*, 112 F.3d at 719. This factor weighs in favor of Anker because the addition of nearly 40 accused products, an altered conception date, and a new willful infringement claim would expand the scope of discovery,

9

resulting in delays to the trial schedule that would frustrate both sides' goal of getting this case to trial in a timely fashion. (D.I. 173, Ex. 2 at 19:8-22, 34:4-11); *see TQ Delta, LLC v. ADTRAN, Inc.*, C.A. No. 14-954-RGA, 2019 WL 4346530, at *2 (D. Del. Sept. 12, 2019).

**22. Plaintiff's motion for leave to amend its complaint to add a willful infringement claim is DENIED without prejudice.** Plaintiff seeks leave to amend the complaint to add a cause of action for post-suit willful infringement based on documents recently disclosed in discovery. (D.I. 205, Ex. B at ¶¶ 55-59, 62, 84-88, 91) Anker contends that leave to amend should be denied because Plaintiff has not shown good cause for leave to amend under Rule 16(b)(4), amendment under Rule 15(a) would be futile, and allowing the proposed amendment would unfairly prejudice Anker. (D.I. 209)

**23.** Because Plaintiff's motion was filed after the deadline for amended pleadings in the original scheduling order, which expired on May 3, 2021, there is no dispute that Plaintiff must satisfy the good cause standard under Rule 16(b)(4) before the court reaches the standard for amending pleadings under Rule 15(a). (D.I. 23 at ¶ 8); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). The focus of the good cause inquiry "hinges on diligence of the movant, and not on prejudice to the non-moving party." *TC Tech. LLC v. Sprint Corp.*, C.A. No. 16-153-RGA, 2019 WL 529678, at *2 (D. Del. Feb. 11, 2019) (quoting *S. Track & Pump, Inc. v. Terex Corp.*, 722 F. Supp. 2d 509, 521 (D. Del. 2010)).

**24.** Plaintiff argues that it did not have a plausible basis for its willful infringement allegations until Defendants produced financial information on August 14, 2024 documenting continued sales of the accused products after the original complaint was filed. (D.I. 205 at 3; Exs. I, K) However, publicly available websites confirm that Anker continued to offer the accused products for sale throughout the duration of the stay. (*See, e.g.*, D.I. 209, Ex. 3)

10

Plaintiff's proposed supplemental contentions cite websites reflecting the ongoing sales of the accused Anker products, confirming that this information was available to Plaintiff. (*Id.*, Ex. 1) Plaintiff cites no authority supporting its position that having actual sales figures in hand is a prerequisite to pleading post-suit willful infringement.

**25.** Plaintiff's failure to seek leave to amend until more than six months after the stay was lifted confirms Plaintiff's lack of diligence in seeking leave to amend. *See NRT Tech. Corp. v. Everi Holdings Inc.*, C.A. No. 19-804-MN-SRF, 2022 WL 354291, at *3 (D. Del. Jan. 11, 2022) (rejecting the argument that "an inability to timely amend a pleading within the scheduling order deadline excuses a party from exercising diligence in seeking leave to amend outside of the deadline."). Having determined that Plaintiff did not satisfy the good cause standard of Rule 16(b)(4), the court need not reach the Rule 15 analysis of futility.

**26. Conclusion.** For the foregoing reasons, IT IS ORDERED that:

    a. Plaintiff's motion to supplement its infringement contentions is DENIED without prejudice.

    b. Plaintiff's motion to compel Anker to produce the requested discovery in accordance with Plaintiff's definition of "reasonably similar products" is DENIED without prejudice.

    c. PI and Anker's motion to strike Plaintiff's supplemental infringement contentions is DENIED as moot due to the denial of Plaintiff's motion to supplement.

    d. Plaintiff's motion for leave to amend its complaint to add a claim for willful infringement is DENIED without prejudice.

**27.** Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Order under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Memorandum Order should be redacted, the parties shall jointly submit a proposed redacted version by no later than **October 30, 2024**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within fourteen (14) days of the date the Memorandum Order issued.

**28.** This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to four (4) pages each.

**29.** The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, www.ded.uscourts.gov.

Sherry R. Fallon
United States Magistrate Judge