IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COGNIPOWER LLC, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-2293-JLH-SRF |
| | ) | |
| FANTASIA TRADING, LLC D/B/A ANKERDIRECT and ANKER INNOVATIONS LIMITED, | ) ) ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| POWER INTEGRATIONS, INC., | ) | |
| | ) | |
| Intervenor/Counterclaim Plaintiff. | ) | |

## MEMORANDUM ORDER

At Wilmington this **13th** day of **December, 2024**, the court having considered the parties' letter submissions and associated filings (D.I. 239; D.I. 240; D.I. 241; D.I. 242; D.I. 243; D.I. 244; D.I. 245; D.I. 246; D.I. 247), and the arguments presented during the discovery dispute motion hearing on December 12, 2024, IT IS ORDERED that the pending motion at D.I. 223 is addressed as follows:

1. **Procedural background.** This patent infringement action was filed by plaintiff CogniPower LLC ("Plaintiff") on December 18, 2019. (D.I. 1) The complaint alleges that defendants Fantasia Trading LLC d/b/a AnkerDirect and Anker Innovations Limited (collectively, "Anker") infringe the asserted patents by making, using, offering to sell, selling, and/or importing chargers "that incorporate circuitry providing demand pulse regulation such as a Power Integrations InnoSwitch or LytSwitch-6 chip." (*Id.* at ¶ 34) Power Integrations, Inc. ("PI") intervened in the action and filed its answer and counterclaims for declaratory judgment of

noninfringement by its InnoSwitch™ and LytSwitch-6™ products on February 3, 2021. (D.I. 60 at ¶ 33)

**2.** Under the original scheduling order, the case was scheduled to go to trial in May of 2022. (D.I. 23) On July 15, 2021, the court entered an order staying the case pending resolution of *inter partes* review ("IPR") proceedings before the U.S. Patent and Trademark Office. (D.I. 85) Final written decisions were expected in May of 2022, and the Federal Circuit issued its judgment following Anker's appeal from the IPRs on February 9, 2024. (D.I. 78 at 5; D.I. 112 at 3)

**3.** The stay of this case was lifted on February 26, 2024. (D.I. 113) The court entered a new scheduling order setting a trial date of August 18, 2025, and the parties stipulated to amend the fact discovery cutoff to November 1, 2024. (D.I. 121; D.I. 183) Expert discovery closes on February 7, 2025, and case dispositive motions are due by February 19, 2025. (D.I. 183)

## COGNIPOWER'S ISSUES

**4. CogniPower's motion to compel Power Integrations to produce OmniSwitch product samples in response to Request for Production Nos. 34 and 36 is GRANTED-IN-PART.** Power Integrations maintains that there are no samples of any OmniSwitch test die discussed in its expert report. (D.I. 243 at 3) Nonetheless, Power Integrations has agreed to produce for inspection physical test chips made by Power Integrations during the OmniSwitch development. (*Id.*) Therefore, IT IS ORDERED that on or before December 20, 2024, Power Integrations shall produce for inspection physical test chips made during the OmniSwitch development. The inspection shall occur at a mutually agreeable time at the office of Power Integrations' counsel. CogniPower's motion to compel is DENIED in all other respects.

  **5. CogniPower's remaining motions to compel discovery from Anker and Power Integrations are DENIED without prejudice.** CogniPower moves the court to compel the production of an updated privilege log; supplemental responses to Interrogatory Nos. 1-3, 5-6, 10-12, and 14-18 directed to Anker; supplemental responses to Interrogatory Nos. 3, 5-6, 11-12, 14-15, and 18 directed to Power Integrations; and the production of documents relating to cost savings and design time in response to Request for Production Nos. 9 and 12. (D.I. 239 at 1) CogniPower presents minimal argument on these issues in its moving submission and instead relies on attorney declarations to present the substantive basis for its position. The court declines to consider substantive discussion of the issues presented only in the accompanying attorney declaration of Andrew Choung, counsel for CogniPower. *See, e.g., Nevro Corp. v. Stimwave Techs., Inc.*, C.A. No. 19-325-CFC, 2019 WL 3322368, at *12 & n.9 (D. Del. July 24, 2019) (declining to consider prior art references discussed only in an expert declaration supporting a motion for preliminary injunction).

