# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COGNIPOWER LLC

        Plaintiff,

v.

FANTASIA TRADING, LLC D/B/A
ANKERDIRECT and
ANKER INNOVATIONS LIMITED;

        Defendant,

POWER INTEGRATIONS, INC.

        Intervenor.

C.A. No. 19-cv-2293-JLH-SRF

**FILED UNDER SEAL**

## COGNIPOWER'S OPENING BRIEF IN SUPPORT OF ITS COMBINED SUMMARY JUDGMENT AND *DAUBERT* MOTION

Dated: February 26, 2025

Jason G. Sheasby (admitted *pro hac vice*)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
JSheasby@Irell.com

Stephen M. Payne (admitted *pro hac vice*)
IRELL & MANELLA LLP
840 Newport Center Dr., Suite 400
Newport Beach, California 92660
Telephone: (949) 760-0991
Facsimile: (9 49) 760-5200
spayne@Irell.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
**FARNAN LLP**
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Andrew Y. Choung (admitted *pro hac vice*)
Jennifer Hayes (admitted *pro hac vice*)
Nixon Peabody LLP
300 S. Grand Avenue, Suite 4100
Los Angeles, CA 90071
213-629-6000
achoung@nixonpeabody.com
jenhayes@nixonpeabody.com

*Attorneys for Plaintiff CogniPower LLC*

# TABLE OF CONTENTS

I.      NATURE AND STAGE OF PROCEEDINGS ............................................................... 1

II.     SUMMARY JUDGMENT FOR IPR ESTOPPEL ....................................................... 1

    A.   Applicable Law ..................................................................................................... 1

    B.   Anker/PI Are Subject To IPR Estoppel As Petitioner And RPI ........................... 2

    C.   Anker/PI Knew Of Mammano, Steigerwald, And Whittle Prior To The IPRs ............... 3

III.    SUMMARY JUDGMENT AGAINST ASSERTED "OMNISWITCH" PRIOR ART ......... 4

    A.   Applicable Law ..................................................................................................... 4

    B.   OmniSwitch Was Not Conceived Prior To May 30, 2012 .................................... 6

    C.   OmniSwitch Was Not Reduced To Practice ....................................................... 10

IV.     SUMMARY JUDGMENT THAT OMNISWITCH WAS SUPPRESSED OR
       CONCEALED ...................................................................................................... 14

    A.   Applicable Law ................................................................................................... 14

    B.   PI Actively Suppressed Or Concealed OmniSwitch ......................................... 15

    C.   No Public Disclosure Of Critical Claim Elements ............................................ 17

V.      SUMMARY JUDGMENT ON UNCHALLENGED CLAIM ELEMENTS .................... 22

VI.     SUMMARY JUDGMENT AGAINST PI'S COUNTERCLAIMS ................................. 23

VII.    SUMMARY JUDGMENT AGAINST ANKER/PI'S AFFIRMATIVE DEFENSES ......... 25

VIII.   EXPERT OPINIONS SHOULD BE STRUCK AS TO DR. WEI ................................... 26

    A.   Unsupported Anticipation Opinions .................................................................. 26

    B.   Improper "Rectifier" Claim Construction Opinions ......................................... 30

       1.   Dr. Wei's Noninfringement Opinions are Contrary to the Court's Claim Construction
          Findings .................................................................................................. 30

       2.   Dr. Wei Applies Inconsistent Claim Constructions for Invalidity and
          Noninfringement ..................................................................................... 33

IX.     EXPERT OPINIONS SHOULD BE STRUCK AS TO MR. COWEN ........................... 35

X.      EXPERT OPINIONS SHOULD BE STRUCK AS TO DR. MCDUFF ......................... 38

    A.   Analysis Untethered To Anker's Use Are Improper ......................................... 38

    B.   State Of Mind Opinions Are Improper .............................................................. 40

    C.   Dr. McDuff's Opinions Relying On Unconsummated and Non-Comparable License
       Offers Should be Excluded ................................................................................ 41

    D.   CogniPower's Internal Email And Spreadsheet Are Not Reliable Indicators Of A
       Hypothetical Negotiation .................................................................................. 44

E.    Reference to Industry Royalty Rates Should be Excluded ............................................. 45

F.    Reference to Power Integrations' Patents Should be Excluded ..................................... 46

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adasa Inc. v. Avery Dennison Corp.*,
    55 F.4th 900 (Fed. Cir. 2022) ...................................................................45

*Allscripts Healthcare, LLC v. Andor Health, LLC*,
    Civil Action No. 21-704-MAK, 2022 WL 3021560 (D. Del. July 29, 2022).........................40

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)............................................................................24, 25

*Apotex USA, Inc. v. Merck & Co.*,
    254 F.3d 1031 (Fed. Cir. 2001)...............................................................15

*Apple Inc. v. Wi-LAN Inc.*,
    25 F.4th 960 (Fed. Cir. 2022) ...............................................................40

*Applications in Internet Time, LLC v. RPX Corp.*,
    897 F.3d 1336 (Fed. Cir. 2018)..............................................................2, 3

*Autoliv ASP, Inc. v. Hyundai Mobis Co., Ltd.*,
    552 F.Supp.3d 1215 (M.D. Ala. 2021) ...................................................23

*Baker v. United States*,
    642 F. App'x 147 (3d Cir. 2016)............................................................38

*The Barbed Wire Patent*, 143 U.S. 275 (1892)........................................6, 12

*Beachcombers v. WildeWood Creative Prods., Inc.*,
    31 F.3d 1154 (Fed. Cir. 1994)...............................................................34

*California Inst. of Tech. v. Broadcom Ltd.*,
    25 F.4th 976 (Fed. Cir. 2022) ...............................................................2, 3

*CAO Lighting, Inc. v. General Elec. Co. et al.*,
    CA. No. 20-681-GBW, C.A. No. 20-690-GBW, 2023 WL 1930354 (D. Del.
    Jan. 30, 2023)....................................................................................31, 32

*Checkpoint Sys., Inc. v. U.S. Intern. Trade Com'n*,
    54 F.3d 756 (Fed. Cir. 1995)..................................................................18

*Chiron Corp. v. Genentech, Inc.*,
    No. Civ. S-00-1252WBSCGGH, 2002 WL 32123930 (E.D. Cal. June 24,
    2002) ...................................................................................................23

*Cooper v. Goldfarb,*
    154 F.3d 1321 (Fed. Cir. 1998) ........................................................................... 10

*Correge v. Murphy,*
    705 F.2d 1326 (Fed. Cir. 1983) ........................................................................... 15

*Crystal Lagoons U.S. Corp. v. Cloward H2O LLC,*
    No. 2:19-CV-00796-RJS-DAO, 2025 WL 384995 (D. Utah Feb. 4, 2025) ........................... 41

*Davis v. Reddy,*
    620 F.2d 885 (C.C.P.A. 1980) ............................................................................... 5

*Exergen Corp. v. Wal-Mart Stores, Inc.,*
    575 F.3d 1312 (Fed. Cir. 2009) ........................................................................... 31

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
    535 U.S. 722 (2002) ........................................................................................... 25

*Finnigan Corp. v. Int'l Trade Comm'n,*
    180 F.3d 1354 (Fed. Cir. 1999) ............................................................................. 6

*Fleming v. Escort, Inc.,*
    774 F.3d 1371 (Fed. Cir. 2014) ........................................................................... 15

*Flex-Rest LLC v. Steelcase, Inc.,*
    455 F.3d 1351 (Fed. Cir. 2006) ........................................................................... 15

*Fortinet, Inc. v. Sophos, Inc.,*
    No. 13-CV-05831-EMC, 2015 WL 6513655 (N.D. Cal. Oct. 28, 2015) .............................. 23

*Fox Grp., Inc. v. Cree,*
    819 F. Supp. 2d 524 (E.D. Va. 2011), *aff'd in part, vacated in part* 700 F.3d
    1300 (Fed. Cir. 2012) ......................................................................................... 15

*Gevo, Inc. v. Butamax Advanced Biofuels LLC,*
    Civ. No. 13-576-SLR, 2013 WL 3914467 (D. Del. July 26, 2013) .................................. 5, 14

*GNC Franchising LLC v. Khan,*
    Civil Action Nos. 05-1341, 06-00283, 2008 WL 612749 (W.D. Pa. Mar. 3,
    2008) .......................................................................................................... 24, 25

*Holmwood v. Sugavanam,*
    948 F.2d 1236 (Fed.Cir.1991) ............................................................................... 6

*HSM Portfolio LLC v. Elpida Memory Inc.,*
    160 F. Supp. 3d 708 (D. Del. 2016) .................................................................... 33, 34

*I-Mab Biopharma v. Inhibrx, Inc.*,
   Civil Action No. 22-276-CJB, 2024 WL 4581539 (D. Del. Oct. 21, 2024)............................41

*Innovative Memory Sys., Inc. v. Micron Tech., Inc.*,
   No. CV 14-1480-RGA, 2022 WL 4548644 (D. Del. Sept. 29, 2022) ......................................3

*Intuitive Surgical, Inc. v. Ethicon LLC*,
   25 F.4th 1035 (Fed. Cir. 2022) ...............................................................................................3

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
   607 F. Supp. 3d 464 (D. Del. 2022)..........................................................................................3

*John Bean Techs. Corp. v. Morris & Assoc., Inc.*,
   887 F.3d 1322 (Fed. Cir. 2018).........................................................................................25, 26

*In re Jolly*,
   308 F.3d 1317 (Fed.Cir.2002)...................................................................................................5

*Juicy Whip, inc. v. Orange Bang, Inc.*,
   292 F.3d 728 (Fed. Cir. 2002)............................................................................................6, 12

*Kraft Foods Grp. Brands LLC v. TC Heartland, LLC*,
   232 F. Supp. 3d 632 (D. Del. 2017).........................................................................................30

*L'Oreal S.A. v. Revlon Consumer Products Corp.*,
   No. 99-424-SLR, 2000 WL 291531 (D. Del. Feb. 24, 2000) ..................................................11

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012)............................................................................................44, 46

*Lucent Tech., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009).................................................................................................43

*Lutzker v. Plet*,
   843 F.2d 1364 (Fed. Cir. 1988).................................................................................................15

*M2MSols. LLC v. Enfora, Inc.*,
   167 F. Supp. 3d 665 (D. Del. 2016)..........................................................................................44

*Mahurkar v. C.R. Bard, Inc.*,
   79 F.3d 1572 (Fed. Cir. 1996)....................................................................................................6

*Microsource, LLC. v. Eco World Grp.*,
   587 F.Supp.3d 770 (N.D. Iowa 2022).......................................................................................40

