# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COGNIPOWER LLC,

        Plaintiff,

    v.

FANTASIA TRADING, LLC D/B/A
ANKERDIRECT and
ANKER INNOVATIONS,

        Defendants,

POWER INTEGRATIONS, INC.,

        Intervenor.

Civ. No. 19-2293-JLH-SRF

REDACTED

## OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY

Douglas E. McCann (No. 3852)
Warren K. Mabey, Jr. (No. 5775)
**FISH & RICHARDSON P.C.**
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-5070

**ATTORNEYS FOR DEFENDANTS
FANTASIA TRADING, LLC D/B/A ANKERDIRECT
AND ANKER INNOVATIONS LIMITED; AND
INTERVENOR POWER INTEGRATIONS, INC.**

Dated: February 26, 2025

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ...................................................................................1

II.     CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS .................2

III.    LEGAL STANDARDS ...........................................................................2

        A.      Summary Judgment ....................................................................2

        B.      *Daubert* ....................................................................................2

        C.      Motions to Exclude Expert Testimony ......................................3

IV.     BRIEF TECHNOLOGY TUTORIAL ........................................................4

V.      ARGUMENT ........................................................................................7

        A.      The Court Should Grant Summary Judgment That Products
                Using InnoSwitch3 and InnoSwitch4 Chips Do Not Infringe. .................7

                1.      The Accused "Demand Pulses" Determine Both When
                        to Turn On and When to Turn Off the Primary Switch. ...............8

                2.      The Court Should Reject CogniPower's Arguments as
                        Contrary to the Court's Claim Construction. ...............................11

        B.      In Addition, The Court Should Grant Summary Judgment of
                Noninfringement Because CogniPower Cannot Rely on Expert
                Opinions That Mirror Untimely Contentions the Court Already
                Excluded. ..................................................................................15

                1.      CogniPower Cannot Rely on Its Untimely "Rectifier"
                        Opinion. .......................................................................16

                2.      CogniPower Cannot Rely on Its Untimely "Demand
                        Pulse" Opinion, and This Also Justifies Summary
                        Judgment. ...................................................................18

                3.      Because CogniPower Cannot Rely on Untimely New
                        Contentions on Equivalents, the Court Should Also Find
                        No Infringement by Equivalents as a Matter of Law.................20

        C.      CogniPower's Conclusory Claims of Willful Infringement and
                Indirect Infringement Are Also Ripe for Summary Judgment. ...............21

        D.      The Court Should Grant Summary Judgment That PI Did Not
                "Derive" the Prior Art OmniSwitch Invention from CogniPower..........22

# TABLE OF CONTENTS

**Page**

1.   Judge Fallon's Order at D.I. 218 Prohibits CogniPower from Relying on an Earlier Conception Date, Is Law of The Case, and Thus Warrants Summary Judgment of No Derivation. ...................................................................22

2.   Summary Judgment Is Also Warranted Because CogniPower Does Not Show Prior Conception of All Limitations. ...................................................................24

3.   Summary Judgment Is Also Warranted Because CogniPower Cannot Show Communication of the Alleged Invention to PI as a Matter of Law ...............................27

E.   The Court Should Exclude Dr. Ricketts' Testimony on Improper Factual and/or Legal Issues That are Not Within His Technical Expertise...................................................................33

F.   The Court Should Exclude the Opinions of Dr. Reed-Arthurs and Mr. Dell Related to Damages.............................................38

1.   Dr. Reed-Arthurs' Survey Should be Excluded Because It Is Unreliable and Because It Does Not Account for Unpatented Technology. ............................................39

2.   Mr. Dell's Report Should Be Excluded for Lack of Technical Apportionment and Unreliable Economic Apportionment. ...........................................................46

VI.   CONCLUSION...................................................................49

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Acumed LLC v. Advanced Surgical Servs., Inc.*,
    561 F.3d 199 (3d Cir. 2009)..............................................................................30

*Adasa Inc. v. Avery Dennison Corp.*,
    No. 6:17-CV-01685-MK, 2023 WL 3775332 (D. Or. June 2, 2023) .............................35, 36

*Addison v. Emerson Elec. Co.*,
    No. 96-146-SLR, 1997 WL 129327 (D. Del. Feb. 24, 1997) ..................................................18

*Allscripts Healthcare, LLC v. Andor Health, LLC*,
    No. 21-704-MAK, 2022 WL 3021560 (D. Del. Jul. 29, 2022) ............................................34

*Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*,
    No. 13-324, 2017 WL 3528606 (D. Del. Aug. 16, 2017).......................................................35

*Baxalta Inc. v. Bayer Healthcare LLC*,
    513 F.Supp.3d 426 (D. Del. 2021)........................................................................28

*Bridgestone Sports Co. v. Acushnet Co.*,
    2007 WL 521894 (D. Del. Feb. 15, 2007) ...............................................................3

*Burroughs Wellcome Co. v. Barr Labs., Inc.*,
    40 F.3d 1223 (Fed. Cir. 1994)...............................................................................25

*CAO Lighting, Inc. v. Gen. Elec. Co.*,
    No. 20-681-GBW, 2023 WL 1930354 (D. Del. Jan. 30, 2023)............................................15

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...............................................................................2, 21

*Competitive Edge, Inc. v. Staples, Inc.*,
    763 F. Supp. 2d 997 (N.D. Ill. 2010) .................................................................41

*Creative Compounds, LLC v. Starmark Labs.*,
    651 F.3d 1303 (Fed. Cir. 2011)...........................................................................24

*Cumberland Pharm. Inc. v. Mylan Institutional LLC*,
    846 F.3d 1213 (Fed. Cir. 2017)....................................................................24, 25, 27

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ........................................................................ *passim*

# TABLE OF AUTHORIES

**Page(s)**

*Eaton Corp. v. Rockwell Int'l Corp.*,
  323 F.3d 1332 (Fed. Cir. 2003).............................................................................27

*Ethicon, Inc. v. U.S. Surgical Corp.*,
  135 F.3d 1456 (Fed. Cir. 1998)........................................................................25, 29

*Fedorczyk v. Caribbean Cruise Lines, Ltd.*,
  82 F.3d 69 (3d Cir. 1996).......................................................................................30

*Fundamental Innovation Sys. Int'l LLC v. Anker Innovations Ltd.*,
  No. 21-339-RGA, 2025 WL 459916 (D. Del. Feb. 11, 2025)...........................36, 48

*Fundamental Innovation Systems International LLC v. Anker Innovations Ltd. and
  Fantasia Trading LLC d/b/a AnkerDirect*,
  C.A. No. 21-339-RGA (D. Del., February 11, 2025) ...........................................49

*Gambro Lundia AB v. Baxter Healthcare Corp.*,
  110 F.3d 1573 (Fed. Cir. 1997).......................................................22, 24, 27, 29

*Hedgewick v. Akers*,
  497 F.2d 905 (CCPA 1974) ...................................................................................30

*Intell. Ventures I LLC v. AT&T Mobility LLC*,
  No. CV 13-1668-LPS, 2017 WL 658469 (D. Del. Feb. 14, 2017) .....................3, 15

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
  607 F. Supp. 3d 464 (D. Del. 2022).....................................................................21

*Lamont v. New Jersey*,
  637 F.3d 177 (3d Cir. 2011)...................................................................................2

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)................................................................................................2

*Medtronic Inc. v. Bos. Sci. Corp.*,
  558 F. App'x 998 (Fed. Cir. 2014) ....................................................................21, 25

*Merck Sharp & Dohme Corp. v. Sandoz, Inc.*,
  No. 12-3289 PGS LHG, 2014 WL 997532 (D.N.J. Jan. 6, 2014), *aff'd*, No. 12-
  3289 PGS, 2014 WL 1494592 (D.N.J. Apr. 16, 2014)...........................................18

*MKS Instruments, Inc. v. Advanced Energy Indus., Inc.*,
  325 F. Supp. 2d 471 (D. Del. 2004)......................................................................21

*Native American Arts, Inc. v. Bud K World Wide, Inc.*,
  2012 WL 1833877 (M.D. Ga. 2012).....................................................................42

## TABLE OF AUTHORIES

**Page(s)**

*Network-1 Technologies, Inc. v. Ubiquiti Inc.*,
    C.A. No. 22-1321-MN, 2025 WL 92977 (D. Del. Jan. 14, 2025) ..........................................22

*Novartis Corp. v. Ben Venue Lab'ys, Inc.*,
    271 F.3d 1043 (Fed. Cir. 2001).......................................................................................31

*Onyx Therap., Inc. v. Cipla Ltd.*,
    No. 16-988-LPS, 2020 WL 2214443 (D. Del. May 4, 2020) ...................................30

*Parallel Networks Licensing, LLC v. Microsoft Corp.*,
    No. 13-2073-KAJ, 2017 WL 11557656 (D. Del. Apr. 10, 2017)...........................15

*Price v. Symsek*,
    988 F.2d 1187 (Fed. Cir. 1993)................................................................................25, 29

*Robert Bosch, LLC, v. Pylon Mfg. Corp.*,
    700 F.Supp.2d 625 (D. Del. 2010)...............................................................................28

*Schneider v. Fried*,
    320 F.3d 396 (3d Cir. 2003)........................................................................................3, 44

*Scott v. Calpin*,
    527 F. App'x 123 (3d Cir. 2013) ................................................................................31

*Serrano v. Telular Corp.*,
    111 F.3d 1578 (Fed. Cir. 1997)....................................................................................12

*Sonos, Inc. v. D & M Holdings Inc.*,
    297 F. Supp. 3d 501 (D. Del. 2017).................................................................34, 35, 37

*TQ Delta, LLC v. ADTRAN, Inc.*,
    2021 WL 3728919 (D. Del. Aug. 23, 2021) ................................................................4

*Transonic Sys., Inc. v. Non-Invasive Med. Techs. Corp.*,
    75 F. App'x 765 (Fed. Cir. 2003) ...............................................................................12

*VirnetX, Inc. v. Cisco Systems, Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014)..............................................................................45, 48

*W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*,
    No. 11-515-LPS-CJB, 2015 WL 12815314 (D. Del. Nov. 20, 2015) ....................34

*Williams v. Borough of West Chester, Pa.*,
    891 F.2d 458 (3d Cir. 1989)..........................................................................................2

## <u>TABLE OF AUTHORIES</u>

<u>**Page(s)**</u>

*Wirtgen Am., Inc. v. Caterpillar, Inc.*,
   No. 17-770-JDW-MPT, 2024 WL 166833 (D. Del. Jan 16, 2024) ........................................34

**Statutes**

35 U.S.C. § 102(g) ................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 56(c) ................................................................................................2

Fed. R. Evid. 702 ................................................................................................2, 3

# I.    INTRODUCTION

The Court should grant summary judgment that all power supplies based on Power Integrations' InnoSwitch3 and InnoSwitch4 chips, including the accused power supplies, do not infringe because they work in a way that plaintiff CogniPower disclaimed during prosecution, and therefore are not within the scope of its claims. In essence, CogniPower lost this case when the Court found prosecution disclaimer over CogniPower's objection. *See* Ex. 1 (2/25/21 Hrg. Tr.) at 38:20–23 ("CogniPower's repeated statements that the demand pulse control only the on time of the primary side switch and not the off time are clear and unambiguous and they therefore constitute a binding disclaimer"). In the PI design, undisputed evidence establishes that what CogniPower identifies as the claimed "demand pulse" determines *both* when to turn the switch on and when to turn it off, contrary to CogniPower's disclaimer. If the Court grants this motion, it need not consider any of the other issues raised herein.