  **6. CogniPower's motion to strike any reference to the OmniSwitch file for which related metadata was withheld is DENIED without prejudice, and CogniPower may instead pursue limited additional discovery.** Information that is not timely disclosed under Rule 26 may be excluded unless the failure to produce the information was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). However, "the exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977)). The court must balance the following factors in the exercise of its discretion: (1) the prejudice or surprise to the party against whom the evidence is

offered; (2) the likelihood of curing the prejudice; (3) the potential disruption of an orderly and efficient trial; (4) the presence of bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the information withheld. *Id.*

**7.** Although the prejudice factor under *Pennypack* favors CogniPower, the importance of the information withheld by Power Integrations weighs against granting the motion to strike because the native schematic files are critical to resolving invalidity on the merits. Power Integrations originally produced 76 scanned schematic documents with no native files and no date metadata. In some instances, the original production combined separate schematic directories into a single set of schematic printouts, portraying different sets of schematics as a single design. (D.I. 240, Ex. 12; Ex. 14 at 14) Power Integrations justified its withholding of a complete set of native schematic files by stressing that its expert did not rely on the withheld content. (D.I. 243 at 1) But this unilateral determination by the producing party deprived CogniPower of the opportunity to test Power Integrations' prior art theories on a full set of information.

**8.** Power Integrations' supplementation of this production resulted in the production of more than 91,000 additional files less than a week before the close of fact discovery on November 1, 2024. (12/12/2024 Tr.; D.I. 242 at ¶ 29) The production included native files related to the specific OmniSwitch chip sets relied on by Power Integrations as prior art. (*Id.*) The production also included simulation files showing waveform or feedback signals, which were the subject of written discovery requests by CogniPower. Although Power Integrations' responses to the discovery requests suggested that no such documents existed, the deposition testimony of Alex Djenguerian on October 17, 2024 confirmed that simulation files did exist.

4

(12/12/2024 Tr.; D.I. 240 at ¶¶ 42, 45-47; Ex. 1 at 48:18-50:23) The following week, Power Integrations produced more than 4,000 simulation files. (D.I. 242 at ¶ 29)

**9.** The timing of Power Integrations' production of complete native files on October 24, 2024, less than a week before the close of fact discovery, deprived CogniPower of the opportunity to run simulations or depose witnesses to test its theory that the dates shown on the face of those documents did not reflect operability or conception. (12/12/2024 Tr.) But the importance of the native files to reaching a decision on the merits is not meaningfully in dispute. CogniPower maintains that these late-produced files are key to determining whether different versions of OmniSwitch chips were combined, which is crucial to CogniPower's defense against Power Integrations' position that OmniSwitch chips are invalidating prior art. (*Id.*; D.I. 243 at 2)

**10.** Although the prejudice to CogniPower and the importance of the withheld information are evenly balanced, consideration of the remaining *Pennypack* factors leads to the conclusion that the prejudice can be cured by a limited reopening of discovery without disrupting the trial schedule. During the hearing, CogniPower represented that it initially asked Power Integrations for an extension to take fact discovery on the newly produced files, and Power Integrations refused. (12/12/2024 Tr.) CogniPower indicated that an additional two months would be necessary to run simulations and depose fact witnesses on the metadata. (*Id.*) The time remaining before case dispositive motions is short, with briefing on case dispositive motions set to begin on February 19, 2025. (D.I. 183)

**11.** Nonetheless, the compressed time frame is a problem of the parties' own making. Power Integrations initially chose to produce select pages of schematic files and withheld the complete native files until less than a week before the close of fact discovery. And instead of proposing a schedule to complete the necessary discovery on the late-produced documents,

5

CogniPower seeks all-or-nothing relief in the form of a motion to exclude critical evidence from the case. (D.I. 239) To facilitate the resolution of this case on its merits, CogniPower may take additional discovery limited to the native files and metadata that was produced in October of 2024, with a particular focus on the approximately 4,000 simulation files, as follows:

    a. On or before February 4, 2025, CogniPower may run simulations using the native files, depose a fact witness on the recent production, and submit a supplemental rebuttal expert report limited to its position that OmniSwitch is not a prior art reference according to the late-produced native files and metadata.

    b. On or before February 7, 2025, Power Integrations may serve a supplemental reply expert report limited to the scope of CogniPower's supplemental rebuttal report.

    c. Any supplemental expert depositions may be taken on or before February 14, 2025.

**12.** To the extent that the parties find the proposed schedule unworkable, they are encouraged to meet and confer to discuss alternatives, compromises, and practical solutions consistent with this ruling. No extensions of deadlines that impact the remaining schedule for briefing on case dispositive motions and/or the deadlines that follow will be granted absent approval by District Judge Jennifer Hall. Should CogniPower choose not to accept the court's proposal for additional discovery, it is not without an opportunity to move for relief. Deadlines have not yet passed for dispositive motions, *Daubert* motions, or motions *in limine*.