*MiiCs & Partners, Inc. v. Funai Electric Co., Ltd.*,
   Civil Action No. 14-804-RGA, 2017 WL 6268072 (D. Del. Dec. 7, 2017)............................41

*Oddzon Prods. Inc. v. Just Toys, Inc.*,
   122 F.3d 1396 (Fed. Cir. 1997)............................................................................17

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
   345 F. Supp. 2d 431 (D. Del. 2004)..........................................................29, 35

*Palmer v. Dudzik*,
   481 F.2d 1377 (CCPA 1973) ..........................................................5, 19, 21, 22

*Personalized Media Commc'ns, LLC v. Apple Inc.*,
   57 F.4th 1346 (Fed. Cir. 2023) ..........................................................................25

*Pilley v. United States*,
   74 Fed. Cl. 489 (Fed. Cl. 2006) .........................................................................6

*Podobnik v. U.S. Postal Serv.*,
   409 F.3d 584 (3d Cir.2005) *abrogated on other grounds*...............................22

*Price v. Symsek*,
   988 F.2d 1187 (Fed. Cir. 1993)...........................................................................6

*Puma Biotechnology, Inc. v. Astrazeneca Pharm.*,
   Case No. 21-cv-1338-MFK (D. Del. May 6, 2024 slip opinion, Ex. 64) ..............46

*In re Robertson*,
   169 F.3d 743 (Fed. Cir. 1999)...........................................................................30

*Rotkiske v. Klemm*,
   890 F.3d 422 (3d Cir. 2018) (en banc).............................................................22

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
   580 U.S. 328 (2017)...........................................................................................26

*Schaffer v. Weast*,
   546 U.S. 49 (2005).............................................................................................23

*Singh v. Brake*,
   317 F.3d 1334 (Fed. Cir. 2002)...........................................................................5

*Singular Computing LLC v. Google LLC*,
   Civil Action No. 19-12551-FDS, 2023 WL 8810187 (D. Mass. Dec. 20, 2023) ...................41

*Slip Track Systems, Inc. v. Meta-Lite, Inc.*,
   304 F.3d 1256 (Fed. Cir. 2002).........................................................................13

*In re Steed*,
   802 F.3d 1311 (Fed. Cir. 2015)...........................................................................6

*Streck, Inc. v. Research & Diagnostic Systems, Inc.*,
665 F.3d 1269 (Fed. Cir. 2012)........................................................................................23

*Sunoco Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC*,
CV 17-1390-LPS-CJB, 2020 WL 9438750 (D. Del. Feb. 20, 2020).........................20, 21, 22

*Synopsys, Inc. v. Bell Semiconductor, LLC*,
2023 WL 8449514 (D. Del. Dec. 6, 2023)........................................................................24

*SynQor, Inc. v. Artesyn Techs., Inc.*,
709 F.3d 1365 (Fed. Cir. 2013)........................................................................................22

*TC Tech. LLC v. Sprint Corp.*,
No. 1:16-cv-00153-RGA, 2019 WL 5295232 (D. Del. Oct. 18, 2019)..................................43

*Therasense, Inc. v. Becton, Dickinson and Co.*,
593 F.3d 1325 (Fed. Cir. 2010)....................................................................................28, 29

*Therasense, Inc. v. Becton, Dickinson and Co.*,
649 F.3d 1276 (Fed. Cir. 2011)........................................................................................25

*TiVo, Inc. v. EchoStar Commc'ns Corp.*,
516 F.3d 1290 (Fed. Cir. 2008)........................................................................................34

*Touchstream Tech., Inc. v. Charter Communications, Inc.*,
Case No. 2:23-cv-00059-JRG-RSP, 2025 WL 524289 (E.D. Tex. February 17, 2025).............................................................................................................................46

*TPQ Development, Inc. v. 1-800-Flowers.com, Inc., et al*,
120 F.Supp.3d 600 (E.D. Tex. 2015)......................................................................15, 18, 19

*TQ Delta LLC v. Dish Network Corp.*,
No. CV 15-614-GBW, 2024 WL 1112191 (D. Del. Mar. 14, 2024)......................................31

*TQP Dev., LLC v. Intuit Inc.*,
No. 2:12-cv-180-WCB, 2014 WL 2809841 (E.D. Tex. June 20, 2014)...........................18, 19

*UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*,
949 F.3d 825 (3d Cir. 2020).............................................................................................37

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011)........................................................................................39

*Walker Digital, LLC v. Google, Inc.*,
66 F. Supp. 3d 501 (D. Del. 2014)....................................................................................22

*Wasica Fin. GmbH v. Schrader Int'l, Inc.*,
432 F. Supp. 3d 448 (D. Del. 2020).....................................................................................4

vii

*WesternGeco LLC v. ION Geophysical Corp.*,
  889 F.3d 1308 (Fed. Cir. 2018)................................................................2, 3

*Wirtgen Am., Inc. v. Caterpillar, Inc.*,
  Case No. 1:17-cv-00770-JDW-MPT, 2024 WL 51010 (D. Del. Jan. 4, 2024) ...................2, 3

*Witco Corp. v. Beekhuis*,
  38 F.3d 682 (3d Cir. 1994)........................................................................24

*Woodland Trust v. Flowertree Nursery*,
  148 F.3d 1368 (Fed. Cir. 1998)...........................................................12, 13

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
  No. CIV. A. 09-157-RGA, 2013 WL 1702159 (D. Del. Feb. 25, 2013) ...............................38

*Zimmer Surgical, Inc. v. Stryker Corp.*,
  365 F. Supp. 3d 466 (D. Del. 2019)........................................................38

**Statutes**

35 U.S.C. § 102(g) ........................................................................4, 14, 15, 19

35 U.S.C. § 284................................................................................39

35 U.S.C. § 315................................................................................1, 2

35 U.S.C. § 315(e)(2)........................................................................2, 3

**Other Authorities**

Fed. R. Evid. 403 ...........................................................................38

**TABLE OF DEFINITIONS**

| Short-Form | Definition |
|---|---|
| CogniPower | CogniPower LLC |
| PI or Power Integrations | Intervenor Power Integrations, Inc. |
| Anker | Defendants Anker Direct and Anker Innovations |
| AnkerDirect | Fantasia Trading, LLC D/B/A Ankerdirect |
| Anker Innovations | Anker Innovations Limited |
| Asserted Patents | The '031 and '713 Patents |
| '031 Patent | U.S. Patent No. RE47,031 |
| '713 Patent | U.S. Patent No. RE47,713 |
| Motion | CogniPower's Combined *Daubert* and Summary Judgment Motion |
| IPR SOF | Concise Statement Of Facts In Support Of Plaintiff's Motion For Summary Judgment That Defendants And Power Integrations Are Estopped Pursuant To IPR Estoppel From Relying On Mammano, Steigerwald And Whittle As Invalidating Prior Art |
| Omni SOF | Concise Statement Of Facts In Support Of Plaintiff's Motion For Summary Judgment Of No Invalidity Based On Omniswitch Under 35 U.S.C. §102(G) Due To Insufficiency Of Evidence Of Prior Conception And Reduction To Practice Of Omniswitch |
| Conceal SOF | Concise Statement Of Facts In Support Of Plaintiff's Motion For Summary Judgment Of No Invalidity Based On Omniswitch Under 35 U.S.C. § 102(G) Due To Suppression And/Or Concealment Of Omniswitch |
| Other SOF | Concise Statement Of Facts In Support Of Plaintiff's Motion For Partial Summary Judgment Of Infringement On Unchallenged Claim Elements And Motion For Summary Judgment On Power Integrations Counterclaims And Third And Fourth Affirmative Defenses Asserted By Defendants And Power Integrations |
| Hayes Decl. | Declaration of Jennifer Hayes in Support of CogniPower's Motion |
| Anker Amended Resp. to 1st Rogs | Anker's Amended Responses and Objections to CogniPower's First Set Of Interrogatories (Nos. 1-15) |

ix

| | |
|---|---|
| PI 2nd Supp Resp. to 1st Rogs | Power Integrations' Second Supplemental Responses and Objections to CogniPower's First Set Of Interrogatories (Nos. 1-15) |
| Anker/PI Resp. to 3rd Rogs | Fantasia Trading, LLC D/B/A Ankerdirect, Anker Innovations Limited, and Power Integrations' Responses and Objections to CogniPower's Third Set Of Interrogatories (Nos. 21-25) |
| Cowen Report | 2025-01-17 Expert Report of David Cowen |
| McDuff Rebuttal Report | 2024-12-13 Expert Report of DeForest McDuff, Ph.D |
| McDuff Reply Report | 2025-01-15 Expert Reply Report of DeForest McDuff, Ph.D |
| Ricketts Opening Report | 2024-11-15 Expert Report of David S. Ricketts, Ph.D |
| Ricketts Rebuttal Report | 2024-12-13 Expert Report of David S. Ricketts, Ph.D |
| Ricketts Reply Report | 2025-01-15 Expert Reply Report of David S. Ricketts, Ph.D |
| Wei Invalidity Report | 2024-11-15 Opening Report of Gu-Yeon Wei, Ph.D. Regarding Invalidity |
| Wei Non-Infringement Report | 2024-11-15 Opening Report of Gu-Yeon Wei, Ph.D. Regarding Non-Infringement |
| Wei Rebuttal Report | 2024-12-13 Rebuttal Report of Gu-Yeon Wei, Ph.D. |
| Wei Reply Report | 2025-01-15 Reply Report of Gu-Yeon Wei, Ph.D. |
| Balakrishnan Tr. | 2024-10-31 and 2024-11-01 Depositions of Balu Balakrishnan |
| Djenguerian Tr. | 2024-10-17 Deposition of Alex Djenguerian |
| Kung Tr. | 2024-10-16 Deposition of David Kung |
| Liu Tr. 1 | 2024-10-29 First Deposition of Sheng Liu |
| Liu Tr. 2 | 2025-01-29 Second Deposition of Sheng Liu |
| McDuff Tr. | 2025-02-12 Deposition of DeForest McDuff, Ph.D |
| St. Pierre Tr. 1 | 2024-09-27 Deposition of Roland St. Pierre |
| St. Pierre Tr. 2 | 2024-10-24 Deposition of Roland St. Pierre |
| Wei Tr. | 2025-02-07 Deposition of Gu-Yeon Wei, Ph.D. |

| Wei Supp. Tr. | 2025-02-21 Supplemental Deposition of Gu-Yeon Wei, Ph.D. |
|---|---|
| OnSemi | ON Semiconductor Corporation |
| Dialog | Dialog Semiconductor (UK) Limited |
| Invalidity Contentions | Fantasia Trading, LLC d/b/a AnkerDirect's Invalidity Contentions served October 15, 2020 |
| Mammano | U.S. Patent No. 6,301,135 |
| Steigerwald | U.S. Patent No. 4,694,384 |
| Whittle | U.S. Patent No. 4,887,199 |
| IPRs | 031 and 713 IPRs |
| 031 IPR | IPR2021-00067 |
| 713 IPR | IPR2021-00071 |
| Board | Patent Appeal and Trial Board |
| IPR | *Inter Partes* Review |
| RPI | Real Party in Interest |
| FWD | Final Written Decision |