In addition, the Court should grant summary judgment that CogniPower cannot establish its contention that PI "derived" its prior art OmniSwitch from CogniPower. The law of "derivation" requires a showing of prior conception of the invention and communication of the invention to the other claimed inventor before they conceived of the same. CogniPower can show neither. The unrebutted evidence shows that PI conceived of and designed OmniSwitch well before CogniPower ever thought of its supposed "invention." CogniPower has been precluded from relying on late-produced evidence to show prior conception. And CogniPower cannot proceed to trial based solely on the uncorroborated testimony of its inventors that they believe they were first, or attorney speculation that PI may have received information about aspects of the alleged invention before OmniSwitch was conceived.

Finally, the Court should exclude the proposed testimony from CP's experts Dr. Reed-Arthurs and Mr. Dell, regarding damages, because Dr. Reed-Arthurs' survey and Mr. Dell's

subsequent use of the survey results suffer from methodological errors that render the opinions

unreliable and inadmissible, including a failure under the law of apportionment.

## II.      CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to the Court's Scheduling Order, D.I. 121,[1] Defendants provide a separate concise

statement of facts filed contemporaneously with this brief.

## III.     LEGAL STANDARDS

### A.      Summary Judgment

Summary judgment is proper where no genuine dispute of material fact exists and the

moving party demonstrates it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).  Material facts are those "that could affect

the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is

sufficient to permit a reasonable jury to return a verdict for the nonmoving party."  *Lamont v. New

Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citation omitted).  The "burden on the moving party may

be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of

evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  The burden then shifts

to the non-movant to demonstrate the existence of a genuine issue for trial.  *Matsushita Elec. Indus.

Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  *Williams v. Borough of West Chester,

Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989).

### B.      *Daubert*

Federal Rule of Evidence 702 provides that a qualified expert witness may testify in the

form of an opinion if (a) the expert's scientific, technical, or other specialized knowledge will help

the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based

---

[1] As amended in part by D.I. 183 and D.I. 272.

on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. The trial court must ensure that the expert's testimony meets these requirements. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

The Third Circuit has construed Rule 702 as embodying three distinct substantive restrictions on the admission of expert testimony: (1) qualifications, (2) reliability and (3) fit. *See Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). To meet the reliability requirement, the expert's proffered testimony "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his o[r] her belief." *Id.* To satisfy the fit requirement, the expert's testimony "must be relevant for the purposes of the case and must assist the trier of fact." *Id.* In other words, there must be "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.*

## C.    Motions to Exclude Expert Testimony

This Court regularly excludes theories that appear for the first time in expert reports as opposed to timely served contentions. *E.g., Intell. Ventures I LLC v. AT&T Mobility LLC*, No. CV 13-1668-LPS, 2017 WL 658469, at *5–6 (D. Del. Feb. 14, 2017) (excluding expert opinion). The Court analyzes this issue in terms of the *Pennypack* factors: "(1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5) the explanation for the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the evidence." *Id.* at *1. In "sophisticated, complex litigation involving parties represented by competent counsel," courts are "more willing to exclude evidence without a strict showing that each of the *Pennypack* factors has been satisfied." *Bridgestone Sports Co. v. Acushnet Co.*, 2007

WL 521894, at *4 (D. Del. Feb. 15, 2007); *see also TQ Delta, LLC v. ADTRAN, Inc.*, 2021 WL 3728919, at *3 (D. Del. Aug. 23, 2021) (same).

## IV.    BRIEF TECHNOLOGY TUTORIAL

The Asserted Patents generally relate to switched-mode power supplies, which are widely used devices for converting alternating current (*e.g.*, from a wall outlet) into direct current (*e.g.*, for charging a smartphone).[2]  *See*, *e.g.*, Ex. 2 ('031 Patent) at 1:36–38.  The specification of the Asserted Patents concedes that switched-mode power supplies were "ubiquitous" at the time of filing and cites a Power Integrations design as a "typical" example.  *Id.* at 1:36–40.

Switched-mode power supplies work by turning on and off a switch to transfer electrical charge from the input side of a transformer (called the "primary" side) to its output side (called the "secondary" side).  These basic elements are show below:



In operation, each time the switch is turned on and off, electrical charge is transferred through the transformer to the output.[3]  This is called a "switching cycle."  The power supply can

---

[2] The Asserted Patents are U.S. Patent Nos. RE47,031 (Ex. 2) and RE47,713 (Ex. 3).

[3] Electrical current flows through the switch when it is turned "on" and does not flow through the switch when it is turned "off."  The operation is similar to closing and opening a mechanical switch.

control the amount of charge delivered to the output over time by adjusting the timing of these switching cycles. For example, increasing the frequency of the switching cycles (e.g., from 50 to 60 kHz) will increase the amount of charge delivered to the output.[4] Increasing the amount of time the switch remains "on" in any given switching cycle will also increase the amount of charge delivered to the output. On the other hand, decreasing the switching frequency and/or amount of time the switch remains "on" in each switching cycle will decrease the amount of charge delivered to the output.

A switched-mode power supply determines how much charge it needs to deliver to the output by monitoring the output (which is on the secondary side) and providing "feedback" to the primary side. This feedback allows the power supply to "regulate" the output to a particular level, by adjusting the switching frequency and/or how long the switch remains "on" during each switching cycle to ensure an appropriate amount of charge is delivered to the output, depending on what the device connected to the output requires.

The Asserted Patents claim a particular type of feedback called a "demand pulse." For example, claim 1 of the '031 patent recites a "demand pulse generator" on the secondary side "configured to generate demand pulses" that are used to "adjust a frequency of the commutation of the input power to supply a desired amount of voltage or current to the load." '031 Patent, Claim 1. There is no dispute that each claim of the Asserted Patents requires a "demand pulse." *See*, *e.g.*, Ex. 2 ('031 Patent) at Claims 1, 10, 18, 64; Ex. 3 ('713 Patent) at Claims 18, 48; Ex. 4 (Ricketts 1/31/25 Dep.) at 69:25–70:15 ████████████████████████████

████████████████████████████████████████

---

[4] Frequency is measured in hertz (Hz). One hertz (Hz) is one switching cycle per second. One kilohertz (kHz) is one thousand switching cycles per second.

During prosecution, CogniPower was forced to define "demand pulses" narrowly to distinguish other forms of feedback already known in the prior art.  For example, one type of known power supply used a pulse-width modulation (PWM) pulse generated on the secondary side to provide feedback to the primary side.  The Patent Office rejected CogniPower's pending claims over an example shown in U.S. Patent No. 5,498,995 to Szepesi et al.  In rejecting the claims, the Patent Office observed that Szepesi disclosed a primary controller for turning the primary switch "on and off . . . in response to PWM pulses from the secondary-side controller."  Ex. 5 ('713 Prosecution History) 4/10/18 Rejection at 7–8 (finding that Szepesi disclosed demand pulses because the LM3001 primary driver 24 "turns the power FET 26 on and off, only in response to PWM pulses from the secondary-side controller 22").  Figure 2 of Szepesi is shown below.



Ex. 6 (U.S. Patent No. 5,498,995) at Fig. 2 (annotated).

In response, CogniPower argued that Szepesi "does not teach or even suggest the secondary-side generation of demand pulses" because Szepesi's PWM pulses "determine[] both when to turn on and when to turn off the primary-side switch."  Ex. 5 ('713 Prosecution History) 4/24/18 Amendment at 11 (emphasis in original).  CogniPower argued that "Szepesi's PWM pulses are not demand pulses" because "demand pulses only turn ON a primary-side switch" and

do not determine when the primary switch is turned OFF. Ex. 5 ('713 Prosecution History) 11/6/18 Interview Summary Agenda at 3 (emphasis in original). CogniPower argued that in its invention, the timing of when the primary switch is turned OFF (*i.e.*, the "OFF time" of the primary switch) "is controlled *solely* by primary side," not by the "demand pulses" generated on the secondary side. *Id.* at 4 (emphasis added). CogniPower repeated the same argument numerous times when prosecuting the Asserted Patents to gain allowance over prior art disclosing PWM pulses. *See* D.I. 63 (Jt. Claim Constr. Br.) at 6–14, 19–22.

Based on this unambiguous prosecution history, the Court construed "demand pulse" as a "pulse generated on the secondary side that determines when to turn on a primary switch and does not determine when to turn off the switch." D.I. 70 (Claim Constr. Order) at 2. Under this construction, a pulse that determines when to turn off the switch cannot be a "demand pulse."

## V.    ARGUMENT

### A.    The Court Should Grant Summary Judgment That Products Using InnoSwitch3 and InnoSwitch4 Chips Do Not Infringe.

Power supplies based on PI's InnoSwitch3 and InnoSwitch4 chips—including *all* accused products in this case—do not infringe because they cannot satisfy the Court's construction of the key claim limitation, "demand pulse." As mentioned in the technology tutorial above, the Court construed "demand pulse" as a "pulse generated on the secondary side that determines when to turn on a primary switch and *does not determine* when to turn off the switch." D.I. 70 at 2 (emphasis added). By contrast, the undisputed evidence demonstrates that the accused "demand pulses" *do* determine when to turn off the switch.[5]

---

[5] Section A of this motion does not encompass power supplies using chips in PI's original InnoSwitch family, which CP did not accuse in its operative infringement contentions.

### 1. The Accused "Demand Pulses" Determine Both When to Turn On and When to Turn Off the Primary Switch.

CogniPower and its expert Dr. Ricketts assert that ████████████████ ████████████████████████████████████."[6]  Ex. 4 (Ricketts 1/31/25 Dep.) at 120:7–122:6.  The parties agree ████████████████████ ████████.  *Id.* 121:11–13.

While CogniPower and Dr. Ricketts argue █████████████████████ █████████████, the undisputed evidence demonstrates this assertion is incorrect because the cycle requests equally determine when to turn the switch on *and* off.

The following facts are undisputed:

(a) The switch is turned off when the current through the switch reaches a "current limit threshold";

(b) The "current limit threshold" is determined by the "switching frequency"; and

(c) The "switching frequency" is determined by the "cycle requests".