**13.** The remaining *Pennypack* factor, regarding bad faith or willfulness, is neutral for purposes of this analysis. CogniPower's moving submission states that Power Integrations'

6

"withholding of metadata damaging to its invalidity case constitutes bad faith," and the original production of OmniSwitch schematics was made in a way that concealed critical information. (D.I. 239 at 3) Power Integrations denies any bad faith on its part. (D.I. 243 at 2) The facts surrounding the production of native files show that Power Integrations made supplemental productions as requested by CogniPower as soon as CogniPower brought the issue to Power Integrations' attention in late September. Both sides bear responsibility for running down the clock on metadata discovery.

14. **CogniPower's motion to strike Anker and Power Integrations' supplemental invalidity contentions served without leave of court on May 5, 2024 is DENIED without prejudice.** In the Third Circuit, "the exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Konstantopoulos*, 112 F.3d at 719 (citing *Pennypack*, 559 F.2d at 904-05). The two sentences of argument offered by CogniPower on this issue in the moving submission do not justify the imposition of such draconian relief. (D.I. 239 at 4) CogniPower offers no analysis of the five *Pennypack* factors, it does not explain the timing of its requested relief seven months after the supplemental invalidity contentions were served, and the supplemental invalidity contentions CogniPower moves to strike are not attached as an exhibit to the declaration accompanying its moving submission. (*Id.*; D.I. 240)

15. **CogniPower's motion to quash the Morong deposition is DENIED without prejudice.** There is no dispute that Bill Morong is a co-inventor of the Asserted Patents who has relevant information. CogniPower moves to quash his deposition due to Morong's advanced age and health concerns. (D.I. 239 at 4) Morong's accompanying declaration states that he is unable to travel to and sit for "a deposition of any length." (D.I. 240, Ex. 16) Power Integrations and

7

Anker respond that a full-day deposition of Morong is not necessary, and accommodations can be made to take his deposition remotely, with breaks as needed. (D.I. 243 at 4) CogniPower's motion to quash and the accompanying declarations do not address this offer of compromise, suggesting that this issue was brought to the court before the parties had reached an impasse. (D.I. 240 at 4; Exs. 16-17)

16. **CogniPower's motion to compel Power Integrations to produce discovery related to Power Integrations' counterclaims is DENIED without prejudice.** CogniPower moves to compel discovery from Power Integrations "regarding the customers and products using [the InnoSwitch® or LytSwitch-6®] chips[,]" suggesting that the requested discovery is relevant to Power Integrations' counterclaim for a declaration of non-infringement as to all products having the InnoSwitch® or LytSwitch-6®] chips. (D.I. 239 at 4) But Power Integrations represents that CogniPower "has long since had the schematics and technical documentation detailing how PI's chips work to respond to PI's noninfringement claims," and CogniPower does not explain why customer sales information is necessary to defend against non-infringement claims. (D.I. 243 at 4) The five lines of argument CogniPower presented in support of its request for relief are not sufficient to establish the relevance and proportionality of the requested discovery under Rule 26.

## ANKER / POWER INTEGRATIONS' MOTION TO STRIKE

17. **Anker and Power Integrations' motion to preclude CogniPower from referring to or relying on the SPICE files[1] to support an earlier conception date is DENIED without prejudice.** Anker and Power Integrations move to preclude CogniPower from relying on its

---

[1] Anker and Power Integrations represent that SPICE files "are detailed circuit diagrams that can be executed to simulate the behavior of a circuit." (D.I. 244 at 2)

8

SPICE files under the *Pennypack* factors, arguing that CogniPower failed to permit a forensic inspection of the metadata for corrupted SPICE files. (D.I. 241 at 3; Ex. L) Anker and Power Integrations do not alternatively seek leave to perform a forensic inspection of the SPICE files and associated metadata in their moving submission.

**18.** The *Pennypack* factors weigh against granting the motion to preclude. There is no meaningful dispute that the correct metadata for the SPICE files is important to CogniPower's derivation defense. (12/12/2024 Tr.) Moreover, CogniPower's conduct is inconsistent with bad faith or willfulness. CogniPower first discovered that some of its native SPICE files produced in June of 2024 were corrupted, and it promptly disclosed the corruption to Anker and Power Integrations on September 21, 2024. (D.I. 241, Ex. D; D.I. 244 at 4) On September 24, 2024, CogniPower produced SPICE files in their native format with a metadata load file and a metadata overlay file for the native files produced in June of 2024. (D.I. 247 at ¶ 4)

**19.** Anker and Power Integrations have not persuasively shown that they were prejudiced by the late production of alleged accurate native SPICE files. They requested a forensic inspection of the files and the devices on which those files were maintained on October 22, 2024, before the deposition of Thomas Lawson, which was scheduled to begin a week later. (D.I. 241, Ex. C; Ex. K) Three days later, Anker and Power Integrations raised the issue with the court in the parties' joint motion for a discovery dispute hearing, framing the issue as "CogniPower's refusal to permit forensic inspection of CogniPower materials." (D.I. 223 at 2) Yet in their moving submission, Anker and Power Integrations abandon their request for a forensic inspection and instead frame the issue as a motion to preclude CogniPower "from referring to or relying on the undated SPICE files CogniPower contends support an earlier conception date, or CogniPower's SPICE files' purported dates, for any purpose in this case."