**TABLE OF EXHIBITS**

| No. | Exhibit |
|---|---|
| 1. | '031 Patent |
| 2. | '713 Patent |
| 3. | Wei Invalidity Report |
| 4. | Wei Non-Infringement Report |
| 5. | Wei Rebuttal Report |
| 6. | Wei Reply Report |
| 7. | Wei Tr. |
| 8. | Wei Supp. Tr. |
| 9. | Anker Invalidity Contentions |
| 10. | Cowen Report |
| 11. | McDuff Rebuttal Report |
| 12. | McDuff Tr. |
| 13. | Ricketts Opening Report |
| 14. | Ricketts Rebuttal Report |
| 15. | Ricketts Reply Report |
| 16. | 031 IPR Petition |
| 17. | 713 IPR Petition |
| 18. | 031 IPR Institution Decision |
| 19. | IPR2021-00068 Decision Denying Institution |
| 20. | IPR2021-00069 Decision Denying Institution |
| 21. | IPR2021-00070 Decision Denying Institution |
| 22. | 713 IPR Institution Decision |

| 23. | IPR2021-00072 Decision Denying Institution |
|-----|-------------------------------------------|
| 24. | IPR2021-00073 Decision Denying Institution |
| 25. | 031 IPR FWD |
| 26. | 713 IPR FWD |
| 27. | CP0059971 |
| 28. | CP0059885 |
| 29. | PIC00001226 |
| 30. | Intentionally Omitted |
| 31. | Intentionally Omitted |
| 32. | St. Pierre Tr. 1 |
| 33. | St. Pierre Tr. 2 |
| 34. | Balakrishnan Tr. |
| 35. | Liu Tr. 1 |
| 36. | Liu Tr. 2 |
| 37. | Kung Tr. |
| 38. | Djenguerian Tr. |
| 39. | PIC00011564 |
| 40. | PIC00011567 |
| 41. | PIC00011576 |
| 42. | PIC00004307 |
| 43. | PIC00001623 |
| 44. | PIC00001026 |
| 45. | PIC00000653 |
| 46. | PIC00001356 |

| 47. | Oct. 24, 2024 Service Email |
| 48. | PIC00011398 |
| 49. | PIC00012097 |
| 50. | PIC00012108 |
| 51. | PIC00012111 |
| 52. | Intentionally Omitted |
| 53. | PIC00015125 |
| 54. | PIC00016533 |
| 55. | PIC00013292 |
| 56. | CP0047816 |
| 57. | Metadata Report |
| 58. | Intentionally Omitted |
| 59. | Intentionally Omitted |
| 60. | CP0127116 |
| 61. | CP0128012 |
| 62. | PI 2nd Supp Resp. to 1st Rogs |
| 63. | Anker Amended Resp. to 1st Rogs |
| 64. | *Puma Biotechnology, Inc. v. Astrazeneca Pharm.,* Case No. 21-cv-1338-MFK (May 6, 2024 slip opinion) |
| 65. | Intentionally Omitted |
| 66. | Anker and PI's Response to Third Set of Interrogatories (No. 21) |

## I.    NATURE AND STAGE OF PROCEEDINGS

CogniPower moves for summary judgment on IPR estoppel (as to Anker/PI's invalidity assertions based on prior art references Mammano, Steigerwald, and Whittle); and summary judgment against the alleged OmniSwitch prior art for lack of conception and reduction to practice, and suppression/concealment, PI counterclaims, and Anker/PI's affirmative defenses. CogniPower also moves for partial summary judgment of infringement as to unchallenged claim elements.  CogniPower also moves to strike certain opinions of Anker/PI experts, Dr. Wei (technical), Mr. Cowen (forensics), and Dr. McDuff (damages).

Expert discovery closed on February 7, 2025.   Trial is scheduled for August 18, 2025. CogniPower's motion to consolidate (D.I. 274) this action with its similar case against Anker, 25-66-JLH, is pending before the Court.

## II.    SUMMARY JUDGMENT FOR IPR ESTOPPEL

Anker/PI previously challenged the '031 and '713 Patents in IPRs.  IPR SOF, (6); *see also id.*, (6)-(10).  The Board upheld the patentability of the patents in final written decisions ("FWDs"), which were affirmed on appeal.  *Id.*, (19)-(21).  Now, Anker/PI contend that prior art references Mammano, Steigerwald, and Whittle render obvious claims 5, 6, 11, 12, 19-24, 26 and 28-63 of the '031 Patent and claims 24, 26-29, 32-33, 38, 40, 44, 46-47 and 52-61 of the '713 Patent.  *Id.*, (23).  But there is no dispute that Anker/PI knew of Mammano, Steigerwald, and Whittle prior to and therefore could have reasonably raised them in the IPRs.  *Id.*, (3)-(5).  There is no dispute that Anker/PI are petitioners or real parties in interest ("RPIs") to the prior IPRs. *Id.*, (11)-(12).  Therefore, the IPR FWDs affirming the patentability of the '031 and '713 Patents estop Anker/PI from asserting invalidity on these grounds.

### A.    Applicable Law

Under 35 U.S.C. § 315, the petitioner, RPI, or privy is estopped from asserting a claim is

invalid on any ground that was raised or reasonably could have been raised in a prior IPR.

> The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real party in interest or privy of the petitioner, may not assert either in a civil action … that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review.

35 U.S.C. § 315(e)(2).  The RPI inquiry "demands a flexible approach… with an eye toward determining whether the non-party is a clear beneficiary that has a preexisting, established relationship with the petitioner."  *Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336, 1351 (Fed. Cir. 2018).  The "privity analysis seeks to determine whether the relationship… is sufficiently close such that both should be bound by the trial outcome and related estoppels."  *WesternGeco LLC v. ION Geophysical Corp.*, 889 F.3d 1308, 1319 (Fed. Cir. 2018).  IPR "estoppel applies not just to claims and grounds asserted in the petition and instituted for consideration by the Board, but to all grounds not stated in the petition but which reasonably could have been asserted against the claims included in the petition."  *California Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 991 (Fed. Cir. 2022); *see Wirtgen Am., Inc. v. Caterpillar, Inc.*, Case No. 1:17-cv-00770-JDW-MPT, 2024 WL 51010, at *9 (D. Del. Jan. 4, 2024).

## B.    Anker/PI Are Subject To IPR Estoppel As Petitioner And RPI

The IPR FWDs trigger IPR estoppel.  *Broadcom*, 25 F.4th at 991 (estoppel applies "[w]hen IPR proceedings result in a final written decision").  Anker/PI are subject to IPR estoppel: AnkerDirect was the petitioner, IPR SOF, (11); and PI was a named RPI, *id.*, (12).  Indeed, Anker/PI have never denied that 35 U.S.C. § 315 applies to them.

There can be no genuine dispute that defendant Anker Innovations is an RPI or in privity.  In fact, AnkerDirect self-identified Anker Innovations as being its parent entity in privity.  IPR SOF, (12) (representing that "Anker is a subsidiary of Anker Innovations").  As a defendant in this case, Anker Innovations clearly "desire[d] review of" the Asserted Patents and would have

2

"benefit[ed] from having those claims canceled or invalidated." *Applications In Internet Time*, 897 F.3d at 1351. As the controlling parent of the IPR petitioner, Anker Innovations had "a preexisting, established relationship with the petitioner." *Id.*; IPR SOF, (12). Anker Innovations and AnkerDirect are "sufficiently close such that both should be bound by the trial outcome and related estoppels." *WesternGeco*, 889 F.3d at 1318 (internal quotes omitted). Indeed, Anker and PI are represented by the same counsel in this action and the prior IPRs. IPR SOF, (22).

### C.    Anker/PI Knew Of Mammano, Steigerwald, And Whittle Prior To The IPRs

Each of Mammamo, Steigerwald, and Whittle are U.S. patents and therefore could have been asserted in IPR. *Wirtgen*, 2024 WL 51010, at *9 (explaining that patents and printed publications can be raised in an IPR) (citing 35 U.S.C. § 311(b)). Anker/PI knew of Mammano, Steigerwald, and Whittle prior to the IPRs. IPR SOF, (3)-(5). Anker/PI listed these references in their invalidity contentions served on October 15, 2020, which is before the IPRs were filed on October 16, 2020. *Id*, (4). Indeed, Mammano is cited on the face of the '713 Patent. *Id*, (5).

Under § 315(e)(2), grounds that Anker/PI "reasonably could have raised" include grounds based on patents and printed publications that the petitioner was aware of when filing its IPR. *Broadcom*, 25 F.4th at 991 (applying IPR estoppel because patent challenger was "aware of the prior art references that [it] sought to raise in the district court when [it] filed its IPR petitions"); *Intuitive Surgical, Inc. v. Ethicon LLC*, 25 F.4th 1035, 1041 (Fed. Cir. 2022) (applying estoppel where petitioner "actually knew of the [] prior art at the time it filed" its IPR petitions); *Innovative Memory Sys., Inc. v. Micron Tech., Inc.*, No. CV 14-1480-RGA, 2022 WL 4548644, at *3 (D. Del. Sept. 29, 2022) (holding that "IPR estoppel clearly extends at least to arguments about references that the IPR petitioner knew about when it filed its petition, even if the petition did not rely on those references"); *IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 511 (D. Del. 2022) (finding that party was estopped from relying on documents in its

invalidity contentions that could have been raised in IPRs); *Wasica Fin. GmbH v. Schrader Int'l, Inc.*, 432 F. Supp. 3d 448, 453 (D. Del. 2020) ("References that an alleged infringer reasonably could have raised include any references that were known to the petitioner") (internal quotation marks omitted). Anker/PI have never denied that Mammano, Steigerwald, and Whittle could have been raised in the IPRs. The Court should therefore grant summary judgment that Anker/PI are estopped from asserting invalidity based on those references in this case.

## III.    SUMMARY JUDGMENT AGAINST ASSERTED "OMNISWITCH" PRIOR ART

Defendants challenge the validity of the asserted patents under 35 U.S.C. § 102(g) based on an alleged prior OmniSwitch chip development. ██████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████ However, this defense fails as a matter of law. First, there was no conception of all of the features of the patented invention in the alleged OmniSwitch prior to May 2012. Second, there is no corroborating evidence of reduction to practice of the full scope of the alleged OmniSwitch design.