As a matter of logic, this means the "cycle requests"—the accused "demand pulses"— necessarily determine when to turn off the switch.

CogniPower's expert Dr. Ricketts has admitted ████████████████ ███████████████████████████████ Ex. 4 (Ricketts 1/31/25 Dep.) at 136:9–11; *see also id.* at 134:6–136:7; Ex. 8 (Ricketts Op. Rpt. § I–IV) ¶ 80 ████ ██████████████████████████  ***Second***, Dr. Ricketts agreed ████████

---

[6] These cycle requests are also called "FluxLink requests" because they are transmitted from the secondary controller to the primary controller over a feedback mechanism that PI calls "FluxLink." In addition, ████████████████████████████████████████████ Ex. 7 (Ricketts Op. Rpt. § XI) ¶¶ 9-10.  This motion uses the "cycle request" terminology that CogniPower's expert Dr. Ricketts primarily uses in his expert reports.



.[7]  As he stated, ██████████████████

████████████████████████████████████████

██████████████ Ex. 4 (Ricketts 1/31/25 Dep.) at 148:5–6, 153:11–

16; *see also id.* at 140:25–153:16, 161:9–162:9.  ***Third***, Dr. Ricketts agreed ███████

████████████████████████████████████████

████████████████████████████████████████

███████████ *Id.* at 126:21–24; *see also id.* at 126:10–129:7.  In other words, each cycle request

turns the switch on, so the frequency of the cycle requests is the switching frequency.[8]

Indeed, these facts are described almost word-for-word in a PI document that Dr. Ricketts

himself relies on to support his "demand pulse" opinions.  The document describes that ███████

████████████████████████████████████████

████████████████████████

---

[7] The term "ILIM" refers to the current limit, where "I" is the common electrical engineering symbol for current and "LIM" means limit.  *See* Ex. 9 (Ricketts Op. Rpt. § VII) ¶ 238 (discussing "the current limit (ILIM)"); Ex. 10 (Wikipedia entry for current at https://en.wikipedia.org/wiki/Electric_current) ("The conventional symbol for current is *I*, which originates from the French phrase *intensité du courant*, (current intensity).").

[8] PI uses the term "Ramp-Time-Modulation" (RTM) to describe the feature of InnoSwitch 3-4 that uses cycle requests from the secondary side to determine the current limit (and thus when to turn off the primary switch).  PI documents describe this feature as providing ██████████ ██████████ referencing the pulse width modulation (PWM) technique that CogniPower distinguished during prosecution.  *See*, *e.g.*, Ex. 11 (InnoSwitch3 OTS, PIC00001739) at 1749 ("█████████████████████████████ . . . .").  InnoSwitch3 and InnoSwitch4 both use the RTM control scheme, and Dr. Ricketts asserts that ██████████████████████ █████████████████████ Ex. 9 (Ricketts Op. Rpt. § VII) ¶¶ 224–43 (describing InnoSwitch3 RTM control scheme), 244 (█████████████████████████████████████████████ █████████████████████), 245–51 ██████████████████████████████████ Ex. 4 (Ricketts 1/31/25 Dep.) at 78:17–21.



Ex. 12 (Balakrishnan Dep. Ex. 38) at Slide 13;[9] *see also* Ex. 13 (Ricketts Op. Rpt., Appx. 1) at 1-94 to 1-95 (citing same).

The fact that the current limit threshold of InnoSwitch3-4 is solely a function of the switching frequency, and not a function of anything else, is shown, for example, by the graphs in the InnoSwitch3 Data Sheets and Objective Technical Specification (OTS). These graphs confirm the current limit threshold is a function of only one variable: the switching frequency set by the cycle requests that originate from the secondary side.



| Ex. 14 (InnoSwitch3 Data Sheet, PIC00002351) at 2354.[10] | Ex. 11 (InnoSwitch3 OTS, PIC00001739) at 1766.[11] |

---

[9] *See also id.* at 9 (describing that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; 11 (describing that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[10] *See also* Ex. 15 (InnoSwitch4 Data Sheet, PIC00003701) at 3705.

[11] *See also* Ex. 11 (InnoSwitch3 OTS, PIC00001739) at 1763-68; Ex. 16 (InnoSwitch4 OTS, PIC00005496) at 5506-12.

CogniPower's expert Dr. Ricketts does not dispute that █████████████████ ████████████████████ Ex. 4 (Ricketts 1/31/25 Dep.) at 147:23–148:10; *see also id.* at 143:16–24 (█████████████████████████████████); 161:9– 162:3.  Dr. Ricketts also does not dispute that ████████████████ ████████████████████ *See id.* at 149:5–11 (discussing Figure 7 of the InnoSwitch3 data sheet); 162:5–9 (discussing Figure 9 of the InnoSwitch OTS).

Since the accused "demand pulses"—the InnoSwitch3-4 "cycle requests"—determine the switching frequency, they determine the "current limit" and thus when to turn off the switch.  Since this is directly contrary to the Court's claim construction that a demand pulse "does not determine when to turn off the switch," noninfringement is established as a matter of law.  *See* D.I. 70 at 2.

### 2. The Court Should Reject CogniPower's Arguments as Contrary to the Court's Claim Construction.

CogniPower and Dr. Ricketts argue that █████████████████████ ███████████████████████████████████████ ██████████ *E.g.*, Ex. 9 (Ricketts Op. Rpt. § VII) ¶¶ 100–101.  However, this argument fails as a matter of law because it contradicts the Court's claim construction.

Notably, the Court drew a distinction between "determines" and "plays a role" in construing the claim (while not directly adopting the proposed construction of either party).  That is, in concluding that the secondary side determines when to turn on the switch but does not determine when to turn it off, the Court explained that the very act of turning the switch on "plays a role" in turning it off because you cannot turn off a switch off before turning it on:  "It had to have been turned on for this to work, and if the secondary controller turned it on, then how can you say it played no role in the determination of the off switch?"  Ex. 1 (2/25/21 Hrg. Tr.) at 34:21–

24; *see also id.* 39:8–22.  Thus, the fact that the primary-side circuitry plays a role in turning off the switch does not mean such circuity "determines" when to turn off the switch.

In addition, the Federal Circuit has held that the meaning of the word "determines" in a claim depends upon the intrinsic record.  *See Serrano v. Telular Corp.*, 111 F.3d 1578, 1582 (Fed. Cir. 1997) ("The inventors' definition and explanation of the meaning of the word "determining," as evidenced by the specification, controls the interpretation of that claim term."); *Transonic Sys., Inc. v. Non-Invasive Med. Techs. Corp.*, 75 F. App'x 765, 773 (Fed. Cir. 2003) (construing "determining" based on "the intrinsic record, including the claims themselves, the '989 patent specification, and the prosecution history of the '989 patent").

Here, the Asserted Patents do not use the word "determine" or "determining" in the specification, but the Court has already explained what "determines" means based on the prosecution history.  The Court explained "it's pretty clear there was a disclaimer that makes clear that the pulse controls only the turning on of the switch . . . [but] I don't see a clear disclaimer to the effect that the pulse signal plays no role in determining when to turn off the switch."  Ex. 1 (2/25/21 Hrg. Tr.) at 6:7–12.  The Court thus held "CogniPower's repeated statements that the demand pulse control only the on time of the primary side switch and not the off time are clear and unambiguous and they therefore constitute a binding disclaimer."  *Id.* at 38:20–23.  In addition, the Court held "[d]etermining the switch and controlling the switch, however, do not equate, and certainly not unambiguously and clearly equate with 'playing no role' in determining when to turn off the switch."  *Id.* at 38:24–39:2.

This means, to prevail, CogniPower has the burden of proving that the primary-side circuity (and not the "demand pulse" generated on the secondary side) *determines* when to turn off the switch and not merely that it plays a role.  Yet CogniPower has no such evidence.  Indeed, its

assertions contradict its position that secondary-side circuitry determines when to turn the switch

*on*. Notably, CogniPower and Dr. Ricketts admit ███████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████ Ex. 4 (Ricketts 1/31/25 Dep.) at 123:1–6.

Dr. Ricketts also agreed █████████████████████████████████████████████

███████████████████████████████████████████████████████████████ *Id.*

123:10–124:3. In addition, even though the primary side circuitry will not always turn the switch

on after receiving a cycle request from the secondary side (*e.g.*, if there is a fault), CogniPower

and Dr. Ricketts assert that ████████████████████████████████████████████

*on*. *Id.* at 124:16–126:16. In other words, CogniPower admits that ███████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████ Here, the "cycle requests" generated on the secondary side determine both

when the switch is turned on and turned off, even though primary-side circuitry is involved in

implementing the turn on/off based on the timing determined by the "cycle requests."

CogniPower also argues █████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ue.  However, it is still the frequency of cycle requests that determine whether the minimum and maximum values are reached.  ███████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████.  *See* Ex. 4 (Ricketts 1/31/25 Dep.) at 155:4–157:9. This does not change the fact that the cycle requests determine the current limit and thus when to turn off the switch.[12]  Indeed, as explained above, there is simply no other variable that is present, other than the cycle request frequency, that can determine the current limit and thus the turn off time.

Because the undisputed evidence establishes that the accused cycle requests *determine* when to turn off the switch, as interpreted by the Court in light of the prosecution history, they cannot be the required "demand pulses" and the Court should find no infringement as a matter of law.  If the Court agrees, it need not consider the other issues raised in this brief.

---

[12] In his reports, CogniPower's expert Dr. Ricketts identified ████████████████████ ██████████████████████████████████████████████████████ Ex. 13 (Ricketts Op. Rpt., Appx. 1) at 1-90 to 1-92, 1-98 to 1-101, 1-209 to 1-213.  However, the question relevant to this motion is whether the InnoSwitch 3-4 cycle requests themselves satisfy the requirement of "demand pulses."  They do not, because as discussed herein, the cycle requests determine both when to turn on the primary switch and when to turn it off.  ████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████ Ex. 17 (Ricketts Reb. Rpt. § 8) ¶ 22-25 (opining that in ████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████ Ex. 4 (Ricketts 1/31/25 Dep.) at 208:21-210:10, 217:18-220:3.