9

(D.I. 241, Ex. L) Anker and Power Integrations offer no explanation for this shift in the relief necessary to cure the alleged prejudice, representing that "[t]here is no adequate cure other than striking reliance on these SPICE files[.]" (D.I. 241 at 4) There is no evidence on the present record to suggest that the parties met and conferred on this issue in the context of a motion to strike or preclude under *Pennypack* before Anker and Power Integrations raised the issue with the court.

**20.** Moreover, any prejudice to Anker and Power Integrations can be cured by CogniPower's offer to allow a forensic inspection of isolated SPICE files on the original computers. (12/12/2024 Tr.) CogniPower also stated that Power Integrations "may file a supplemental invalidity report or a responsive report to CP's report on validity" to address the newly discovered files. (D.I. 244 at 4) Anker and Power Integrations may complete the forensic inspection and any supplemental expert report at a mutually agreeable time on or before January 17, 2025 to avoid disruption to the case schedule. CogniPower has submitted sworn declarations to the court confirming that the native SPICE files and their associated metadata were produced in September of 2024. (D.I. 246 at ¶¶ 7-15; D.I. 247 at ¶¶ 4-6) As a result, Power Integrations and Anker have had months of access to the same files that are presumably on the original computers that will be the subject of the forensic inspection, and they deposed witnesses on the metadata at issue. (D.I. 244 at 4; D.I. 245, Ex. 5 at 66:16-71:16)

**21. Conclusion.** For the foregoing reasons, IT IS ORDERED that:

    **a.** CogniPower's motion to compel Power Integrations to produce OmniSwitch product samples in response to Request for Production Nos. 34 and 36 is GRANTED-IN-PART. On or before December 20, 2024, Power Integrations

10

shall produce for inspection physical test chips made during the OmniSwitch development. The motion is DENIED without prejudice in all other respects.

b. CogniPower's motion to compel the production of an updated privilege log is DENIED without prejudice.

c. CogniPower's motion to compel the production of supplemental responses to Interrogatory Nos. 1-3, 5-6, 10-12, and 14-18 directed to Anker and supplemental responses to Interrogatory Nos. 3, 5-6, 11-12, 14-15, and 18 directed to Power Integrations is DENIED without prejudice.

d. CogniPower's motion to compel the production of documents relating to cost savings and design time in response to Request for Production Nos. 9 and 12 is DENIED without prejudice.

e. CogniPower's motion to strike any reference to the OmniSwitch file for which related metadata was withheld is DENIED without prejudice. CogniPower may instead pursue limited additional discovery as follows, unless otherwise agreed:

| DEADLINE | EVENT |
|---|---|
| February 4, 2025 | CogniPower may run simulations using the native files, depose a fact witness on the recent production, and submit a supplemental rebuttal expert report limited to its position that OmniSwitch is not a prior art reference according to the late-produced native files and metadata. |
| February 7, 2025 | Power Integrations may serve a supplemental reply expert report limited to the scope of CogniPower's supplemental rebuttal report. |
| February 14, 2025 | Deadline for any supplemental expert depositions. |

11

    **f.** CogniPower's motion to strike Anker and Power Integrations' supplemental invalidity contentions served without leave of court on May 5, 2024 is DENIED without prejudice.

    **g.** CogniPower's motion to quash the Morong deposition is DENIED without prejudice.

    **h.** CogniPower's motion to compel Power Integrations to produce discovery related to Power Integrations' counterclaims is DENIED without prejudice.

    **i.** Anker and Power Integrations' motion to preclude CogniPower from referring to or relying on the SPICE files to support an earlier conception date is DENIED without prejudice. At a mutually agreeable time on or before January 17, 2025, Anker and Power Integrations may: (1) perform a forensic inspection of CogniPower's SPICE files on the original computers, isolated from any privileged content on those computers; and (2) serve a supplemental invalidity report to address the newly discovered SPICE files.

**22.** Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Order under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Memorandum Order should be redacted, the parties shall jointly submit a proposed redacted version by no later than **December 20, 2024**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the

parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within fourteen (14) days of the date the Memorandum Order issued.

**23.** This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to four (4) pages each.

**24.** The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, www.ded.uscourts.gov.

Sherry R. Fallon
United States Magistrate Judge