### A.    Applicable Law

Under 35 U.S.C. § 102(g), an alleged prior invention is prior art only if it is conceived prior to the challenged patent, reduced to practice, and was not suppressed or concealed.

> A person shall be entitled to a patent unless … before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it. In determining priority of invention under this subsection, there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

Defendants have the burden, under the clear and convincing standard, to establish reduction to practice of the prior invention or conception together with reasonable diligence in attempting to

reduce the invention to practice. *Gevo, Inc. v. Butamax Advanced Biofuels LLC*, Civ. No. 13-576-SLR, 2013 WL 3914467, at *17 (D. Del. July 26, 2013) (citing 35 U.S.C. §102(g)).

The Federal Circuit has explained the policy rationale as "once [an inventor] has reduced his invention to practice, [it] may choose between the alternative courses of trying to maintain it in secrecy or applying for a patent thereon" but "[t]he condition which the law does impose on the inventor . . . is that once he has elected the former he risks that a second inventor of the same invention will be able to secure a patent on it and impose his limited monopoly against him." *Palmer v. Dudzik*, 481 F.2d 1377, 1387-88 (CCPA 1973).

Conception requires the "formation in the inventor's mind of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Id.* at *18 (quoting *Hybritech, Inc. v. Monocolonal Antibodies, Inc.,* 802 F.2d 1367, 1376 (Fed. Cir. 1986)). Conception must encompass all limitations of the asserted claims and "is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." *Singh v. Brake,* 317 F.3d 1334, 1340 (Fed. Cir. 2002) (citations omitted). Every limitation must be shown to have been known to the inventor at the time the prior invention is alleged to have been conceived. *Davis v. Reddy,* 620 F.2d 885, 889 (C.C.P.A. 1980) (citing *Schur v. Muller,* 372 F.2d 546, 551 (C.C.P.A. 1967); *Anderson v. Anderson,* 403 F.Supp. 834, 846 (D.D.C. 1975)). Because conception is a mental act, "it must be proven by evidence showing what the inventor has disclosed to others and what that disclosure means to one of ordinary skill in the art." *In re Jolly,* 308 F.3d 1317, 1321 (Fed.Cir.2002) (quoting *Spero v. Ringold,* 377 F.2d 652, 660 (C.C.P.A. 1967)).

Reduction to practice requires that the challenger show it "(1) constructed an embodiment

or performed a process that met all the limitations of the claim and (2) determined that the invention would work for its intended purpose." *In re Steed*, 802 F.3d 1311, 1318 (Fed. Cir. 2015). "Actual reduction to practice is when the invention 'is put into physical form and shown to be operative in the environment of its practical contemplated use.'" *Pilley v. United States*, 74 Fed. Cl. 489, 497 (Fed. Cl. 2006) (quoting *Tech. Dev. Corp. v. United States*, 597 F.2d 733, 746–47 (Ct. Cl. 1979)).

The Federal Circuit applies the "rule of reason" to examine, analyze, and evaluate all pertinent evidence when weighing the credibility of an alleged prior inventor's story. *Holmwood v. Sugavanam,* 948 F.2d 1236, 1239 (Fed.Cir.1991). Alleged "inventor[] testimony requires corroboration before it can be considered." *Price v. Symsek,* 988 F.2d 1187, 1195 (Fed. Cir. 1993); *see Juicy Whip, inc. v. Orange Bang, Inc.*, 292 F.3d 728, 741 (Fed. Cir. 2002). The Supreme Court requires corroboration because of "the unsatisfactory character of such testimony, arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury" and has warned that "[w]itnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information." *The Barbed Wire Patent*, 143 U.S. 275, 284 (1892); *see Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996) (noting that, although the rule is "perhaps prophylactic in application," it "provides a bright line for both district courts and the PTO to follow in addressing the difficult issues related to invention dates"). If no corroborating evidence is proffered, then the invalidity defense fails as a matter of law. *See, e.g.*, *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1369-70 & n.11 (Fed. Cir. 1999).

## B.    OmniSwitch Was Not Conceived Prior To May 30, 2012

Anker/PI have no evidence of conception of the complete invention prior to May 30,

2012.  Rather, the evidence they point to as allegedly showing conception is missing elements of the claims.  There is no evidence of possession of those missing elements.  The Court should therefore grant summary judgment that OmniSwitch is not entitled to a conception date earlier than May 30, 2012.  Further, as discussed below, Anker/PI have no evidence of complete reduction to practice.  Therefore, the Court can and should grant summary judgment that OmniSwitch is not prior art at all.



FluxLink is a communication feature that consists of two inductively coupled loops using the leadframe of an IC package.  *Id.*, (3) at CP0059971 ("Power Integrations' FluxLink magneto-inductive coupling technology uses a coreless transformer built-into the lead frame of the device" to provide a "communication link"), CP0059888 ("Magneto-inductive coupling (FluxLink)… to create a bidirectional data transfer mechanism using the IC lead-frame structure to form the send and receive windings."), PIC00001226 ("Low cost communication using lead frame of an IC package (magnetically coupled galvanically isolated communication link utilizing a leadframe)");

As just the interface between the primary and secondary controllers, it does not correspond to primary side or secondary side claim elements, such as the

switch or demand pulse generator.  Therefore, FluxLink is not and cannot be a complete conception of the claimed inventions, which are directed to power converters.  Moreover, this alleged conception was outside of the U.S.  Omni SOF, (4).



Each of the asserted independent claims requires a demand pulse generator or pulse source circuitry on the secondary side of a power converter.  Omni SOF, (17); *see* IPR SOF, (1)

(the '031 Patent claims) and (2) (the '713 Patent claims). 

Prior to May 2012, none of the schematics included a secondary controller, which is a
required part of the claims.  Omni SOF, (8)-(9).  F

Since there is no genuine dispute that the June 10, 2011 and
August 11, 2011 concepts were only of the FluxLink and not demand pulse regulation, Anker/PI
cannot as a matter of law show conception prior to May 30, 2012.

## C.    OmniSwitch Was Not Reduced To Practice

Not only is Anker/PI unable to show prior conception of the asserted demand pulse invention as claimed, Anker/PI cannot show "the physical embodiment relied upon as an actual reduction to practice every limitation" of the asserted claims. *Cooper v. Goldfarb*, 154 F.3d 1321, 1327-28 (Fed. Cir. 1998). ███████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████

███████████████████████████

███████████████ None of the cited schematics show the alleged primary and secondary test dies connected in a power converter, the transformer element, or the diode/rectifier limitations.  Omni SOF, (13).



Because Dr. Wei cannot cite to any contemporaneous reduction to practice documents to support his opinions, he relies entirely on uncorroborated "conversations" with *a single witness,* Roland

St. Pierre. *Id.*, (17). ██████████████████████████████████

██████████████████████████████

- "Apparatus configured to provide switched-mode power conversion;"
- "demand pulse generator galvanically connected to the secondary winding and configured to generate demand pulses applied via the galvanic isolation circuitry to the switch to adjust a frequency of the communication of the input power to supply a desired amount of voltage or current to the load;"
- "wherein the galvanic isolation circuitry further comprises dedicated circuitry configured to convey the demand pulses across the galvanic isolation;"
- "Apparatus configured to provide galvanically isolated switched-mode power conversion;"
- "isolated switched-mode power converter;"
- "load is connected to the output port and powered by the power converter;"
- "article of manufacture comprising a flyback converter;"
- "secondary side further comprises a demand pulse generator that (i) determines when to turn on the primary-side switch based on output voltage or output current at the output port and (ii) generates corresponding demand pulses;"
- "article is the flyback converter;" and
- "flyback converter."

*Id.* But reliance on uncorroborated witness testimony is not permitted for reduction to practice.

*L'Oreal S.A. v. Revlon Consumer Products Corp.*, No. 99-424-SLR, 2000 WL 291531, at *3 (D.

Del. Feb. 24, 2000) (holding alleged prior invention was not 102(g) prior art because Defendant

had no documentation to corroborate inventor's testimony). Nor have Anker/PI proffered any

contemporaneous corroboration to substantiate Mr. St. Pierre's alleged assertions.

The lack of corroboration renders Anker/PI's reduction to practice assertion insufficient

as a matter of law. Both the Supreme Court and Federal Circuit have rejected uncorroborated

witness testimony.

> We have now to deal with certain unpatented devices, claimed to be complete anticipations of this patent, the existence and use of which are proven only by oral testimony. In view of the unsatisfactory character of such testimony, arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury, courts have not only imposed upon defendants the burden of proving such devices, but have required that the proof shall be clear, satisfactory and beyond a reasonable doubt. Witnesses whose

memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves <u>are not usually to be depended upon for accurate information</u>. The very fact, which courts as well as the public have not failed to recognize, that almost every important patent, from the  cotton gin of Whitney to the one under consideration, has been attacked  by the testimony of witnesses who imagined they had made similar discoveries long before the patentee had claimed to have invented his device, has tended to throw a certain amount of <u>discredit upon all that class of evidence</u>, and to demand that it be subjected to the closest scrutiny. Indeed, the frequency with which testimony is tortured, or fabricated outright, to build up the defence of a prior use of the thing patented, goes far to justify the popular impression that the inventor may be treated as the lawful prey of the infringer.

*The Barbed Wire Patent*, 143 U.S. 275, 284-85 (1892); *see Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 743 (Fed. Cir. 2008) and *Woodland Trust v. Flowertree Nursery*, 148 F.3d 1368, 1369 (Fed. Cir. 1998) (following *Barbed Wire Patent*).

In *Juicy Whip,* the Federal Circuit held that uncorroborated "oral testimony alone" of six witnesses (where the alleged events occurred 8-12 years before) cannot invalidate a patent.

We do not conclude that the witnesses below were not credible.  Rather, with the guidance of precedent cautioning against the reliance on oral testimony alone, we hold that the evidence of record did not provide the clear and convincing evidence necessary to invalidate the patent for prior public knowledge.

*Juicy Whip,* 292 F.3d at 743 (Fed. Cir. 2008).  Similarly, in *Woodland Trust*, the Federal Circuit held, as to four witnesses, that "uncorroborated oral testimony" does not, "provide the clear and convincing evidence required to invalidate a patent on this ground."  *Woodland Trust*, 148 F.3d at 1369 (Fed. Cir. 1998).  The Federal Circuit particularly observed:

The Supreme Court's view of human nature as well as human recollection, whether deemed cynical or realistic, retains its cogency.  <u>This view is reinforced, in modern times, by the ubiquitous paper trail of virtually all commercial activity</u>.  <u>It is rare indeed that some physical record (e.g., a written document such as notes, letters, invoices, notebooks, or a sketch or drawing or photograph showing the device, a model, or some other contemporaneous record) does not exist</u>.