**B.    In Addition, The Court Should Grant Summary Judgment of Noninfringement Because CogniPower Cannot Rely on Expert Opinions That Mirror Untimely Contentions the Court Already Excluded.**

There is another, perhaps simpler, reason to find no infringement as a matter of law. CogniPower's operative infringement contentions are its "corrected" contentions served on October 13, 2020. Magistrate Judge Fallon rejected as untimely CogniPower's attempt to amend these contentions in September 2024. *See* D.I. 163 at 2–3. Yet CogniPower's expert, Dr. Ricketts, attempts to include in his report the theories found in the untimely contentions that the Court already rejected. The Court should not permit CogniPower to end run its order in this manner. Courts in this district also regularly exclude theories appearing in an expert report but not in the operative contentions. *E.g.*, *Intell. Ventures*, 2017 WL 658469, at *5–6 (applying *Pennypack* factors and excluding expert opinion); *CAO Lighting, Inc. v. Gen. Elec. Co.*, No. 20-681-GBW, 2023 WL 1930354, at *8 (D. Del. Jan. 30, 2023) ("Dr. Eden now opines in his expert report non-infringement positions with respect to the Nichia E21 CSP, none of which were outlined in Defendants' Final Noninfringement Contentions," thus justifying excluding them); *Parallel Networks Licensing, LLC v. Microsoft Corp.*, No. 13-2073-KAJ, 2017 WL 11557656, at *4 (D. Del. Apr. 10, 2017) ("Because I cannot locate the newly described infringement theory anywhere in the record prior to the pre-trial conference, I conclude that it is untimely and should be excluded."). Here, the *Pennypack* factors strongly favor exclusion, as Magistrate Judge Fallon already found in denying CogniPower's motion to amend. *See* D.I. 218 at 9. Providing contentions that address the Court's claim construction is critically important; waiting until expert discovery (after fact discovery) severely prejudices PI and Anker; attempting to cure the prejudice by extending trial would actual reward CogniPower since it wants its second-filed Texas action to reach judgment first; there is no other cure to the prejudice; and the Court has already found CogniPower's explanations inadequate.

###### 1.    CogniPower Cannot Rely on Its Untimely "Rectifier" Opinion.

Each claim of the Asserted Patents requires a "rectifier" that is poled or used to charge a capacitor during "forward pulses." *See, e.g.*, Ex. 2 ('031 Patent) at Claims 1, 10, 18, 64; Ex. 3 ('713 Patent) at Claims 18, 48.  In its operative infringement contentions from October 2020, CogniPower contended that these "rectifier" limitations were met by an internal regulator within PI's InnoSwitch3 chips.  For example, CogniPower cited the below figure from an InnoSwitch3 data sheet and asserted that the InnoSwitch3 chip "includes an internal regulator" and that this regulator "must rectify in order to regulate."  Ex. 18 (10/13/20 Contentions, Attachment 1) at 17.



InnoSwitch3-CP Datasheet, p. 2

Ex. 18 (10/13/20 Contentions, Attachment 1) at 23 (red emphasis added by CogniPower). Nowhere in its operative infringement contentions did CogniPower point to any specific circuit element within this internal regulator as satisfying the "rectifier" claim elements.  Indeed, the contentions did not cite the detailed circuit schematics for PI's InnoSwitch3 chips at all.

Almost four years after providing the contention that the regulator itself satisfies the "rectifier" claim elements, in the closing weeks of fact discovery, CogniPower attempted to supplement its contentions to focus on a specific transistor within the regulator.  CogniPower asserted for the first time that ████████████████████████████████████████████

████████    Ex. 19 (9/4/24 Supplemental Contentions) at 22.  CogniPower pasted in the following

16

excerpt of the InnoSwitch3 schematics, showing the newly accused transistor Q4:



Ex. 19 (9/4/24 Supplemental Contentions) at 22 (citing PIC00001849 (InnoSwitch3 Schematics) at 1902 (red arrow added to this motion for emphasis)).  Magistrate Judge Fallon rejected CogniPower's attempted supplement as untimely.  *See* D.I. 218 at 2–3; D.I. 234 at 4.

Now, CogniPower's expert Dr. Ricketts has offered the very contention that Magistrate Judge Fallon rejected as untimely.  For example, when discussing InnoSwitch3 chips, Dr. Ricketts asserts ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Ex. 13 (Ricketts Op. Rpt., Appx. 1) at 1-139, and he cites the very same schematic excerpt as CogniPower's rejected supplemental infringement contentions:



*Id.* at 1-140 (citing PIC00001849 (InnoSwitch3 Schematics) at 1902 (red circle added by Dr. Ricketts in his report)).  At deposition, Dr. Ricketts confirmed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████. Ex. 4 (Ricketts 1/31/25 Dep.) at 178:12–181:11.  Dr. Ricketts ████████████████████████████.  *See, e.g.*, Ex. 20 (Ricketts Reb. Rpt. § X) ¶¶ 51–54.

Because Dr. Ricketts is raising the same contention that Magistrate Judge Fallon rejected as untimely, his opinion ████████████████████████████████ ████████████████████████████████████ should be stricken. Courts typically exclude corresponding expert opinions when they deny leave to amend—or they may simply deny the motion to exclude as moot after denying leave to amend since the new theory has already been excluded. *E.g., Merck Sharp & Dohme Corp. v. Sandoz, Inc.*, No. 12-3289 PGS LHG, 2014 WL 997532, at *1 (D.N.J. Jan. 6, 2014) (denying leave to amend and granting corresponding motion to exclude), *aff'd*, No. 12-3289 PGS, 2014 WL 1494592 (D.N.J. Apr. 16, 2014); *Addison v. Emerson Elec. Co.*, No. 96-146-SLR, 1997 WL 129327, at *1 (D. Del. Feb. 24, 1997) (denying leave to amend and denying corresponding motion to exclude as moot).  In addition, the *Pennypack* factors favor exclusion, as Magistrate Judge Fallon already found in denying CogniPower's motion to amend, *see* D.I. 218 at 9, and as discussed in the introduction to Section B above.

The Court should therefore preclude Dr. Ricketts from testifying beyond the scope of CogniPower's contentions regarding the rectifier limitation.[13]

### 2.    CogniPower Cannot Rely on Its Untimely "Demand Pulse" Opinion, and This Also Justifies Summary Judgment.

CogniPower's expert, Dr. Ricketts, attempts to include in his report "demand pulse" theories found in the untimely contentions that the Court already rejected.  For example, to support his assertion that the InnoSwitch3-4 cycle requests (*i.e.*, alleged "demand pulses") ██████

---

[13] PI and Anker do not seek summary judgment on the basis of the rectifier limitation.



. Ex. 9 (Ricketts Op. Rpt. § VII) ¶¶ 224-43.  In support of his opinion, Dr. Ricketts relies on the same material describing the RTM control algorithm that CogniPower attempted to include for the first time in its untimely supplemental contentions.  For example, Dr. Ricketts cites

":



Ex. 9 (Ricketts Op. Rpt. § VII) ¶¶ 241–42 (citing Ex. 11 (InnoSwitch3 OTS, PIC00001739) at 1767).  This is the very same figure that CogniPower attempted to cite in its untimely supplemental infringement contentions to support the same assertion.  Ex. 19 ( 9/4/24 Supplemental Contentions) at 27–28

Nowhere do CogniPower's operative contentions cite this figure or assert a theory that

Indeed, CogniPower's operative contentions do not address the claim construction and do not contain *any* explanation of how the accused "demand pulses" satisfy the Court's claim

construction. For example, the following is CogniPower's entire explanation for how the "demand pulse" limitation is allegedly met:



> The demand pulse generator is configured to generate demand pulses applied via the galvanic isolation circuitry to the switch to adjust a frequency of the commutation of the input power to supply a desired amount of voltage or current to the load.
>
> As explained in the InnoSwitch3-CP datasheet, the secondary controller sends demand pulses over the galvanic isolation circuitry (FluxLink) to adjust the switching frequency to supply a desired amount of voltage or current to the load.

InnoSwitch3-CP Datasheet, pp. 1, 3, 6

Ex. 18 (10/13/20 Contentions, Attachment 1) at 23 (highlighting in original). In short, all CogniPower's operative contentions state is that the accused "demand pulses" "adjust the switching frequency." *Id.* CogniPower did not offer any explanation for how the accused "demand pulses" determine when to turn the switch on but do not determine when to turn it off. Thus, the Court should exclude Dr. Ricketts' new demand pulse opinions and grant summary judgment because CogniPower's operative contentions fail to establish infringement as a matter of law.

### 3. Because CogniPower Cannot Rely on Untimely New Contentions on Equivalents, the Court Should Also Find No Infringement by Equivalents as a Matter of Law.

CogniPower's operative DOE contentions are a single conclusory paragraph. Ex. 21 (10/13/20 Contentions) at 5. And Magistrate Judge Fallon denied CogniPower's motion for leave to supplement these contentions in September 2024 as untimely. D.I. 218 at 7.

CogniPower's conclusory DOE contentions are inadequate as matter of law to establish infringement. As this Court and the Federal Circuit have repeatedly held, "[c]onclusory statements

are not enough to sustain a claim of equivalence." *E.g.*, *MKS Instruments, Inc. v. Advanced Energy Indus., Inc.*, 325 F. Supp. 2d 471, 473 (D. Del. 2004) (granting summary judgment and citing *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1389 (Fed. Cir. 1992); *see also IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 498–99 (D. Del. 2022) (Judge Bryson sitting by designation) (same); *Medtronic Inc. v. Bos. Sci. Corp.*, 558 F. App'x 998, 1000 (Fed. Cir. 2014) ("The district court correctly noted that conclusory statements are insufficient to support a verdict finding infringement under the doctrine of equivalents[.]") (affirming Judge Robinson).  The Court should thus preclude Dr. Ricketts from testifying beyond the scope of CogniPower's contentions and grant summary judgment of no infringement under the doctrine of equivalents.

### C. CogniPower's Conclusory Claims of Willful Infringement and Indirect Infringement Are Also Ripe for Summary Judgment.

As with DOE, CogniPower's willful infringement contention was devoid of substance, Ex. 21 (10/13/20 Contentions) at 6, and Magistrate Judge Fallon denied CogniPower's motion for leave to supplement these contentions in September 2024 as untimely.  D.I. 218 at 7.  As such, CogniPower's effort to sustain a willfulness contention at this stage is inadequate as matter of law.  *Celotex Corp.*, 477 U.S. at 325.  Thus, the Court should also grant summary judgment of no willful infringement.

As with DOE and willfulness, CogniPower's sole contentions regarding Anker's purported indirect infringement consisted of a single conclusory paragraph that did not even recite the tests for inducement and contributory infringement.  Ex. 21 (10/13/2020 Contentions) at 4.  Nor does CogniPower allege any prior notice to Anker or any Anker pre-suit knowledge of the patent.  CogniPower's conclusory contentions on indirect infringement are inadequate as matter of law—to survive summary judgment, a party must present more than just "bare assertions, conclusory allegations or suspicions" to show the existence of a genuine issue.  *Celotex Corp.*, 477 U.S. at

325; *see also Network-1 Technologies, Inc. v. Ubiquiti Inc.*, C.A. No. 22-1321-MN, 2025 WL 92977 (D. Del. Jan. 14, 2025).  The Court should thus grant summary judgment of no indirect infringement.