*Id.* at 1373 (citing *The Barbed Wire Patent*, 143 U.S. 275 (1892)) (emphases added).

The Federal Circuit's observation is poignant here.  PI has vast documentation on the

OmniSwitch development. Yet, neither its engineers nor expert can point to a single documentary trace of the alleged reduction to practice. Had it actually occurred, this is the type of work that would have been documented. Absence of a "ubiquitous paper trial" demonstrates the cogency of rejecting Dr. Wei's sole reliance on an uncorroborated witness conversation.

Defendants have also presented no evidence that the May 2012 tapeout would work for its intended purpose, and therefore cannot rely on it to show reduction to practice. Omni SOF, (15)-(16). Dr. Wei did not analyze the physical prototype. *Id.*, (16). There is no evidence of testing of the prototype. *Id.* Under Federal Circuit precedent, "where the invention is particularly complicated, the absence of testing may be sufficient in and of itself to justify a grant of summary judgment denying priority for lack of reduction to practice." *Slip Track Systems, Inc. v. Meta-Lite, Inc.*, 304 F.3d 1256, 1267 (Fed. Cir. 2002). This precedent applies with particular force to the OmniSwitch ███████████████████████████████

████████████████████████████████████████████████

█████████████████████.

     ████████████████████████████████████████

████████████████████████████████████████████

█████████████████████ one cannot "demonstrate the soundness of the principles of

operation of the invention," *Slip Track*, 304 F.3d at 1367 (internal quotes omitted). ████████

██████████████████████████████████

                    ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████



Because Dr. Wei did not perform this

analysis, he cannot demonstrate the operation of the May 2012 tapeout.

## IV.    SUMMARY JUDGMENT THAT OMNISWITCH WAS SUPPRESSED OR CONCEALED

Not only is Anker/PI unable to show prior conception or reduction to practice, whatever

they assert to be the OmniSwitch cannot constitute prior art as a matter of law because its

development was actively suppressed or concealed and there was no subsequent public

disclosure of the asserted OmniSwitch design details.

That PI

eventually released a commercial product is unavailing.  It cannot, as a matter of law, defeat the

prior active concealment and cannot constitute a public disclosure because, as an integrated chip

package, the internal circuitry is not publicly visible and missing claim elements.

### A.    Applicable Law

Under 35 U.S.C. § 102(g), an alleged prior invention is prior art only if it is conceived

prior to the challenged patent, reduced to practice, and was not suppressed or concealed.

Defendants have the burden of proof, under the clear and convincing standard.  *Gevo,* at *17 (D.

Del. July 26, 2013) (citing 35 U.S.C. §102(g)).  Courts apply a burden shifting framework that

requires the patent challenger to provide by clear and convincing evidence that the prior

invention was not suppressed or concealed.  *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1037-38 (Fed. Cir. 2001).  "Abandonment, suppression, or concealment may be shown by proof of the prior inventor's active efforts to do so or may be inferred based upon the prior inventor's unreasonable delay in making the invention publicly known."  *Fleming v. Escort, Inc.*, 774 F.3d 1371, 1378 (Fed. Cir. 2014) (internal quotes and cite omitted).

Active suppression or concealment is established by "evidence that the inventor *intentionally delayed filing* in order to prolong the period during which the invention is maintained in secret."  *Flex-Rest LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1358 (Fed. Cir. 2006) (emphasis in original).  Further, a deliberate policy not to disclose an invention to the public "is evidence of an intent to suppress or conceal the invention under 35 U.S.C. § 102(g)."  *Lutzker v. Plet*, 843 F.2d 1364, 1368 (Fed. Cir. 1988); *id.* at 1367 (holding that "when the activities which cause the delay go to the commercialization of the invention, the delay will not be excused").

The relevant time period is from reduction to practice to the first full public disclosure. *See Fox Grp., Inc. v. Cree*, 819 F. Supp. 2d 524, 536 & n.14 (E.D. Va. 2011), *aff'd in part, vacated in part* 700 F.3d 1300 (Fed. Cir. 2012) (analyzing the first full public disclosure of the product); *Correge v. Murphy*, 705 F.2d 1326, 1329 (Fed. Cir. 1983) (same); *see also TPQ Development, Inc. v. 1-800-Flowers.com, Inc., et al*, 120 F.Supp.3d 600, 609 (E.D. Tex. 2015) (citing "from the time it was reduced to practice… until the time the program as a whole was commercially released…").

### B.    PI Actively Suppressed Or Concealed OmniSwitch

The undisputed evidence shows that PI tactically delayed filing patent applications and has never publicly disclosed critical information concerning the OmniSwitch.  *See* Conceal SOF.

███████████████████████████████████████████████████

██████████████████████████████████████



---

[1] Anker/PI and their expert rely on one TinySwitch datasheet but do not contend that the TinySwitch or datasheet is a conception of the claimed inventions.



As held by the Federal Circuit: "when the possessor of secret art (art that has been abandoned, suppressed, or concealed) that predates the critical date is faced with a later-filed patent, the later-filed patent should not be invalidated in the face of this 'prior' art, which has not been made available to the public.  Thus, prior, but non-public, inventors yield to later inventors who utilize the patent system."  *Oddzon Prods. Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1402 (Fed. Cir. 1997).  Here, there is no genuine dispute that PI held the OmniSwitch "prior art" confidential and did not make it available to the public.  Consequently, PI must yield to CogniPower, who disclosed its invention first through the patent system.

### C.    No Public Disclosure Of Critical Claim Elements

PI has never publicly disclosed the OmniSwitch, and none of the possible disclosures to which Anker/PI may point are sufficient as a matter of law.

***None of the documents upon which PI relies were ever publicly released***.  The actual documents upon which PI relies in its invalidity case cannot show public disclosure because all of them are internal, confidential PI documents that PI has never released to the public (even to this day).  ██████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████

***Commercial release of InnoSwitch is not a public disclosure of OmniSwitch***.  The only possible "public disclosure" to which PI can point is the commercial release of the InnoSwitch, a different chip.  But that is not sufficient. ███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████

███████████████████

Second, even if the InnoSwitch commercial release can be credited, that cannot as a matter of law negate PI's prior active concealment.  While diligent efforts to incorporate a prior invention into a commercial product can sometimes rebut an *inference* of suppression or concealment, it cannot negate *intentional* concealment of an invention for purposes of extending the patent monopoly.  *See Checkpoint Sys., Inc. v. U.S. Intern. Trade Com'n*, 54 F.3d 756, 762 (Fed. Cir. 1995); *TQP Dev., LLC v. 1-800-Flowers.com, Inc.*, 120 F.Supp.3d 600, 612 (E.D. Tex. 2015), *aff'd sub nom. TQP Dev. LLC v. Newegg, Inc.*, 677 F. App'x 683 (Fed. Cir. 2017).

The facts of *TQP* are instructive.  In *TQP*, the Court rejected the argument "that the concealment and suppression does not matter because the product was eventually sold." *TQP*, 120 F.Supp.3d at 612 (E.D. Tex. 2015).  The Court specifically held, "evidence showing commercialization does negate an inference of suppression or concealment based on unreasonable delay, but does not necessarily negate the actual evidence that the invention was *actively* suppressed or concealed during the relevant time period." *Id.* (emphasis in original).  As

the Court observed:

> Accordingly, the parties involved had confidentiality agreements in place with its employees, sub-contractors, and beta testers, to prevent public disclosure of the program. <u>Therefore, these third parties cannot both elect to avoid the patent system and still invoke that system to erect a third-party § 102(g) bar (or a third-party public use bar) to an inventor who disclosed the invention for patenting</u>…. <u>Through their designedly confidential process, they ran the risk of being dominated by the patent of another</u>….

*Id.* at 613 (emphases added; internal cites omitted). Here, that is exactly what happened. PI elected to conceal the OmniSwitch. CogniPower, on the other hand, elected to disclose its invention in the patent system. The law protects CogniPower's contribution to the public against PI's secret development.

██████████████████████████████████████████ ██████████████████████████████ Central to the § 102(g) inquiry is "whether the public has gained *knowledge of the invention* which will *insure its preservation* in the public domain." *Palmer*, 481 F.2d at 1387 (emphasis in original). As Judge Bryson, sitting as a trial judge in the Eastern District of Texas, explained in *TQP Dev., LLC v. Intuit Inc.*:

> When the "inner workings" are the essence of the invention, it is those "inner workings" that must not be suppressed or concealed in order for the invention to be prior art under section 102(g).

Case No. 2:12-cv-180-WCB, 2014 WL 2809841, at *6 (E.D. Tex. June 20, 2014). Here, the commercially released PI chip is packaged such that the internal components are not visible such that the claimed features are not readily discernible to the public.



Figure 2.    High Creepage, Safety-Compliant eSOP Package.

Conceal SOF, (13). 

As this Court has held, public accessibility requires that the public can "readily discern" the claimed features.

> On the question of public accessibility, the Federal Circuit instructs that "a court still must decide whether the *claimed features* of the patents [were placed] in the public's possession" and "if members of the public are not informed of, and cannot readily discern, the *claimed features* of the invention in the allegedly invalidating prior art, the public has not been put in possession of those features."

*Sunoco Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC*, CV 17-1390-LPS-CJB, 2020 WL 9438750, *4 (D. Del. Feb. 20, 2020) (internal citations omitted); *see id.* at *5 (rejecting argument that "public would possess the claimed features of the inventions (which relate to systems and methods for blending butane with gasoline) merely by purchasing the blended gasoline that was eventually distributed from the TransMontaigne system" where only "certain relevant components of the TransMontaigne system were above ground and therefore were visible to the public" but "other portions of the TransMontaigne system were not in public view" since they were underground).

***Anker/PI Cannot Rely On PI Patent Applications.***  Anker/PI have never contended that any of its purported patent filings are public disclosures of OmniSwitch or disclose the full OmniSwitch design.  Conceal SOF, (3).  █████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

████████████████████████

Dr. Wei never disputes these findings.  Conceal SOF, (3).  He conducts no analysis of all of the PI patent filings and points to no application that discloses the entire OmniSwitch design and features.  *Id.*  Consequently, Prof. Ricketts' expert testimony stands unrebutted.

████████████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████

█████████████████████████  These facts here are very similar to *Palmer v.*

*Dudzik,* 481 F.2d 1377 (C.C.P.A. 1973). In *Palmer*, the Federal Circuit held that a first inventor's willful concealment of his invention, which continued until news of the junior party's independent invention spurred him to action, required "forfeiture" of his right to the patent in favor of the later inventor. *Id.* at 1382-1383, 1388.