      **D.**    **The Court Should Grant Summary Judgment That PI Did Not "Derive" the Prior Art OmniSwitch Invention from CogniPower**

If CogniPower's claims can be twisted to read on any of PI's InnoSwitch families of chips, CogniPower's alleged inventions are also invalid based on PI's prior art OmniSwitch invention (the original name for what became the first generation of InnoSwitch).  The evidence is overwhelming that OmniSwitch invalidates the asserted claims.  And so, CogniPower now tries to spin a story that ███████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████, allegedly disqualifying OmniSwitch as prior art under Section 102(g).  CogniPower's story is pure fiction, and it is legally flawed in any event.  Derivation of invention requires (1) prior conception of the claimed invention by another and (2) communication of that conception to the purported inventor.  *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576 (Fed. Cir. 1997).  The Court should now grant summary judgment as to CogniPower's "derivation" defense because CogniPower can show neither prior conception nor communication to the PI inventors as a matter of law.

      **1.**    **Judge Fallon's Order at D.I. 218 Prohibits CogniPower from Relying on an Earlier Conception Date, Is Law of The Case, and Thus Warrants Summary Judgment of No Derivation.**

CogniPower's derivation theory is predicated on a conception date which this Court has already rejected, and thus summary judgment of no derivation is warranted.  Judge Fallon's order at D.I. 218 precluded CogniPower from asserting a conception date prior to July 3, 2012.  That

ruling is law of the case.  CogniPower thus cannot prevail on its 'derivation' theory as a matter of

law because CogniPower's theory is predicated solely on an alleged conception before July 2012.

Throughout the litigation, CogniPower advanced a priority date of July 3, 2012.  In reliance

on CogniPower's timely assertion of a July 2012 priority date, PI and Anker built their invalidity

case around a PI chip (the original "OmniSwitch") that preceded CogniPower's alleged date.  After

five years of litigation, CogniPower attempted to antedate PI's reliance on OmniSwitch schematics

from May 2012, ███████████████████████  ███████  Judge Fallon

███████████████████████████

rejected CogniPower's late attempt to allege an earlier date, and her order at D.I. 218 expressly

prohibited CogniPower from modifying its conception date.  D.I. 218 at 6 ("Plaintiff has not shown

diligence regarding its proposal to modify the conception date . . . Plaintiffs proposed modification

to the conception date would result in undue prejudice to Anker . . . Considerations of prejudice

therefore weigh against granting Plaintiffs motion to supplement the infringement contentions to

assert a new conception date.").  CogniPower objected to that order but then withdrew its objection.

D.I. 234; D.I. 258.  Judge Fallon's order at D.I. 218 is thus law of the case.

CogniPower suggested in its notice of withdrawal that Judger Fallon's subsequent order at

D.I. 257 mooted CogniPower's objection because Judge Fallon subsequently denied Anker and

PI's follow up motion to preclude CogniPower from referring to or relying on the late produced

SPICE files *for any purpose*.  It is true that Judge Fallon did not preclude CogniPower from relying

on the SPICE files for *all* purposes, and she noted the SPICE files may be relevant to CogniPower's

derivation defense (which, as discussed above, requires a showing of more than conception).  D.I.

257 ¶¶ 17–20.  But Judge Fallon did not mention, let alone overrule, her prior order regarding

conception/priority.  Judge Fallon's order at D.I. 257 permitted Anker and PI to perform an

investigation of the SPICE files (rather than excluding them altogether) and to serve a supplemental invalidity report addressing those files, but nowhere does Judge Fallon's order permit CogniPower to modify its conception date or to rely on those files to for the purpose of proving prior conception.  D.I. 257 ¶ 21.  CogniPower can rely on the SPICE files for otherwise permissible purposes, and it can rely on them as part of its derivation theory specifically, but CogniPower is stuck with its timely advanced July 3, 2012, conception date.  CogniPower's counsel admitted as much at the hearing, acknowledging that for "[c]onception and reduction to practice, that ship [h]as sailed."  Ex. 22 (12/12/24 Hrg. Tr.) at 60.

Derivation requires, among other things, a showing of conception before the allegedly derived invention.  *See Gambro*, 110 F.3d at 1576.  ███████████████████████████ ███████████████████████████  Ex. 23 (11/1/24 CogniPower 2nd Suppl. Resp. to Interrogatory No. 6), 62; Ex. 24 (Ricketts Reb. Rpt. § 5), ¶¶ 139–45.  That allegation is expressly prohibited by D.I. 218, and that prohibition is unchanged by D.I. 257.  CogniPower thus cannot establish derivation as a matter of law.

### 2.    Summary Judgment Is Also Warranted Because CogniPower Does Not Show Prior Conception of All Limitations.

Even if CogniPower were permitted to assert an earlier conception date, its prior conception argument would still fail as a matter of law because CogniPower does not show prior conception of *all* claimed limitations, which is required to establish derivation.

"The conception requirement of derivation borrows from the conception standard for prior invention."  *Cumberland Pharm. Inc. v. Mylan Institutional LLC*, 846 F.3d 1213, 1218 (Fed. Cir. 2017).  "Conception is keyed to the *claimed* invention: 'A conception must encompass all limitations of the claimed invention.'"  *Id.* (emphasis in original, citing *Singh v. Brake*, 317 F.3d 1334, 1340 (Fed. Cir. 2003)); *see also Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d

1303, 1313 (Fed. Cir. 2011)).  Conception requires more than "a general goal or research plan"; it requires a "definite and permanent," "specific, settled idea," namely, the idea defined by the claim at issue.  *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994).

CogniPower and Dr. Ricketts principally rely on ████████████████████
████████████████████████████████████████████████████████
Ex. 27 (Ricketts Reb. Rpt. § 7) ¶ 12.  But an alleged inventor's self-serving testimony regarding alleged prior invention and derivation are of course, standing alone, insufficient to prove prior conception.  *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998); *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993).

In support of CogniPower's conception story, Dr. Ricketts ████████████████
████████████████████████████████████ Some is not enough.  There is no meaningful dispute that Dr. Ricketts does not address *all* limitations.  "A conception must encompass all limitations of the claimed invention," yet Dr. Ricketts fails to provide *any* explanation as to conception for nearly all asserted claims.  *Cumberland*, 846 F.3d at 1218. Moreover, his analysis is wholly conclusory and does not satisfy the rigors of *Daubert*.  *E.g., Medtronic,* 558 F. App'x at 1000 ("The district court correctly noted that conclusory statements are insufficient to support a verdict finding infringement under the doctrine of equivalents[.]") (affirming Judge Robinson).

Beginning with claim 1 of the '031 patent, Dr. Ricketts ████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████ without *any* explanation as to *how* that component meets the limitations, let alone how the document shows

that CogniPower conceived of that limitation.  Ex. 25 (Ricketts Reb. Rpt. Appx. E) at E-14 to E-15).  The remaining limitations for claim 1 fare no better, ███████████████████ ████████████████████████████████ without any explanation as to how the documents show that CogniPower conceived of any limitation.  *Id.* at E-15 to E-21.

Rather than address each limitation of the other asserted claims of the '031 patent, Dr. Ricketts ████████████████████████████████ ██████████████████████.  *Id.* at E-21 to E-44.  However, these claims recite unique limitations addressed nowhere in Dr. Ricketts' analysis of claim 1, including, for example, elements 2a, 2b, 5a, 5b, 6a, 8a, 8b, 10d, 10e, 11a, 12a, 18a, 18b–18e, 19a–19d, 20a, 21a, 22a, 23b–23c, 24a–24c, 25a, 26a, 27a, 28a, 29a, 30a, 32, 34a–34f, 36a, 37a, 38a, 39a, 40a, 41a, 42a, 45a, 47a–47f, 47g, 49a–b, 50a–c, 51, 52a, 53a, 54a, 55a, 56a, 57a, 60a, 62a–h.  Dr. Ricketts does not provide *any* evidence or analysis of alleged conception for these limitations, because the analysis Dr. Ricketts cross references (regarding different claims and different limitations) does not address the specific requirements of these limitations.

For the '713 patent, Dr. Ricketts again ████████████████████████████ ██████████████ Ex. 26 (Ricketts Reb. Rpt., Appx. F) at F-1 to F-40.  However, these claims again recite unique limitations addressed nowhere in Dr. Ricketts' analysis of claim 1 of the '031 patent, including, for example, elements 18e, 18f, 18g, 18h, 19, 20a, 21a, 22a, 23a, 24a, 25a, 26a, 26b, 27a, 28b–c, 29a, 30a, 31a, 32b–c, 33a, 34a, 36, 38d–e, 40a–b, 41, 42a, 43a, 44a, 45a, 46a, 48, 49a, 51a–b, 52ad, 52g, 53a–h, 53m–r, 54a, 55a, 56a, 57a, 58a, 59a, 61a. Dr. Ricketts provides no evidence or analysis of alleged conception for these limitations, because the analysis he cross-references does not address the specific requirements of these limitations.  *Id.*

Because CogniPower does not establish prior conception of all the limitations of any asserted claim, summary judgment of no derivation is warranted.

### 3. Summary Judgment Is Also Warranted Because CogniPower Cannot Show Communication of the Alleged Invention to PI as a Matter of Law.

Even if CogniPower were not precluded from presenting evidence of prior conception and that it indeed conceived of the claimed inventions when it now says it did, CogniPower's derivation argument would still fail as a matter of law because CogniPower cannot show ███████████ ████████████████████████████████████████████████████████████████ before the date of the May 2012 OmniSwitch schematics on which PI and Anker rely to show prior invention.

#### a. Disclosure of Generalized Concepts Is Insufficient to Satisfy the Communication Requirement.

CogniPower and its expert state only that aspects of CogniPower's alleged inventions were allegedly conveyed to PI ███████████████████. But communication of generalized concepts cannot meet the standard required for derivation.

To show derivation, the communication must "enable one of ordinary skill in the art to make the patented invention." *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1344 (Fed. Cir. 2003). It is insufficient to convey only "so much of the claimed invention as would have made it obvious to one of ordinary skill in the art." *Gambro*, 110 F.3d at 1578 ("If the [evidence of communication] does not disclose [the claimed idea], it cannot serve as the basis for a communication of that idea."). The communication must be of the "entire conception." *Id.* at 1577. Put differently, derivation requires communication of the "specific idea" of each claim, not just transmittal of a vague, generic description. *Cumberland*, 846 F.3d at 1218–19 (stating that a "communication of an idea different from the claimed invention even where that idea would make the claimed idea obvious" or a "general research suggestion" is insufficient for derivation).

27

A  party advancing a derivation defense must therefore show that the communication included the *specific limitations* at issue in the asserted patent claims.  *See Baxalta Inc. v. Bayer Healthcare LLC*, 513 F.Supp.3d 426, 444–45 (D. Del. 2021) (granting summary judgment of no derivation where non-movant pointed only to communications of concepts of the invention and not specific claim limitations); *Robert Bosch*, *LLC, v. Pylon Mfg. Corp.,*700 F.Supp.2d 625 at 643 (D. Del. 2010) (rejecting a derivation claim where, among other things, the defendant "fail[ed] to compare the alleged disclosure to the limitations of the [patent]").