## V.    SUMMARY JUDGMENT ON UNCHALLENGED CLAIM ELEMENTS

CogniPower, through its expert, Prof. Ricketts, has presented analysis and opinions that the accused Anker charger products infringe all of the asserted claims of the '031 and '713 Patents. Other SOF, (1). Anker/PI's expert, Dr. Wei, only disputes infringement as to three claim elements: "demand pulse," "rectifier" limitations, and "gating" limitations. *Id.*, (2)-(3). Dr. Wei does no analysis of, proffers no opinions on, and does not dispute that the other claim elements of the asserted claims are met. *Id.*, (4).

As to these unchallenged claim elements, CogniPower's expert testimony is undisputed. Therefore, there is no material dispute over infringement as to these unchallenged claim elements. To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Walker Digital, LLC v. Google, Inc.*, 66 F. Supp. 3d 501, 505 (D. Del. 2014) (internal citations omitted); *see Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir.2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted) *abrogated on other grounds* by *Rotkiske v. Klemm*, 890 F.3d 422 (3d Cir. 2018) (en banc).

Consequently, partial summary judgment of infringement is warranted that the accused Anker chargers meet the unchallenged claim elements. *See SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1379 (Fed. Cir. 2013) (affirming grant of partial summary judgment on "power converter" claim limitation where "record indicates that the Defendants put forth no reason that

the accused systems avoid infringement under the district court's construction"); *see, e.g.*, *Autoliv ASP, Inc. v. Hyundai Mobis Co., Ltd.*, 552 F.Supp.3d 1215, 1236-37 and 1246 (M.D. Ala. 2021) (granting "Plaintiff's proposed judgment that the accused products infringe the Base End Closure Element" where defendant's expert "does not dispute this finding at all with respect to the First Generation Airbags"); *Fortinet, Inc. v. Sophos, Inc.*, No. 13-CV-05831-EMC, 2015 WL 6513655, at *3 (N.D. Cal. Oct. 28, 2015) (granting summary judgment of infringement where "Fortinet provided an expert report (from Angelos Stavrou) detailing how Sophos infringes. . . but Sophos failed to provide an expert report to the contrary."); *Chiron Corp. v. Genentech, Inc.*, No. Civ. S-00-1252WBSCGGH, 2002 WL 32123930, at *6 (E.D. Cal. June 24, 2002) (granting summary judgment in favor of the patentee based on "the undisputed expert testimony in the record").

## VI.    SUMMARY JUDGMENT AGAINST PI'S COUNTERCLAIMS

PI purports to counterclaim for noninfringement as to *any* product of *any* customer using *any* PI InnoSwitch chip. Other SOF, (5)-(8).[2]  Generally, the party seeking relief or asserting a claim bears the burden of persuasion. *See Schaffer v. Weast*, 546 U.S. 49, 57 (2005). Here, CogniPower has not asserted any affirmative claims for infringement against PI. Other SOF, (9). Thus, as the party seeking affirmative declaratory relief on unasserted claims, PI bears the burden of proof. *See, e.g.*, *Streck, Inc. v. Research & Diagnostic Systems, Inc.*, 665 F.3d 1269, 1283 (Fed. Cir. 2012) (holding the party claiming declaratory judgment of non-infringement bears the burden of proof). Consequently, on a motion for summary judgment, CogniPower need

---

[2] CogniPower previously moved to dismiss PI's counterclaims. D.I. 165. That motion also provides separate independent bases on which to grant summary judgment as a matter of law because there is no existing judiciable cause or controversy between CogniPower and PI. *See* D.I. 166, pp. 15-17; *Streck, Inc.*, 665 F.3d 1269, 1284 (affirming trial court's grant of summary judgment that there was "no evidence that R & D met its burden of showing a continuing case or controversy with respect to the unasserted claims").

only point to an absence of evidence supporting PI's counterclaim.  The "moving party may satisfy its burden of production by pointing to an absence of evidence supporting the non-moving party's case, after which the burden of production shifts to the non-movant to demonstrate the existence of a genuine issue for trial."  *Synopsys, Inc. v. Bell Semiconductor, LLC*, 2023 WL 8449514, \*1 (D. Del. Dec. 6, 2023) (internal cites omitted).  In order to survive summary judgment, PI must come forward with sufficient evidence of a genuine issue.  *Witco Corp. v. Beekhuis*, 38 F.3d 682, 686 (3d Cir. 1994) (holding "party must make a showing sufficient to establish the existence of a genuine issue for trial").

Here, the only customer and product, for which any discovery or disclosure has been had are the 12 Anker charger products using InnoSwitch3 that stand accused against Anker (not PI).  As PI admits, "CogniPower has not accused any PI products of infringement in this case, and PI does not market or sell any Anker products."  Other SOF, (10).  PI has failed to detail any customers and products which it contends are subject to its counterclaims other than these Anker products.  *Id.*, (12).  PI has not even identified any other customer or product in response to CogniPower's discovery requests.  *Id.*, (12).  Therefore, summary judgment against PI's counterclaim is warranted, including as to all alleged, but unspecified "other" customers and/or products.  *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("We noted Rule 56(e)'s provision that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.") (internal quotations omitted); *GNC Franchising LLC v. Khan*, Civil Action Nos. 05-1341, 06-00283, 2008 WL 612749, at \*6–7 (W.D. Pa. Mar. 3, 2008) (granting summary judgment because "Defendants failed to offer any evidence" and cannot "rely on their pleadings").

## VII.    SUMMARY JUDGMENT AGAINST ANKER/PI'S AFFIRMATIVE DEFENSES

Anker/PI identically assert prosecution history estoppel (Third Affirmative Defense) and

laches, equitable estoppel, and unclean hands (Fourth Affirmative Defenses).  Other SOF, (13).

However, other than mere assertion of the name of these defenses, Anker/PI have failed to

proffer any evidence to support these defenses.  They present zero disclosure for these defenses

in their interrogatory responses.  *Id.*, (14) (objecting/deferring to expert reports and invalidity

contentions).  They present zero disclosure in any expert report or contentions.  *Id.*, (15)-(16).

As to prosecution history estoppel, Anker/PI proffer no facts of alleged narrowing

amendments or arguments, or any alleged infringement that falls within any alleged surrendered

claim scope.  *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co*., 535 U.S. 722, 733-34

and 740 (2002); Other SOF, (14)-(16).  As to equitable estoppel, Anker/PI proffer no facts of

misleading conduct, any alleged reliance, or material prejudice.  *See John Bean Techs. Corp. v.

Morris & Assoc., Inc.*, 887 F.3d 1322, 1326 (Fed. Cir. 2018); Other SOF, (14)-(16).  As to

unclean hands, Anker/PI proffer no facts of any alleged misconduct or injury.  *See Therasense,

Inc. v. Becton, Dickinson and Co*., 649 F.3d 1276, 1287 (Fed. Cir. 2011); Other SOF, (14)-(16).

As to laches, Anker/PI proffer no facts of any alleged prosecution delay by CogniPower or

resulting prejudice to them.  *Personalized Media Commc'ns, LLC v. Apple Inc.*, 57 F.4th 1346,

1354 (Fed. Cir. 2023); Other SOF, (14)-(16).

Since Anker/PI may not rely on their conclusory allegations and have failed to muster any

evidence for these defenses, they fail as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986) ("We noted Rule 56(e)'s provision that a party opposing a properly

supported motion for summary judgment may not rest upon the mere allegations or denials of his

pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.")

(internal quotations omitted).

Summary judgment for CogniPower is also appropriate on Anker/PI's laches defense for the independent reason that it is not available as a matter of law.  As the Supreme Court has held: "Laches cannot be interposed as a defense against damages where the infringement occurred within the period prescribed by section 286."  *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 346 (2017); *see also John Bean Techs. Corp. v. Morris & Assoc., Inc.*, 887 F.3d 1322, 1324 (Fed. Cir. 2018) (citing *SCA Hygiene*, 580 U.S. at 328 n.1).

## VIII.   EXPERT OPINIONS SHOULD BE STRUCK AS TO DR. WEI

### A.     Unsupported Anticipation Opinions



However, even if summary judgment is denied, Dr. Wei's anticipation opinions should be stricken because they do not meet the legal standard for anticipation.

Dr. Wei does not dispute that the priority date of the Asserted Patents is at least July 3, 2012, based on filing of the patent applications.  Ex. 3 at ¶ 114.

Dr. Wei's anticipation opinions based on OmniSwitch should fail to meet the legal standard for anticipation.





     "Anticipation requires the presence in a single prior art disclosure of all elements of a

claimed invention arranged as in the claim." *Therasense, Inc. v. Becton, Dickinson and Co*., 593

F.3d 1325, 1332 (Fed. Cir. 2010). Critically, the "way in which the elements are arranged or

combined in the claim must itself be disclosed." *Id*. A reference does not anticipate merely

because it discloses components of a claim that *could* be combined together. For anticipation, it

is inappropriate to consider a reference "as mere catalogs of separate parts, in disregard of the

part-to-part relationships set forth in the claims and that give the claims their meaning." *Id*.

Here, Dr. Wei's opinions fail to meet this legal standard because, as discussed above, he admits that none of the OmniSwitch disclosures (including the May 2012 tapeout) disclose all elements of the claims as arranged in the claims. ████████████████████████

████████████████████████████████████████████

████████ This failure to follow the legal standard requires exclusion. *See Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 437 (D. Del. 2004) (excluding an expert's anticipation opinions because the expert admitted during his deposition that the anticipatory prior art references did not contain each and every element of the asserted claims).

Dr. Wei does not assert in his report that there is inherent disclosure of the missing elements before July 3, 2012. But, even if he did, that would not save his opinions because the "concept of 'inherent disclosure' does not alter the requirement that all elements must be disclosed in an anticipatory reference in the same way as they are arranged or combined in the claim." *Therasense*, 593 F.3d at 1332. "[A]nticipation by inherent disclosure is appropriate only when the reference discloses prior art that must necessarily include the unstated limitation...." *Id.* Dr. Wei offers no analysis here that OmniSwitch necessarily includes the missing limitations. ██

████████████████████████████████████████████

███████████████████████████

████████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████



But this date is *after* July 3, 2012, which Dr. Wei does not contest is the priority date of the CogniPower patents.[3]  Moreover, even if this July 6 date were credited, D███████████████

Further, since Dr. Wei only purports to opine on anticipation, and he does not address obviousness by the OmniSwitch (*see* Ex. 3 at ¶¶ 10, 123-128), there is no issue left to which his OmniSwitch opinions are relevant.  Therefore, Dr. Wei's entire discussion of the OmniSwitch should be excluded.