CogniPower recounts ██████████████████████████████████████████████ ████████████████ *See* Ex. 23 (11/1/24 CogniPower 2nd. Suppl. Resp. to Interrogatory No. 6), 54, 63–64. ██████████████████████████████. Ex. 27 (Ricketts Reb. Rpt. § 7) ¶¶ 273– 309.  Most of CogniPower's evidence of alleged disclosure is just the self-serving testimony of its inventor that ██████████████████████████, devoid of any corroborating documents. *See, e.g.*, *id.* ¶ 282 ██████████████████████████████████████████

████████████████████████████████████████  ██████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

*E.g.*, Ex.  23 (11/1/24 CogniPower 2nd Suppl. Resp. to Interrogatory No. 6), 54 ██████████ 63 ██████████ Ex. 27 (Ricketts Reb. Rpt. § 7) ¶ 274 ██████████ ¶¶ 280–81 ██████████ They do not even mention the patents or the claims, let alone compare the claimed limitations to the alleged disclosures.

Instead, Dr. Ricketts ███████████████████████████████████████████

███████████████████████████████████. Ex. 27 (Ricketts Reb. Rpt. § 7) ¶¶ 282–83.

Mr. Lawson's uncorroborated testimony ████████████████████████████████████

████████████ *id.* ¶ 282, is insufficient to establish communication of those documents as a matter

of law (even if CogniPower or its expert had properly analyzed them). *See Ethicon*, 135 F.3d at

1461; *Price*, 988 F.2d at 1194. ███████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████ *Compare* Ex. 27 (Ricketts Reb. Rpt. § 7) ¶ 283 *with* Ex. 25 (Ricketts Reb. Rpt. Appx.

E); *see also* Ex. 28 (Wei Reply Rpt.) ¶ 147 n.18 █████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████ ███████ ███████ ███████ ███████ ███████ ███████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Ex. 4 (Ricketts

1/31/25 Dep.) at 233:22–25 (emphasis added).

Even accepting CogniPower's recounting ███████████████████████████

████, disclosure of general concepts and features of supposed and unspecified CogniPower

inventions is not a communication of "complete conception" of any asserted claim of either

asserted patent. *Gambro*, 110 F.3d at 1578 (requiring communication of the complete, enabling

conception to the inventor). For this reason, too, summary judgment of no derivation is warranted.

**b.  Disclosure of Information ███████ Does Not Establish Communication to PI.**

CogniPower's communication theory is also flawed as a matter of law because the alleged communications of CogniPower's supposed inventive concepts ██ ███████ ███ ████████████████████████████ ██████████ ████████—were not communications to PI's OmniSwitch inventors.  CogniPower alleges these were "indirect" communications to PI, but that theory finds no support in the evidence, and CogniPower's baseless conjecture cannot stave off summary judgment.

Derivation requires communication of the prior conception *to the inventor*.  *See Gabro*, 110 F.3d 1576.  The mere possibility that the inventor *may* have received information about another's prior conception is not sufficient evidence of communication of that conception as a matter of law.  *See Hedgewick v. Akers*, 497 F.2d 905, 908 (CCPA 1974) (access to files alone is insufficient to establish derivation); *Onyx Therap., Inc. v. Cipla Ltd.*, No. 16-988-LPS, 2020 WL 2214443, at *32 (D. Del. May 4, 2020) (mere possibility of receipt of a research plan is insufficient evidence of communication).  The law of derivation is not unique in this regard—"[t]he possibility of the existence of an event does not tend to prove its probability." *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 75 (3d Cir. 1996).  Thus, "speculation and conjecture may not defeat a motion for summary judgment."  *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 228 (3d Cir. 2009) (citing *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 332–33 (3d Cir. 2005)).

CogniPower's theory ██████████████████████████████████ ████████ is, however, based solely on speculation, and is thus insufficient to survive summary

judgment. *Novartis Corp. v. Ben Venue Lab'ys, Inc.*, 271 F.3d 1043, 1051 (Fed. Cir. 2001) [14] ("In the context of summary judgment motions, the Third Circuit has demanded that the factual predicate of an expert's opinion must find some support in the record, and has emphasized that mere 'theoretical speculations' lacking a basis in the record will not create a genuine issue of fact." (quoting *Penn. Dental Ass'n. v. Med. Serv. Ass'n.,* 745 F.2d 248, 262 (3d Cir. 1984)); *see also Scott v. Calpin*, 527 F. App'x 123, 126–27 (3d Cir. 2013) (same).



CogniPower allegedly ███████████████████████████
█████████████████████████████████████████. Ex. 27 (Ricketts Reb. Report
§ 7) ¶¶ 278–309.   But CogniPower puts forth no evidence ████████████████
█████████████████████████████████.[15]   The totality of CogniPower's "evidence" ████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████ *Id.* ¶¶ 310–322.   So, CogniPower argues ████████████████████
███████████████████ ████████████████████████████████████
███████████████████████████████████████████ *Id.*

---

[14] "We look to regional circuit law for the applicable standard, since the factual foundation necessary to support an expert's opinion is not a matter peculiar to patent law." *Novartis*, 271 F.3d at 1051 (citation omitted).

[15] The OmniSwitch inventors and others at PI who were asked categorically denied any such communications, ██████████████████████████████ ██████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████

¶ 323.  There is not a shred of evidence in the record ████████████████████████ ███████████████████████, let alone any enabling disclosure of the claimed inventions specifically before May 2012.

Because a derivation challenge naturally requires communication of the alleged prior conception *to the inventors*, and because CogniPower can offer only that it is possible that ███████████████████████████████████████, Anker and PI are entitled to summary judgment of no derivation for this reason too.

c.      **CogniPower's Actual Disclosures to PI Are Insufficient as a Matter of Law Because They Were All *After* the Alleged OmniSwitch Conception Date of May 2012.**

CogniPower does not allege it communicated anything to PI until well *after* the May 2012 OmniSwitch schematics were completed.  Setting aside that those communications did not include details of anything inventive, let alone the specific claim limitations at issue in the Asserted Patents, they are irrelevant to derivation as a matter of law because they have no bearing on whether the *asserted* OmniSwitch prior art was conceived by CogniPower.

Anker and PI assert that documents ████████████████████████████ ██████████████████████ show that PI conceived of the asserted claims before CogniPower and thus invalidate the claims.  *See, e.g.,* Ex. 34 (Wei Op. Rpt.) ¶ 128 ████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████; *see also id.* at Ex 1A and 1B.  CogniPower and Dr. Ricketts ████████ ███████████████████████████████████████████ *See* Ex. 27 (Ricketts Reb. Rpt. § 7) ¶ 1.  Regardless, ████████████████████████████████.  CogniPower must

prove the earlier invention PI alleges was derived from CogniPower, rather than proving some other, unasserted invention, was derived from CogniPower.

CogniPower cannot show derivation because the *only* communications between CogniPower and PI did not occur until many months after May 2012.  Indeed, CogniPower and Dr. Ricketts contend that ███████████████████████████████████████████████ ███████████████████████████████████.  *See* Ex. 27 (Ricketts Reb. Report § 7) ¶ 273; *see also* Ex. 23 (11/1/24 CogniPower 2nd Suppl. Resp. to Interrogatory No. 6), 54.  Those communications do not create a material dispute of fact whether PI derived ████████ ██████████████ from CogniPower and so for this, additional, independent, reason the Court should grant summary judgment as to CogniPower's derivation theory.

### E. The Court Should Exclude Dr. Ricketts' Testimony on Improper Factual and/or Legal Issues That are Not Within His Technical Expertise.

CogniPower's expert Dr. Ricketts is a professor of electrical and computer engineering at North Carolina State University, and he provides technical opinions in this case regarding alleged infringement and validity of the Asserted Patents, as well as some underlying technical opinions that CogniPower appears to assert are related to damages.  But in the kitchen sink of more than 2,500 pages of expert reports that he offers in this case, Dr. Ricketts strays well beyond his technical expertise and purports to opine on factual or legal issues that are unmistakably not technical in nature, such as whether Anker has acted with the intent to encourage infringement and whether Power Integrations' prior invention of OmniSwitch qualifies as prior art under 35 U.S.C. § 102(g).  The Court should exclude this testimony under *Daubert*, including:

*Knowledge/intent to infringe*:  Dr. Ricketts opines that he believes ████████████████ ████████████████████████.  But  Dr.  Ricketts'  opinions—████████████████████████ ████████████████████, Ex. 35 (Ricketts Op. Rpt. § XII)—are impermissible conclusions about

Anker's intent that should be excluded in their entirety.  Dr. Ricketts "has no knowledge about [Anker's] subjective state of mind, nor can an expert offer an opinion about a party's subjective state of mind." *Wirtgen Am., Inc. v. Caterpillar, Inc.*, No. 17-770-JDW-MPT, 2024 WL 166833, at *2 (D. Del. Jan 16, 2024).  This is because "[e]xpert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case[,] . . . and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury." *Allscripts Healthcare, LLC v. Andor Health, LLC*, No. 21-704-MAK, 2022 WL 3021560, at *21 (D. Del. Jul. 29, 2022) (quoting *Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 497 (D. Del. 2019) (further citation omitted)).  Here, Dr. Ricketts provides only a selective recounting of the facts and the conclusory opinion that Anker allegedly encourages infringement.  "Such 'unhelpful restatement[s] of the facts as [the expert] sees them' are inadmissible." *Sonos, Inc. v. D & M Holdings Inc.*, 297 F. Supp. 3d 501, 521 (D. Del. 2017) (quoting *RSI Corp v. Int'l Bus. Machines Corp.*, No. 08-03414, 2013 WL 1087468, at *4 (N.D. Cal. Mar. 13, 2013) (alteration in original)).  Accordingly, Dr. Ricketts' opinions as to intent should be excluded.

    *Whether OmniSwitch is prior art under 35 U.S.C. § 102(g)*:  Dr. Ricketts asserts that

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████. Ex. 27 (Ricketts Reb. Rpt. § 7) ¶¶ 234–267.  Yet for both of these opinions, Dr. Ricketts provides nothing more than legal conclusions and recitations of facts. "[E]xpert testimony regarding legal conclusions is not permissible." *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, No. 11-515-LPS-CJB, 2015 WL 12815314, at *2 (D. Del. Nov. 20, 2015) (citing

*Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006).  Nor are "unhelpful restatement[s] of the facts as [Dr. Ricketts] sees them[.]" *Sonos*, 297 F. Supp. 3d at 521 (quotation omitted).  Here, nothing about Dr. Ricketts' technical background qualifies him to opine on the status of OmniSwitch as § 102(g) prior art, and even if he was so qualified, he does not provide anything more than a selective recitation of the facts as he sees them.  CogniPower should not be allowed to use Dr. Ricketts "as a mere mouthpiece to state the ultimate conclusion it wishes the jury to come to."  *Adasa Inc. v. Avery Dennison Corp.*, No. 6:17-CV-01685-MK, 2023 WL 3775332, at *6 (D. Or. June 2, 2023).