**B.    Improper "Rectifier" Claim Construction Opinions**

**1.    Dr. Wei's Noninfringement Opinions are Contrary to the Court's Claim Construction Findings**

"[E]xpert testimony that is inconsistent with the Court's claim construction is unreliable and unhelpful to the finding of fact."  *Kraft Foods Grp. Brands LLC v. TC Heartland, LLC*, 232

---

[3] CogniPower claims an earlier priority date, but the Court need not reach that issue on this motion, because Dr. Wei does not contest the priority date is at least July 3, 2012.

F. Supp. 3d 632, 635 (D. Del. 2017); *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009) (instructing that "[n]o party may contradict the court's construction to a jury"). Expert opinions that "are based on a construction of the claim term that is contrary to the Court's claim construction ruling" are therefore properly excluded. *CAO Lighting, Inc. v. General Elec. Co. et al.*, CA. No. 20-681-GBW, C.A. No. 20-690-GBW, 2023 WL 1930354, at *2-3 (D. Del. Jan. 30, 2023) (excluding non-infringement opinion attempting to rely on a construction that was previously rejected by the court); *see also TQ Delta LLC v. Dish Network Corp.*, No. CV 15-614-GBW, 2024 WL 1112191, at *2 (D. Del. Mar. 14, 2024) (striking expert opinion that "was inconsistent with the Court's prior claim construction orders").

Anker/PI previously proposed the following claim constructions for the "rectifier" limitations:

| Term | Anker/PI Proposal | Court's Construction |
|------|-------------------|----------------------|
| "rectifier [] poled to charge [a] capacitor during forward pulses" | A diode that converts alternating current to direct current and which is oriented to allow current to flow through it to the capacitor whenever the primary switch is on during a switching cycle | Plain and ordinary meaning |
| "using a rectifier to charge a capacitor during forward pulses" | Using a diode that converts alternating current to direct current and which is oriented to allow current to flow through it to the capacitor whenever the primary switch is on during a switching cycle | Plain and ordinary meaning |

D.I. 63 at 22, 43. The Court rejected Anker/PI's proposals. D.I. 70 at 2. In so doing, the Court found that "[n]othing in the patent suggests that the current in the rectifier must be simultaneously and continually related to the status of the primary side switch" and that "[n]othing in the prosecution history however unmistakably requires this relationship to be simultaneous and continual or that there always be current flow through the rectifier when the primary side switch is on." D.I. 109 at 58:9-12, 58:21-24. The Court also found that

"[c]onstruing the term with the word whenever would create additional confusion rather than clarity."  D.I. 109 at 59:16-17.



Consequently, Dr. Wei concedes that his claim construction opinion is contrary to the recited claims, as well as the Court's claim construction decision.

These opinions of Dr. Wei for the "rectifier" limitation should therefore be excluded because, as construed by the Court, there is no requirement that the rectifier charge the capacitor "whenever" it is forward biased.  *CAO Lighting*, 2023 WL 1930354 at *2-3.  Indeed, the risk of confusing the jury is especially great because, as the Court found, injecting the word "whenever," as Dr. Wei attempts to do, "creates additional confusion rather

than clarity."  D.I. 109 at 59:16-17.

### 2. Dr. Wei Applies Inconsistent Claim Constructions for Invalidity and Noninfringement

Dr. Wei's opinions on the "rectifier" limitations should also be stricken because he applies

different constructions of the term for infringement and invalidity.  ███████████████

██████████████████████████████████████████

██████████████████████████████████████

███████████████

████████████████████████████████████
████████████████████████

████████████████████████████████████████
███████████████████████████████████████

███████████████████████████

██████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
███████████████████████████████

███████████████████████    But Dr. Wei did not apply this interpretation of the

"rectifier" limitations in his invalidity analysis for the OmniSwitch.  Ex. 3 at ¶¶ 10, 128.  Nor did

he apply his invalidity claim construction to his noninfringement analysis.

Dr. Wei's inconsistent claim construction applications are improper and unreliable.  Under

Federal Circuit precedent, "[c]laims are interpreted and … given the same meaning for purposes

of both validity and infringement analyses."  *HSM Portfolio LLC v. Elpida Memory Inc.*, 160 F.

Supp. 3d 708, 726 (D. Del. 2016) (quoting *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239

F.3d 1343, 1351 (Fed. Cir. 2001)).  To be clear, this is not an issue about arguing in the

33

alternative.  Rather, even when arguing an alternative claim construction, that same claim construction must be applied for invalidity and infringement.  *HSM*, 160 F. Supp. 3d at 726 (noting "it has been well established for over a century that the same test must be used for both infringement and anticipation") (citing *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239 (Fed. Cir. 2009)); *see TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1311 (Fed. Cir. 2008) (holding that district court properly excluded expert from testifying how the patentee's "infringement analysis would affect the issue of invalidity").

Here, Dr. Wei's opinions are not alternative claim construction arguments.  They are just inconsistent.  If Anker/PI intended to apply the "rectifier" limitation one way for invalidity, then they must also apply that broadly to infringement.  Alternatively, if Anker/PI intended to apply this limitation another way for noninfringement, then they must also apply that to invalidity.  ███████████████████████████████ ██████████████████████████████████████████ ██████████████  Ex. 4 at ¶ 91; Ex. 3 at ¶¶ 10, 128.  For this additional reason, Dr. Wei's invalidity opinions for the OmniSwitch with respect to the "rectifier" limitation should be excluded.  *TiVo*, 516 F.3d at 1311.

What is more, Dr. Wei fails to articulate what alleged "interpretation" based on CogniPower's infringement contentions he is purportedly applying for invalidity.  *Beachcombers v. WildeWood Creative Prods., Inc.*, 31 F.3d 1154, 1160 (Fed. Cir. 1994) ("It is axiomatic that the first step in a validity analysis "involves the proper interpretation of the claims").  Dr. Wei provides no explanation of or citation for the purported alternative interpretation of the "rectifier" limitations he applied.  *Id.* █████████████████████████████ ████████████████████████████████████

██████████████████████████████████████████████████████ Ex. 3 at Ex.

1A at 37-39; Ex. 3 at Ex. 1B at 44-46.  Since Dr. Wei failed to disclose what "interpretation" of

the rectifier limitation he applied in his invalidity opinions for OmniSwitch, those opinions

should be excluded because they are unreliable and would confuse the jury.  *Oxford Gene Tech.*

*Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 437 (D. Del. 2004) (excluding expert opinion for

"failure to disclose a clear construction of each disputed claim element").

## IX.    EXPERT OPINIONS SHOULD BE STRUCK AS TO MR. COWEN

Anker/PI's forensics expert, Mr. Cowen, should not be permitted to opine ████

████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████ This is an

extreme assertion that appears calculated simply to inflame the jury.  It is not backed by

evidence, supporting authorities, or reliable expert analysis.

As an initial matter, there is no actual evidence of deliberate "manipulation" of metadata.

█████████████████████████████████████████████

██████████████████████████████████████████████████

This is a common occurrence in Windows files.  ████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

at ¶ 14.  Thus, every time a file is copied (e.g. copy/paste or backup), a new create date will be registered for the copy, but the date last modified will remain the same.  Therefore, the date created being after the date last modified commonly occurs.

This common occurrence can be seen in PI's own production in this case.  ████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

PI represented to the Court that this is normal and does not reflect any manipulation, and simply occurred because "PI's counsel scanned to PDF a set of binders containing printouts of PI's OmniSwitch development schematics in 2020 when it prepared those materials for production in this case."  D.I. 243 at 1.  In other words, the create date updated when PI copied the files for production, but the other dates remained the same.

PI now seeks to use this common fact about metadata to make (without any actual basis) the extremely inflammatory accusation that something in CogniPower's files was "manipulated."

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

The Court should not permit PI to put an expert on the stand to make an extremely inflammatory accusation of "manipulation," when the expert himself admits he "does not know" what occurred, and the alleged "manipulation" is simply a common occurrence in Windows files. Allowing this testimony is not only unreliable, but also risks inflaming the jury and tainting the entire trial. Courts consistently exclude experts from offering this type of speculation, especially where it is highly inflammatory. *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 833-834 (3d Cir. 2020) ("Rule 702's reliability threshold requires expert testimony to be based on the methods and procedures of science, not on subjective belief and unsupported speculation.").

███████████████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████  Notably, Mr. Cowen cites no sources or forensics authorities that support the notion that having a date-created that is later than a date-last-modified or having accessed-dates later than MFT dates indicate "manipulation." Such a bald assertion with nothing to support it is not the product of reliable principles or methods. Therefore, his opining by implication that there was deliberate manipulation lacks "good grounds" reliability. *UGI Sunbury*, 949 F.3d at 834 ("Above all, it is the speculative and subjective nature of this testimony that severs the necessary relationship to methods which have been established to be reliable.") (internal quotes and cites omitted); *see Baker v. United States*, 642 F. App'x 147, 151 (3d Cir. 2016) (affirming decision to

exclude expert testimony as "subjective belief or unsupported speculation").

Mr. Cowen's opinions are also improper because the suggestion of deliberate manipulation goes to state of mind.  *Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 497 (D. Del. 2019) ("Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case ... and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury.") (internal quotation marks omitted).  These opinions have virtually no probative value but risk the danger of prejudice and jury confusion by their inflammatory nature. *See* Fed. R. Evid. 403; *XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. CIV. A. 09-157-RGA, 2013 WL 1702159, at *1 (D. Del. Feb. 25, 2013) (Where expert "has not provided any reliable basis for drawing this inference based on his expertise" the danger of unfair prejudice substantially outweighed its probative value under Rule 403).

Further, if Mr. Cowen is permitted to make the extremely inflammatory accusation of data manipulation, then CogniPower should be permitted to introduce testimony from its own forensic expert explaining there is no evidence of manipulation and that Mr. Cowen's opinions lack sound forensic basis.  PI has opposed CogniPower from filing a responsive report, forcing motion practice before the Magistrate Judge, scheduled to be heard on March 27, 2025.  D.I. 281.

## X.    EXPERT OPINIONS SHOULD BE STRUCK AS TO DR. MCDUFF

### A.    Analysis Untethered To Anker's Use Are Improper

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████

Dr. McDuff's analysis of consumer cost savings violates the damages statute, which requires that damages be in "no event less than a reasonable royalty for the use made of the invention <u>by the infringer.</u>" 35 U.S.C. § 284 (emphasis added). Here, Anker is the accused infringer, not end users. Dr. McDuff performs no analysis connecting his calculation of alleged "value of the patented invention to end users" to the use by Anker or the value Anker obtains from that use, or explaining how the value to end users impacts what Anker would pay. For example, he offers no analysis that the alleged consumer cost savings reflects what consumers are willing to pay to Anker for the patented technology, limits the prices Anker can charge, or flows through to profits Anker realizes from selling the accused products. Dr. McDuff simply assumes, without explanation, that the benefits achieved by a different party (end users) caps what Anker would pay in the hypothetical negotiation. This stands in sharp contrast to the analysis performed by CogniPower's expert Dr. Reed-Arthurs, who calculates consumer willingness to pay for the infringing technology and its impact on Anker's prices and profit.