        *Recitation of* ███████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████—*e.g.*, who said what, and when they said it.  Ex. 36 (Ricketts Op. Rpt. § V) §§ B.2, B.3.  These "opinions" amount to nothing more than an "'unhelpful restatement' of the facts as [Dr. Ricketts] sees them[.]'" *Sonos*, 297 F. Supp. 3d at 521 (quoting *RSI*, 2013 WL 1087468, at *4 (alteration modified)).  These factual recitations are not proper expert testimony and should be excluded.  To be admissible, the expert testimony "must be capable of 'help[ing] the jury to understand the evidence or to determine a fact in issue.' " *Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*, No. 13-324, 2017 WL 3528606, at *3 (D. Del. Aug. 16, 2017) (quoting Fed. R. Evid. 702).  Here, Dr. Ricketts provides the bare assertion that ██████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████. Ex. 36 (Ricketts Op. Rpt. § V) ¶ 66██████

████████████████████████████████████████████████████████████

████████████").[16]  It is entirely improper for Dr. Ricketts to repeat or "incorporate" the hearsay notes of another witness, particularly when those "notes" appear to have been created by counsel.  *Fundamental Innovation Sys. Int'l LLC v. Anker Innovations Ltd.*, No. 21-339-RGA, 2025 WL 459916, at *12 (D. Del. Feb. 11, 2025) ("Experts cannot be used as conduits for hearsay or non-expert testimony with the expert's 'gloss.'").  CogniPower should not be allowed to use Dr. Ricketts "as a mere mouthpiece to state the ultimate conclusion it wishes the jury to come to" on a factual matter.  *Adasa*, 2023 WL 3775332, at *6.

   *Recitation of purported "benefits" attributable to infringement*: Dr. Ricketts purports to provide opinions on ███████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████ Ex. 36 (Ricketts Op. Rpt § V) §§ A, B.1; Ex. 37 (Ricketts Op. Rpt. § VI) §§ A, B, D–I.  § VI) §§ A, B, D–I.  Nowhere does Dr. Ricketts provide any technical analysis of *why* or *how* these benefits would result from practicing the asserted claims.  The mere recitation  of ████████████████████████████████████████████████████████████
████████████ are not a proper subject of expert testimony—CogniPower cannot use Dr. Ricketts as a "mere mouthpiece" to parrot the benefits that *CogniPower* ascribe to the technology, devoid of any technical analysis of his own explaining why these benefits would result from what is recited in the asserted claims.  *Adasa*, 2023 WL 3775332, at *6.  *See also Fundamental Innovation Sys. Int'l LLC v. Anker Innovations Ltd.*, No. 21-339-RGA, 2025 WL 459916, at *12 (D. Del. Feb. 11,

---

[16] ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

2025) ("Experts cannot be used as conduits for hearsay or non-expert testimony with the expert's 'gloss.'").  When asked at his deposition ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████  Ex. 4 (Ricketts 1/31/25 Dep.) at 274:6–277:6.  In short, these opinions are nothing more than an "'unhelpful restatement' of the facts as [Dr. Ricketts] sees them'" and should be excluded.  *Sonos*, 297 F. Supp. 3d at 521 (quoting *RSI*, 2013 WL 1087468, at *4 (alteration modified)).  Because Dr. Ricketts' discussion of these purported "benefits" merely restates information from CogniPower and Power Integrations with technical analysis linking any "benefits" to the asserted claims, his opinions should be excluded.

*Patent Office practice and patent law explanations*:  Dr. Ricketts also provides opinions on ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████.  Ex. 36 (Ricketts Op. Rpt. § V). § C.  In particular, Dr. Ricketts asserts these ██████████████████████████████

██████████████████████  *Id.*  But Dr. Ricketts is not qualified to opine on Patent Office procedures or what it means for one patent to cite another: he is not an attorney or patent agent and admitted ██████████████████████████████████████████  Ex. 4 (Ricketts 1/31/25 Dep.) at 23:24–26:16.  And even if Dr. Ricketts was qualified ████████████████████████

████████████████████  (which he is not), the citations he discusses could not show anything about ████████████████████████████████████████████████████.  Instead, Dr. Ricketts discusses ████████████████████████████████████████████████████

████████████████████.  Accordingly, Dr. Ricketts' opinions regarding Patent Office practice and the meaning of patent citations should be excluded.

**F.    The Court Should Exclude the Opinions of Dr. Reed-Arthurs and Mr. Dell Related to Damages.**

CogniPower's damages theory is set forth in the opinions of two separate experts: Dr. Reed-Arthurs, a survey expert ████████████████████████████████████

████████████████████████████████████████████████████████

████████████ and Mr. Stephen Dell, a damages expert ██████████████████████

████████████████████████████████████████

In support of their damages opinions, both Dr. Reed-Arthurs and Mr. Dell rely on

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████ Ex. 37 (Ricketts Op. Rpt.  § VI) ¶ 226. ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████ *Id.*

Collectively, Dr. Reed-Arthurs and Mr. Dell attempt to quantify ████████████

████████████████████████████   ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ Ex. 38 (Reed-Arthurs Op. Rpt.) ¶ 7. ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████. Ex. 38 (Reed-Arthurs Op. Rpt.) ¶¶ 124, 152; Ex. 39 (Reed-Arthurs 1/27/2025 Errata).

For step two, Mr. Dell relied on ███████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████ Ex. 40 (Dell Op. Rpt.) ¶¶ 273, 277.

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████. *Id.*

As described below, both Dr. Reed-Arthurs' survey and Mr. Dell's subsequent use of those survey results suffer from methodological errors that render the opinions unreliable and inadmissible. Each expert is discussed, in turn, below.

        **1.      Dr. Reed-Arthurs' Survey Should be Excluded Because It Is Unreliable and Because It Does Not Account for Unpatented Technology.**

As Dr. Reed-Arthurs herself has explained, for a survey "to help estimate a reasonable royalty for the patent at issue . . . it is important that the survey correctly characterize the product feature(s) that are enabled by using the patented technology." Ex. 51 at 594. Here, ████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

### a.    Dr. Reed-Arthurs' Definition of "Standby Power Saver" is Ambiguous and Does Not Fit the Facts of the Case

For Dr. Reed-Arthurs' survey, ███████████████████████████████████████

███████



Ex. 38 (Reed-Arthurs Op. Rpt.) at Attachment C (p. 127).

As seen in the image above, ██████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████



*Id.* at p. 94.  This definition ███████████████████████████ has at least three problems, each

of which renders Dr. Reed-Arthurs' opinion independently inadmissible under *Daubert*.

    First, the definition is ambiguous.  Dr. Reed-Arthurs ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████     ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████  It is not possible to know how respondents interpreted

this question and, in all likelihood, different respondents interpreted it in different ways.  It is, thus,

impossible to know what, exactly, respondents were placing a value on, requiring exclusion of the

survey.[17]  *See, e.g.*, *Competitive Edge, Inc. v. Staples, Inc.*, 763 F. Supp. 2d 997, 1007-08 (N.D.

─────────────────

[17] There is, however, corroborating evidence suggesting that ████████████████████████
████████████████████████████████████████████████████████████
███████████████████ █ ████████████████████████████████████
████████████████████████████████████████████████████████████

Ill. 2010) (excluding survey where questions were "replete with potential ambiguities" because the "potential confusion undermines the reliability of the survey"); *Native American Arts, Inc. v. Bud K World Wide, Inc.*, 2012 WL 1833877, *8 (M.D. Ga. 2012) ("When unclear questions are included in a survey, they may threaten the validity of the survey . . . .").

Second, Dr. Reed-Arthurs' definition ███████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████. Ex. 41 (Reed-Arthurs 1/27/25 Dep.) at 134:15–135:7. Accordingly, ███████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████ The definition is, therefore, meaningless, as are the respondents' choices based on it and Dr. Reed-Arthurs' opinions flowing from those choices.

Although Dr. Reed-Arthurs ███████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████ Ex. 41 (Reed-Arthurs 1/27/25 Dep.) at 136:4–13. Thus, Dr. eed-Arthurs appears to be asserting that, ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████. But Dr. Reed-Arthurs'

████████████████████████████████████████. Ex. 42 (McDuff Report) ¶¶ 34, 147-155. ███ —thus corroborates that respondents did not understand what they were being asked to value.

████████████████████████████████████████████████████

████████ cannot be the basis for a reliable opinion.

Even if it were reasonable ████████████████████████████

████████████████████████████████████████, it would

only lead to the third independent problem with her definition.  Specifically, a ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████ In fact, the survey presented the reverse of the actual case

facts, ██████████████████████████████████████████████

██████████████████████████. This is illustrated in the chart below, ████████████

████████████████████████████████████████████████████

███████████████████████████ As can be seen, ████████████

████████████████████████████████████████████████████

██████████████████████████████

| Charger | | Average Standby Consumption |
|---|---|---|
| ████ | ████ | |
| ████ | ████ | |
| ████████████ ████ | ████ | |
| ████ | ████ | |
| ████ | ████ | |
| ████ | ████ | |
| ████ | ████ | |
| ████ | ████ | |
| ████ | ████ | |
| ███████████ ████ | ████ | |
| ████ | ████ | |

| Charger | Average Standby Consumption |
|---|---|
| ████████████ | ███ |
| ██ | ███ |
| ██████████ | █████ |
| ███████████ | ███ |
| █████████ | ███ |
| ██████ | ███ |

*See* Ex. 37 (Ricketts Op. Rpt. § VI) ¶¶ 177, 179, 181, 183, 185, 187, 189, 191, 193, 195, 221; Ex. 43 (Ricketts Op. Rpt. § VIII) ¶¶ 4, 7.[18]  Thus, if, as Dr. Reed-Arthurs asserts, ████████

███████████████████████████████████████████████████████

███████  then Dr. Reed-Arthurs' survey would not "fit."  Under the facts of the case,

███████████████████████████████████████████████████████

████████████  Thus, a survey purporting to show ███████████

███████████████████████████████████████████████████████

███████████  is not "relevant for the purposes of the case" and would not "assist

the trier of fact."  *Schneider*, 320 F.3d at 396.