The Federal Circuit holds that a damages methodology must "properly tie the reasonable royalty calculation to the facts of the hypothetical negotiation at issue." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011). The Federal Circuit has likewise instructed, such as in the context of analyzing comparable license agreements, that a damages methodology must account for the actual parties to the hypothetical negotiation. *Apple Inc. v.*

*Wi-LAN Inc*., 25 F.4th 960, 973 (Fed. Cir. 2022) (expert must "account for differences in the technologies and economic circumstances of the contracting parties"); *Cf. Microsource, LLC. v. Eco World Grp*., 587 F.Supp.3d 770, 829 (N.D. Iowa 2022) (holding "exclusion is proper" where expert focused on "wrong parties" not at hypothetical negotiation).  Here, Dr. McDuff did not do any of the required analysis linking what he alleged was the value to "end users" to the value of Anker's use, or what Anker would pay at the hypothetical negotiation.  This is a fundamental flaw in his analysis that requires exclusion, as it seeks to lead the jury to impose a royalty not as required by the statute (based on Anker's use), but rather based on the use by different parties.

### B.    State Of Mind Opinions Are Improper

████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████

Dr. McDuff can discuss facts of the case relevant to his analysis (to the extent not otherwise stricken).  But he cannot offer opinions on Mr. Lawson or CogniPower's alleged state of mind – e.g., what CogniPower or Mr. Lawson supposedly "believed," what their "views" supposedly are, or what they would find "acceptable" or "anticipated."  This is improper state of mind testimony that is routinely excluded.  *See Allscripts Healthcare, LLC v. Andor Health, LLC*, Civil Action No. 21-704-MAK, 2022 WL 3021560, at *27 (D. Del. July 29, 2022)

("'Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case ... and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury.' We exclude any opinion relating to intent, motive, or state of mind."); *I-Mab Biopharma v. Inhibrx, Inc.*, Civil Action No. 22-276-CJB, 2024 WL 4581539, at *2 (D. Del. Oct. 21, 2024) ("expert witnesses are not permitted to opine on a person's intent, motive or state of mind" and excluding expert testimony regarding witness's alleged "belief"); *Singular Computing LLC v. Google LLC*, Civil Action No. 19-12551-FDS, 2023 WL 8810187, at *9 (D. Mass. Dec. 20, 2023) ("Green may not testify directly as to Google's state of mind at the time of the hypothetical negotiation").

### C. Dr. McDuff's Opinions Relying On Unconsummated and Non-Comparable License Offers Should be Excluded

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████ None of these offers were accepted and no actual license agreements were entered into.

Dr. McDuff's reliance on these unconsummated offers should be excluded at the outset because an unconsummated license offer is an improper starting point in a hypothetical negotiation analysis. *See MiiCs & Partners, Inc. v. Funai Electric Co., Ltd.*, Civil Action No. 14-804-RGA, 2017 WL 6268072, at *4 (D. Del. Dec. 7, 2017) (excluding opinion based on unaccepted offer because "unaccepted offer has limited, if any, value for determining a reasonable royalty" and stating that "Mr. Boles' unaccepted offer" is an improper "starting point assumption of an $0.80 royalty" and "warrants exclusion."); *Crystal Lagoons U.S. Corp. v. Cloward H2O LLC*, No. 2:19-CV-00796-RJS-DAO, 2025 WL 384995, at *13 (D. Utah Feb. 4,

2025) (granting Daubert motion to exclude opinion based on "unsigned letter of intent" because "the Federal Circuit is clear that a proposed license has 'limited' evidentiary value in calculating infringement damages 'by virtue of its being an offer, rather than a license agreement.'") (citing *Whitserve, LLC v. Comput. Packages, Inc*., 694 F.3d 10, 30 (Fed. Cir. 2012)).

Even assuming it is proper to consider unconsummated offers or offers made before issuance of the patents-in-suit, the OnSemi and Dialog offers are noncomparable from technological and economic perspectives to the hypothetical negotiation of a license between CogniPower and Anker for the Asserted Patents. Dr. McDuff fails to account for differences between them and the hypothetical license.

First, the 2015 and 2017 OnSemi offers were made before the either of the asserted patents issued (the '031 patent issued on September 4, 2018 and the '713 patent issued on November 5, 2019). Similarly, the December 2018 Dialog offer was made before issuance of the '713 patent. Dr. McDuff acknowledges this. But he performs no analysis accounting for it. He simply takes the OnSemi and Dialog rates for different patents (not including the asserted patents) and applies them without explanation, failing to account for the value that would be added when the Asserted Patents issued.

Second, the OnSemi and Dialog offers were for different products (chips as opposed to power converters). Dr. McDuff does no analysis to account for this difference. The Asserted Patents in this case cover power converters using demand pulse regulation technology. In contrast, the OnSemi and Dialog products are semiconductor chips, not power converters using demand pulse technology. They are not used in the accused Anker products and do not embody the claimed inventions of the Asserted Patents. *See* Ex. 13, Section VI, ¶ 238 (stating █

████████████████████████████████████████████████████



▓▓▓▓▓▓ Ex. 12 at 99-101.  Anker's technical expert, Dr. Wei, did not analyze the OnSemi

or Dialog chips to determine any technical comparison to the patented technology or the Power

Integrations OmniSwitch3 chips.  Dr. McDuff also makes no showing that, at the time of the

offers, OnSemi or Dialog customers were making any products that use the patented technology

of the Asserted Patents or were making any products that are even remotely similar to Anker's

accused chargers.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ However, mere

"similarity" is not "comparability."  *See, e.g.,TC Tech. LLC v. Sprint Corp.,* No. 1:16-cv-00153-

RGA, 2019 WL 5295232 at *2 (D. Del. Oct. 18, 2019) ("But, here, Mr. Reed fails to analyze the

comparability between the VoIP patents and the patent-in-suit, and instead glazes over the

concept by grouping them together as 'telecommunications patents.'"); *Lucent Tech., Inc. v.

Gateway, Inc.*, 580 F.3d 1301, 1328 (Fed. Cir. 2009) ("Lucent's brief characterizes the four

agreements as covering 'PC-related patents,' as if personal computer kinship imparts enough

comparability to support the damages award.").  "When relying on licenses to prove a reasonable

royalty, alleging a loose or vague comparability between different technologies or licenses does

not suffice."  *LaserDynamics, Inc. v. Quanta Computer, Inc.,* 694 F.3d 51, 79 (Fed. Cir. 2012).

"The testimony of a damages expert in a patent suit who relies on non-comparable licenses in reaching his royalty rate should be excluded." *M2MSols. LLC v. Enfora, Inc.,* 167 F. Supp. 3d 665, 675-76 (D. Del. 2016) (citing *DataQuill Ltd. v. High Tech Comput. Corp.,* 887 F.Supp.2d 999, 1022 (S.D. Cal. 2011)).

███████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████ Dr. McDuff's application of his royalty rate to a mere component as opposed to the actual accused product fails to comply with the statutory requirement of calculating a reasonable royalty for use made *of the invention* (here the claimed power converter, not the chip component).

### D.    CogniPower's Internal Email And Spreadsheet Are Not Reliable Indicators Of A Hypothetical Negotiation

██████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████ These documents and the referenced royalty rates were never communicated to Power Integrations or incorporated in any license offers. ████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████    ██████████████████████████████

████████████████████████████████████████████████████████

     Dr. McDuff simply takes the royalty rate from this spreadsheet and email relating to a different patent and different product, and then applies it without adjustment to the asserted patents and asserts it is what Anker would pay. ████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████

     This is not a reliable analysis, as it does not account for the different patents or products at issue, or the fact these documents were internal. *See Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 914-15 (Fed. Cir. 2022) (expert must "account for differences in the technologies and economic circumstances of the contracting parties"). Dr. McDuff's analysis of them should therefore be excluded.

    **E.**    **Reference to Industry Royalty Rates Should be Excluded**



██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ Dr. McDuff makes no attempt to show the

technological or economic comparability of the technologies surveyed and cites no evidence indicating that the licensed technologies provide the same or similar benefits as the Asserted Patents. ██████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ Without a showing of comparability, these industry surveys and Dr. McDuff's opinions on them should be excluded. *See Laserdynamics*, 694 F.3d at 80 (rejecting expert's use of generalized "Licensing Executives Survey" not connected to parties or patents in suit).

**F.    Reference to Power Integrations' Patents Should be Excluded**

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████ Anker/PI's technical expert, Dr. Wei, performs no technical analysis identifying specific Power Integrations patents or explaining how they enable the standby power saving feature.  As such, this is mere ipse dixit by Dr. McDuff that appears calculated to suggest Anker does not infringe (or that damages should not be owed) because PI also has patents.  This is improper and references to a defendants' patents are routinely excluded for this reason.  *See, e.g. Puma Biotechnology, Inc. v. Astrazeneca Pharm.,* Case No. 21-cv-1338-MFK (D. Del. May 6, 2024 slip opinion, Ex. 64) (excluding evidence of the defendants' patents to show apportionment of profits as having "minimal" probative value that is outweighed by "the risk that jurors would inappropriately believe that no damages are owed because defendants have their own patents"); *Touchstream Tech., Inc. v. Charter Communications, Inc.,* Case No. 2:23-cv-00059-JRG-RSP, 2025 WL 524289 at *2 (E.D. Tex. February 17, 2025).

Dated: February 26, 2025

Respectfully submitted,

**FARNAN LLP**

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Jason G. Sheasby (admitted *pro hac vice*)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
JSheasby@Irell.com

Stephen M. Payne (admitted *pro hac vice*)
IRELL & MANELLA LLP
840 Newport Center Dr., Suite 400
Newport Beach, California 92660
Telephone: (949) 760-0991
Facsimile: (9 49) 760-5200
spayne@Irell.com

Andrew Y. Choung (admitted *pro hac vice*)
Jennifer Hayes (admitted *pro hac vice*)
Nixon Peabody LLP
300 S. Grand Avenue, Suite 4100
Los Angeles, CA 90071
213-629-6000
achoung@nixonpeabody.com
jenhayes@nixonpeabody.com
*Attorneys for Plaintiff CogniPower LLC*