### b. Dr. Reed-Arthurs' Survey Did Not Account for Other Technologies Contributing to Low Standby Power

The above chart demonstrates another fact that fundamentally undermines the Reed-

Arthurs report: ███████████████████████████████████

████  Indeed, Dr. Ricketts' own data shows that ████████████████

███████████████████████████████████████████████████████

███████████████████  Additionally, witnesses for Anker

---

[18] Where Dr. Ricketts' report discloses multiple data points for a charger, the chart above uses the average standby power consumption, rounded to the nearest milliwatt.

and Power Integrations identified specific other technologies that contribute to low standby power consumption in the accused chips.

For example, as explained by Dr. Wei, ███████████████ ██████████████████████████ ██████████████████████████ Ex. 44 (Wei Reb. Rpt.) ¶¶ 36–39. ██████████████ *Id.* ¶ 40. ██████████████ *Id.* Furthermore, Dr. Wei explains that ██████████ ██████████████.″ *Id.* ¶ 42.

Despite Dr. Ricketts' own data showing that ██████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ Ex. 38 (Reed-Arthurs Op. Rpt.) at Exhibit 1. At her deposition, she further confirmed ██████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ Ex. 41 (Reed-Arthurs 1/27/25 Dep.) at 139:8–140:4. Therefore, Dr. Reed-Arthurs' opinion necessarily and expressly attributes non-patented benefits to the patent, an inadmissible opinion contrary to the law. *VirnetX, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014)

("No matter what the form of the royalty, a patentee must take care to seek only those damages attributable to the infringing features.").

Dr. Reed-Arthurs also asserted that, ███████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████ Ex. 45 (Reed-Arthurs Reply Rpt.) ¶ 18.  As described infra in Part V(F)(2)(a), however, Mr. Dell expressly disclaimed ███████████████████████████

███████████████████████████████████████████████.

### 2.    Mr. Dell's Report Should Be Excluded for Lack of Technical Apportionment and Unreliable Economic Apportionment.

Mr. Dell's expert report ███████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████  ███████████████████████████  ██ ████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████ Ex. 40 (Dell Op. Rpt.) ¶ 270–71.

According to Mr. Dell, ███████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████ *Id.* ¶ 272.  Mr. Dell goes on to opine that ███████████████████████

---

[19] ███████████████████████████████████████████████████████████████
███████████████████████  ███████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████ *Id.* ¶¶ 273–74.  In

reliance on those metrics, Mr. Dell concluded that ████████████████████

██████████████████████████████████████████  As described

below, Mr. Dell's opinion should be excluded both because it fails to apportion for other technical

contributions to reduced standby power and because the purported economic apportionment based

on the Anker financial metrics is unreliable.

       **a.**    **Mr. Dell Did Not Apportion for Other Technical Contributions
to Reduced Standby Power**

As described above, Dr. Reed-Arthurs clearly stated that ███████████████████

███████████████████████████████████████████████████████

████  Ex. 41 (Reed-Arthurs 1/27/25 Dep.) at 139:8–140:4.  Thus, any technical apportionment

███████████████████████████████████████████████████████

███████████████████████  would have to come from Mr. Dell.  *See* Ex. 45 (Reed-Arthurs

Reply Rpt.) ¶ 18 ██████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████  Ex. 46 (Dell 2/4/25 Dep.) at 93:11–94:3.  Thus, Dr. Reed-Arthurs and

Mr. Dell  both ████████████████████████████████████████████

████████████████████  Yet, as already described above, evidence from CogniPower's own expert

and expert evidence from Dr. Wei confirm that ████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████. Accordingly, both reports should be excluded

for failure to apportion. *VirnetX*, 767 F.3d at 1326.

**b.    Mr. Dell's Profit Split is Unreliable**

Mr. Dell's reliance on ███████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████ ███████████████████████████████████████████

█████████████ (*see* Ex. 40 (Dell Op. Rpt.) at Attachments 5.2, 8), ██████████████

█████████████████████████████ (*see* Exs. 47–48), ██████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ *See* Ex.

42 (McDuff Report) at ¶¶ 104-105. Mr. Dell's report does not ████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████. Thus, the

profit splits based on operating profit and ROIC do not fit the case facts and should be excluded.

Second, Mr. Dell offers no evidence that Anker, CogniPower, or, indeed, any other

company has ever relied on ROIC as the basis for negotiating a profit split in a patent license or in

any other situation. Without any explanation as to why hypothetical negotiating parties would use

this metric to decide how to split the incremental benefit at the hypothetical negotiation, there is

no reliable economic basis to opine that they would.

In fact, reliance on ROIC as a basis for a profit split was recently excluded in another case

involving Anker, for precisely these reasons: In *Fundamental v. Anker*, the court excluded the

plaintiff's expert's opinion because the expert did "not point to any literature indicating ROIC is

an appropriate way to divide cost savings in an actual negotiation or in a hypothetical negotiation." *Fundamental Innovation Systems International LLC v. Anker Innovations Ltd. and Fantasia Trading LLC d/b/a AnkerDirect,* C.A. No. 21-339-RGA (D. Del., February 11, 2025), at 32. Without such evidence, the Court explained that it struggled to understand why "two companies, in a negotiation where each would want to maximize profits, would use this metric, only as applied to the potential licensee, to arrive at a reasonable royalty." *Id.* at 32. Mr. Dell's use of ROIC here suffers from the same flaw and should be excluded on the same basis.

## VI.    CONCLUSION

For the foregoing reasons, the Court should grant summary judgment of noninfringement and summary judgment of no derivation, and it should exclude the expert testimony identified herein, including that of CogniPower's technical and damages experts.


Dated:  February 26, 2025          FISH & RICHARDSON P.C.


By:  */s/ Warren K. Mabey, Jr.*
      Douglas E. McCann (No. 3852)
      Warren K. Mabey, Jr. (No. 5775)
      222 Delaware Avenue, 17th Floor
      Wilmington, DE  19801
      Telephone: (302) 652-5070
      Email:  dmccann@fr.com; mabey@fr.com

      Frank E. Scherkenbach
      Daniel H. Wade
      One Marina Park Drive
      Boston, MA  02210-1878
      Telephone: (617) 542-5070
      Email: scherkenbach@fr.com; wade@fr.com

      Brian P. Boyd
      1180 Peachtree Street NE, 21st Floor,
      Atlanta, GA 30309
      Telephone: (404) 892-5005
      Email: bboyd@fr.com

Michael R. Headley
500 Arguello Street, Suite 400
Redwood City, CA 94063
Telephone: (650) 839-5070
Email: headley@fr.com

John W. Thornburgh
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: (858) 678-5070
Email: thornburgh@fr.com

**ATTORNEYS FOR DEFENDANTS
FANTASIA TRADING, LLC D/B/A ANKERDIRECT
AND ANKER INNOVATIONS LIMITED; AND
INTERVENOR POWER INTEGRATIONS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 26, 2025, the foregoing document was served on the

attorneys of record, at the following e-mail addresses:

Brian E. Farnan
Michael J. Farnan
FARNAN LLP
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Andrea Y. Choung
Jennifer Hayes
NIXON PEABODY LLP
DLNP-CognipowervAnker@nixonpeabody.com
jenhayes@nixonpeabody.com
achoung@nixonpeabody.com

Jason G. Sheasby
Michael Harbour
Jonathan M. Lindsay
IRELL & MANELLA LLP
JSheasby@Irell.com
MHarbour@Irell.com
JLindsay@Irell.com

      */s/ Warren K. Mabey, Jr.*
      Warren K. Mabey, Jr

51

**ECFX was unable to download one or more documents most likely due to being SEALED. These documents will need to be downloaded by a user with authority to access them.**

**Subject: Activity in Case 1:19-cv-02293-JLH-SRF CogniPower LLC v. Fantasia Trading LLC et al Opening Brief in Support**

[This email originated outside of F&R.]

<span style="color:red">This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.</span>

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**District of Delaware**

**Notice of Electronic Filing**

The following transaction was entered by Mabey, Warren on 2/26/2025 at 4:44 PM EST and filed on 2/26/2025

| | |
|---|---|
| **Case Name:** | CogniPower LLC v. Fantasia Trading LLC et al |
| **Case Number:** | 1:19-cv-02293-JLH-SRF |
| **Filer:** | Anker Innovations Limited |
| | Fantasia Trading LLC |
| | Power Integrations, Inc. |
| **Document Number:** | 285 |

**Docket Text:**

**[SEALED] OPENING BRIEF in Support re [284] MOTION for Summary Judgment *and Motion to Exclude Certain Expert Testimony* filed by Anker Innovations Limited, Fantasia Trading LLC, Power Integrations, Inc..Answering Brief/Response due date per Local Rules is 3/12/2025. (Mabey, Warren)**

**1:19-cv-02293-JLH-SRF Notice has been electronically mailed to:**

Andrew Y. Choung    achoung@nixonpeabody.com, ahenriquez@nixonpeabody.com

Angelo J. Christopher    achristopher@nixonpeabody.com, chi.managing.clerk@nixonpeabody.com

Benjamin Manzin-Monnin    bmonnin@irell.com, CogniPowerDE-Staff@irell.com

Bradley Paul Lehman    blehman@gsbblaw.com

Brian E. Farnan    bfarnan@farnanlaw.com, tfarnan@farnanlaw.com

Brian J. Kennedy    bkennedy@nixonpeabody.com, sf.managing.clerk@nixonpeabody.com

Daniel H. Wade    wade@fr.com

Douglas Edward McCann    dmccann@fr.com, kilby@fr.com, Levan@fr.com, litigationdocketing@fr.com, rivituso@fr.com, SFL@fr.com

Gary R. Sorden    gsorden@coleschotz.com, amacias@coleschotz.com

James R. Perkins    jperkins@coleschotz.com, amacias@coleschotz.com

Jason G. Sheasby    jsheasby@irell.com, eholland@irell.com

Jennifer Hayes    jenhayes@nixonpeabody.com, dgirgis@nixonpeabody.com

Jonathan M. Lindsay    jlindsay@irell.com

Joseph B. Warden    warden@fr.com, kilby@fr.com, lenkiewicz@fr.com, Levan@fr.com, rivituso@fr.com

Karl R. Fink    krfink@nixonpeabody.com

Michael Harbour    MHarbour@Irell.com

Michael J. Farnan    mfarnan@farnanlaw.com, tfarnan@farnanlaw.com

Michael R. Headley    Headley@fr.com, sherwood@fr.com

Nicole Sims    nsims@nixonpeabody.com, sf.managing.clerk@nixonpeabody.com

Niky R. Bagley    nbagley@coleschotz.com, ahickey@coleschotz.com

Stephen M. Payne    spayne@irell.com, kbrozzo@irell.com

Warren K. Mabey , Jr    mabey@fr.com, kilby@fr.com, Levan@fr.com, litigationdocketin@fr.com, rivituso@fr.com, SFL@fr.com

**1:19-cv-02293-JLH-SRF Filer will deliver document by other means to:**

The following document(s) are associated with this transaction:

**Document description:**

**Original filename:** n/a

Main Document