# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COGNIPOWER LLC

     Plaintiff,

  v.

FANTASIA TRADING, LLC D/B/A
ANKERDIRECT and
ANKER INNOVATIONS LIMITED;

     Defendants,

POWER INTEGRATIONS, INC.

     Intervenor.

Civ. No. 19-2293-JLH-SRF



REDACTED

---

## ANKER AND PI'S RESPONSE TO COGNIPOWER'S OPENING BRIEF IN SUPPORT OF ITS COMBINED SUMMARY JUDGMENT AND DAUBERT MOTION

Douglas E. McCann (No. 3852)
Warren K. Mabey, Jr. (No. 5775)
**FISH & RICHARDSON P.C.**
222 Delaware Avenue, 17th Floor
Wilmington, DE  19801
Telephone: (302) 652-5070

**ATTORNEYS FOR DEFENDANTS
FANTASIA TRADING, LLC D/B/A
ANKERDIRECT
AND ANKER INNOVATIONS LIMITED;
AND INTERVENOR POWER
INTEGRATIONS, INC.**

Dated: March 19, 2025

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................1

II.   SUMMARY OF THE ARGUMENTS ..................................................1

III.  ARGUMENT ......................................................................................2

    A.    Anker Is Not Estopped from Asserting Prior Art as CogniPower Suggests. ..........................................................................................2

    B.    OmniSwitch Is Prior Art, and Disputes of Fact Preclude Summary Judgment. .........................................................................4

        1.    There Is Considerable Record Evidence From Which a Reasonable Jury Could Find Prior Conception and Diligent Reduction to Practice of the Invalidating OmniSwitch Invention. ...................................................5

        2.    CogniPower's Complaints Merely Pick at the Edges of PI's Conception Evidence and Do Not Show Entitlement to Judgment of No Invalidity. .......................9

        3.    A Jury Could Find That PI Diligently Reduced OmniSwitch to Practice; CogniPower's Complaints Do Not Show Otherwise. ..............................................15

    C.    OmniSwitch Was Not Abandoned, Suppressed, or Concealed, and Disputes of Fact Preclude Summary Judgment. ...............................17

        1.    PI Developed and Improved Its OmniSwitch Design and Ultimately Released It to the Public in a Commercial Chip. .....................................................18

        2.    The Timing of PI's Patent Filings and PI's Confidential Designation of Internal Design Files Do Not Show Active Concealment. ............................................21

            (a)    The Timing of PI's Patent Filings Raises Fact Questions............................................................21

            (b)    That PI Maintains Confidentiality Over Its Internal Design Files Is Irrelevant....................22

        3.    PI Made the OmniSwitch Invention Public Through the Commercial Release of InnoSwitch..............................23

i

**<u>TABLE OF CONTENTS (cont'd)</u>**

                                                                            <u>**Page**</u>

(a) InnoSwitch Was The Commercial Release Of OmniSwitch. ...............................................................................24

(b) InnoSwitch Disclosed the Invention to the Public. ...............................................................................25

D. The Court Should Not Enter Summary Judgment on "Infringement" of a Subset of Claim Elements. ........................................28

E. The Court Should Deny Summary Judgment on PI's Counterclaims. ...............................................................................30

F. The Court Should Deny Summary Judgment on Affirmative Defenses. ...............................................................................31

G. The Court Should Not Exclude the Opinions of Technical Expert Dr. Wei. ...............................................................................33

   1. The Court Should Deny CogniPower's Request to Exclude all of Dr. Wei's Opinions About OmniSwitch. ..............33

   2. Dr. Wei's Opinions Are Not Contrary to the Court's Construction of the "Rectifier" Limitations. ...................................36

   3. Dr. Wei Does Not Provide "Inconsistent" Positions for Non-Infringement and Invalidity. .............................................37

H. The Court Should Not Exclude the Opinions of Forensics Expert Mr. Cowen. ...............................................................................39

I. The Court Should Not Exclude the Opinions of Damages Expert Dr. McDuff. ...............................................................................42

   1. Dr. McDuff's Quantification of Power Savings Is a Proper Way to Value the Asserted Patents. ...................................42

   2. Dr. McDuff Does Not Offer Improper "State of Mind" Opinions. ...............................................................................44

   3. Dr. McDuff Properly Relied on CogniPower's Own License Offers. ...............................................................................45

   4. Dr. McDuff's Reliance on CogniPower's Internal Licensing Communications Is Proper. ...........................................48

## <u>TABLE OF CONTENTS (cont'd)</u>

**<u>Page</u>**

5.    Dr. McDuff Properly Evaluates Industry Licensing Practices and Considerations Under *Georgia-Pacific* Factor 12. ....................................................................................49

6.    Dr. McDuff Properly Considers Power Integrations' Patented Contributions as Relevant to Apportionment.................50

IV.    CONCLUSION........................................................................................50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Point of Care, Inc. v. Epocal, Inc.*,
868 F. Supp. 2d 1310 (N.D. Ala. 2012)....................................................33

*Adenta GmbH v. OrthoArm, Inc.*,
501 F.3d 1364 (Fed. Cir. 2007)...............................................................15

*Apotex USA v. Merck & Co.*,
254 F.3d 1031 (Fed. Cir. 2001)...............................................................25

*ATEN Int'l Co. v. Uniclass Tech. Co.*,
932 F.3d 1364 (Fed. Cir. 2019)...............................................................5

*Benedict v Gen. Motors Corp.*,
184 F. Supp. 2d 1197 (N.D. Fla. 2002)............................................20, 22, 23

*bioMérieux, S.A. v. Hologic*,
No. 18-21, 2020 WL 759546 (D. Del. Feb. 7, 2020)........................... *passim*

*California Inst. of Tech. v. Broadcom Ltd.*,
25 F.4th 976 (Fed. Cir. 2022) ...............................................................3, 4

*Checkpoint Sys., Inc. v. U.S. Intern. Trade Com'n*,
54 F.3d 756 (Fed. Cir. 1995)...........................................................19, 20, 21

*Digital Biometrics, Inc. v. Identix, Inc.*,
149 F.3d 1335 (Fed. Cir. 1998)...............................................................28

*Dow Chem. Co. v. Astro-Valcour, Inc.*,
267 F.3d 1334 (Fed. Cir. 2001)..........................................................20, 21

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008)...............................................................30

*Finjan Inc. v. Blue Coat Sys., Inc.*,
No. 13-3999, 2015 WL 3630000 (N.D. Cal. June 2, 2015)..........................29

*Fleming v. Escort Inc.*,
774 F.3d 1371 (Fed. Cir. 2014)...............................................................16

*Flex-Rest, LLC v. Steelcase, Inc.*,
455 F.3d 1351 (Fed. Cir. 2006)....................................................... *passim*

iv

**TABLE OF AUTHORITIES (cont'd)**

**Page(s)**

*Fox Grp., Inc. v. Cree, Inc.*,
   700 F.3d 1300 (Fed. Cir. 2012)..................................................*passim*

*Friction Div. Prod., Inc. v. E.I. DuPont de Nemours & Co.*,
   658 F. Supp. 998 (D. Del. 1987), *aff'd sub nom.*, 883 F.2d 1027 (Fed.
   Cir. 1989) ....................................................................23, 25

*Fujikawa v. Wattanasin*,
   93 F.3d 1559 (Fed. Cir. 1996)......................................................18, 22

*Gamevice, Inc. v. Nintendo Co.*,
   18-1942, 2023 WL 7194871 (N.D. Cal. Oct. 31, 2023) ...............................39

*Gen. Foods Corp. v. Studiengesellschaft Kohle mbH*,
   972 F.2d 1272 (Fed. Cir. 1992)......................................................28

*Hallmark Cards Inc. v. Monitor Clipper Partners*,
   08-0840, 2012 WL 3047308 (W.D. Mo. July 25, 2012) .............................42

*inMusic Brands, Inc. v. Roland Corp.*,
   No. 17-10, 2022 WL 2128611 (D.R.I. June 14, 2022), *adopted,* 2022
   WL 16736222 (D.R.I. Nov. 7, 2022)..............................................3

*Innovation Ventures, LLC v. NVE, Inc.*,
   08-11867, 2016 WL 266396 (E.D. Mich. Jan. 21, 2016) ...........................32

*Innovative Memory Sys., Inc. v. Micron Tech., Inc.*,
   No. 14-1480, 2022 WL 4548644 (D. Del. Sept. 29, 2022) (Hall, J.)..................4

*Intuitive Surgical, Inc. v. Ethicon LLC*,
   25 F.4th 1035 (Fed. Cir. 2022) .....................................................4

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
   607 F. Supp. 3d 464 (D. Del. 2022).............................................4, 26

*John Bean Techs. Corp. v. Morris & Assoc., Inc.*,
   887 F.3d 1322 (Fed. Cir. 2018)......................................................32

*In re Jolley*,
   308 F.3d 1317 (Fed. Cir. 2002).....................................................5

*Laitram Corp. v. Rexnord, Inc.*,
   939 F.2d 1533 (Fed. Cir. 1991).....................................................28

v

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.,*
  628 F.3d 1359 (Fed. Cir. 2010)........................................................................16

*Lockwood v. Am. Airlines, Inc.,*
  107 F.3d 1565 (Fed. Cir. 1997)........................................................................26

*Lutzker v. Plet,*
  843 F.2d 1364 (Fed. Cir. 1988).......................................................................20

*Moleculon Rsch. Corp. v. CBS, Inc.,*
  793 F.2d 1261 (Fed. Cir. 1986), *abrogated on other grounds by BASF*
  *Corp. v. SNF Holding Co.,* 955 F.3d 958 (Fed. Cir. 2020)...................................30, 31

*Monsanto Co. v. Mycogen Plant Sci., Inc.,*
  261 F.3d 1356 (2001)....................................................................................5

*Ocean Innovations, Inc. v. Archer,*
  145 Fed. Appx. 366 (Fed. Cir. 2005)................................................................39

*Oxford Gene Tech. Ltd. v. Mergen Ltd.,*
  345 F. Supp. 2d 431 (D. Del. 2004)................................................................33

*Palmer v. Dudzik,*
  481 F.2d 1377 (C.C.P.A. 1973) .......................................................................23

*Pom Wonderful LLC v. Tropicana Prods., Inc.,*
  09-566, 2010 WL 11519185 (C.D. Cal. Nov. 1, 2010) .......................................32

*Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.,*
  324 U.S. 806 (1945)......................................................................................32

*RMDI, LLC v. Remington Arms Co.,*
  838 F. Supp. 2d 1248 (D. Utah 2012)..............................................................21

*Robocast, Inc v. Microsoft Corp,*
  10-1055, 2014 WL 129800 (D. Del. Jan. 13. 2014) ..........................................42

*Sabasta v. Buckaroos, Inc.,*
  507 F.Supp.2d 986 (S.D. Iowa 2007) ..............................................................25

*Sandt Tech., Ltd. v. Resco Metal and Plastics Corp.,*
  264 F.3d 1344 (Fed. Cir. 2001)......................................................................34

**TABLE OF AUTHORITIES (cont'd)**

**Page(s)**

*Schiff v. Barrett*,
No. 10-1051, 2011 WL 6963096 (N.D. Cal. Sept. 8, 2011) ........................................28

*Scott v. Koyama*,
281 F.3d 1243 (Fed. Cir. 2002) .......................................................................................11

*Singular Computing LLC v. Google LLC*,
2023 WL 8810187 (D. Mass. Dec. 20, 2023) .................................................................45

*Solvay S.A. v. Honeywell Int'l, Inc.*,
742 F.3d 998 (Fed. Cir. 2014) .......................................................................................11

*Stross v. Hearst Commc'ns, Inc.*,
No. 18-01039, 2020 WL 5250580 (W.D. Tex. Sept. 3, 2020) ....................................28

*Sunoco Partners Marketing & Terminals L.P. v. Powder Springs*
*Logistics, LLC*,
No. 17-1390, 2020 WL 9438750 (D. Del. Feb. 20, 2020) ...................................25, 26

*Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics,*
*LLC*,
No. 17-1390, 2020 WL 410633 (D. Del. Jan. 16, 2020) .............................................29

*Teva Pharm. Indus. Ltd. v. AstraZeneca Pharms. LP*,
748 F. Supp. 2d 453 (E.D. Pa. 2010) ...........................................................................21

*Therasense, Inc. v. Becton, Dickinson*,
593 F.3d 1325 (Fed. Cir. 2010) .....................................................................................33

*Thomson, S.A. v. Quixote Corp.*,
166 F.3d 1172 (Fed. Cir. 1999) .....................................................................................33

*TQP Dev., LLC v. 1-800-Flowers.com, Inc.*,
120 F. Supp. 3d 600 (E.D. Tex. 2015) .........................................................................27

*TQP Dev., LLC v. Intuit Inc.*,
2014 WL 2809841 (E.D. Tex. June 20, 2014) .............................................................27

*TransWeb, LLC v. 3M Innovative Properties Co.*,
812 F.3d 1295 (Fed. Cir. 2016) ...............................................................................15, 16

*UGI Sunbury LLC v A Permanent Easement for 1.7575 Acres*,
949 F.3d 825 (3rd Cir. 2020) ........................................................................................41

### TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Uniloc 2017 LLC v. Facebook Inc.*,
   989 F.3d 1018 (Fed. Cir. 2021) ..................................................................................4

*Wasica Fin. GmbH v. Schrader Int'l, Inc.*,
   432 F. Supp. 3d 448 (D. Del. 2020) ...........................................................................4

*Welker Bearing Co. v. PHD, Inc.*,
   550 F.3d 1090 (Fed. Cir. 2008) ................................................................................30

*Whitserve, LLC v. Computer Packages, Inc.*,
   694 F.3d 10 (Fed. Cir. 2012) ....................................................................................46

*Z4 Techs., Inc. v. Microsoft Corp.*,
   507 F.3d 1340 (Fed. Cir. 2007) ................................................................................34

*Zevo Golf Co., Inc. v. Karsten Mfg. Corp.*,
   47 Fed. Appx. 933 (Fed. Cir. 2002) ........................................................................33

**Statutes**

35 U.S.C. § 102 ..................................................................................................................33

35 U.S.C. § 102(g) .................................................................................................... *passim*

Fed. R. Civ. P. 56 ..............................................................................................................28

Fed. R. Civ P. 56(g) ..........................................................................................................28

## I.    INTRODUCTION

CogniPower's many motions raise disputes of material fact, misstate the law, and should be denied.  If the Court does not grant Anker and PI's motion for summary judgment of noninfringement, a jury will need to resolve the parties' disputes.

## II.    SUMMARY OF THE ARGUMENTS

1.    There is no IPR estoppel because the dependent claims Anker contends are invalid were not challenged by Anker or PI in any instituted IPR.

2.    OmniSwitch is prior art, and disputes of fact preclude summary judgment to the contrary.  Prior invention, including conception and reduction to practice, are highly fact-specific inquiries.  Extensive evidence, in the form of inventor notes, schematics, and semiconductor chip tapeouts, other contemporaneous documents, as well as inventor testimony, all establish that ███ ████████████████████████████████████████████████████████████ ███████████████ CogniPower ignores most of that evidence and merely invites the Court to accept CogniPower's story based on select facts and inferences favorable to CogniPower.

3.    Omni was also not abandoned, suppressed, or concealed.  The evidence shows that PI took reasonable steps to and did commercialize the Omni invention in the form of the InnoSwitch chip.  The public release of InnoSwitch, and its supporting public data sheets, made the invention available to the public.  PI *also* disclosed its invention in multiple patent filings.  CogniPower's argument about Omni being suppressed is refuted by overwhelming evidence.  At minimum, multiple disputes of material fact preclude summary judgment on this issue as well.

4.    Summary judgment on "infringement" of a subset of elements is improper because (a) the claim must be considered "as a whole" for infringement, (b) the claim elements are intertwined, and (c) PI and Anker are entitled to put CogniPower to its burden of proof.

5.    The Court should deny summary judgment on PI's counterclaims because

CogniPower improperly repeats a motion the Court already denied. The Court already found that CogniPower asserted its patents "can be mapped to any power converter containing any [PI] InnoSwitch controller" and that PI's "chips lie at the heart of" CogniPower's claims. Thus, PI properly sought a declaratory judgment that its customers' power converters using PI chips do not infringe, and the Court should reject CogniPower's thinly veiled attempt at reconsideration.

6.     The Court should deny summary judgment on PI and Anker's affirmative defenses because record evidence establishes prosecution history estoppel, equitable estoppel, and unclean hands. Indeed, the Court has already found "CogniPower's repeated statements that the demand pulse control only the on time of the primary side switch and not the off time are clear and unambiguous and they therefore constitute a binding disclaimer." In addition, ███████████

██████████████████████████████████████████████████

█████████████████████████████████████

7.     The Court should not exclude the opinions of PI and Anker's technical expert, Dr. Wei, because CogniPower is wrong about the alleged improprieties of Dr. Wei's arguments.

8.     The Court should not exclude the opinions of PI and Anker's forensics expert, Mr. Cowen, because he does not provide any opinions about intent, which is CogniPower's chief complaint, and instead provides testimony on matters reasonably related to his expertise given the

██████████████████████████████████████

9.     The Court should not exclude the opinions of PI and Anker's damages expert, Dr. McDuff, because his analysis is based on sound footing and does not violate any legal principles.

## III.    ARGUMENT

### A.    Anker Is Not Estopped from Asserting Prior Art as CogniPower Suggests.

CogniPower misapplies the law of IPR estoppel, and the Court should deny CogniPower's motion to exclude the prior art combination of U.S. Pat. 6,301,135 ("Mammano"), U.S. Pat.

4,694,384, and U.S. Pat. 4,887,199.  The scope of IPR estoppel is limited to grounds "asserted against *the claims included in the petition*."  *California Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 991 (Fed. Cir. 2022) (emphasis added).  The Mammano et al. combination is asserted against claims that were *not* included in petitions for which the PTAB issued a final written decision, and thus IPR estoppel does not apply.  *E.g.*, *inMusic Brands, Inc. v. Roland Corp.*, No. 17-10, 2022 WL 2128611 (D.R.I. June 14, 2022), *adopted,* 2022 WL 16736222 (D.R.I. Nov. 7, 2022) ("The absence of a final written decision is fatal to the assertion of IPR estoppel.").

The '031 and '713 patents were subject to a range of IPR petitions, but the PTAB did not institute them all—instead, the PTAB declined to institute five of the petitions (Ex. 53–55, 57–58), and instituted only one each challenging the '031 and '713 patents.  Ex. 59 ('031), Ex. 60 ('713).  In these two instituted petitions, Anker challenged only a subset of the claims:

| '031 patent | 1, 2, 8, 10, 18, 25, 27, 30–33, 37–38, 40, 43–46, 49, 52–55, 58–61 |
|---|---|
| '713 patent | 18, 19–23, 25, 30–31, 34–36, 41–43, 45, 48–51 |

*See also* D.I. 303-2 Ex. 16  ('031); D.I. 303-2 Ex. 17 ('713).

In this case, Anker asserts the Mammano et al. combination against *other* claims:

| '031 patent | 5, 6, 11, 12, 19-24, 26, 28, 29, 34–36, 39, 41, 42, 47, 48, 50, 51, 56, 57 |
|---|---|
| '713 patent | 24, 26–29, 32, 33, 38, 40, 44, 46, 47, 52–61 |

Ex. 61 (invalidity contentions); Ex. 62 (Wei Inv. Rpt. Ex. 2A),[1] Ex. 63 (Wei Inv. Rpt. Ex. 2B). Because the claims Anker seeks to challenge here were not in the instituted petitions, Anker is not estopped from challenging these claims.  The Supreme Court and Federal Circuit have explained that "it is the petition . . . that defines the scope of the IPR," and thus the scope of IPR estoppel. *Cal. Tech.*, 25 F.4th at 990 (citing *SAS Inst., Inc. v. Iancu*, 584 U.S. 366-67 (2018)).  This is because

---

[1] Claims 30–33, 37–38, 40, 43–46, 49, 52–55, and 58–61 of the '031 patent were inadvertently included in Anker's Mammano combination in this case.  Anker withdraws the Mammano-based challenge to claims 30–33, 37–38, 40, 43–46, 49, 52–55, and 58–61 of the '031 patent.

"Section 315 explicitly limits the estoppel to the *claims* previously challenged and for those proceedings that resulted in a final written decision[.]" *Uniloc 2017 LLC v. Facebook Inc.*, 989 F.3d 1018, 1030 (Fed. Cir. 2021) (emphasis added) ("Because claim 7 was not at issue in the Apple IPR, the plain language of the statute supports the conclusion that Facebook is not estopped from challenging this claim in this proceeding, regardless of its dependency on claim 1.").

CogniPower's cases illustrate this distinction, as none involves a challenge to claims not included in an instituted petition. *Cal. Tech.*, 25 F.4th at 991 (estoppel applies to grounds that "could have been asserted against the *claims* asserted in the petition" (emphasis added)); *Intuitive Surgical, Inc. v. Ethicon LLC*, 25 F.4th 1035, 1041 (Fed. Cir. 2022) ("It is undisputed that all three IPRs [that reached FWD] challenged the same claim of the '969 patent."); *Innovative Memory Sys., Inc. v. Micron Tech., Inc.*, No. 14-1480, 2022 WL 4548644, at *3 (D. Del. Sept. 29, 2022) (Hall, J.) (same); *IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 487 (D. Del. 2022) (same); *Wasica Fin. GmbH v. Schrader Int'l, Inc.*, 432 F. Supp. 3d 448, 452 (D. Del. 2020) (same). Accordingly, CogniPower's motion based on IPR estoppel should be denied.

### B. OmniSwitch Is Prior Art, and Disputes of Fact Preclude Summary Judgment.

The Court should deny CogniPower's motion about the prior invention of PI's OmniSwitch not being prior art under § 102(g) because, at minimum, there are genuine disputes of material fact as to the issues of conception and reduction to practice. Multiple PI inventors testified about their work on OmniSwitch beginning in July 2011, which they thoroughly documented in the form of lab notebooks, whiteboard drawings, specifications, and other documents from before the July 3, 2012 priority date of the Asserted Patents—including detailed circuit schematics for multiple "tapeouts" of the OmniSwitch IC being developed. PI/Anker's expert, Dr. Wei, explained in detail how this evidence reflects an OmniSwitch design that satisfies each and every claim of the Asserted Patents. CogniPower asks the Court to prematurely resolve the question without

4

considering the great majority of the evidence from which a reasonable jury could find prior conception and reduction to practice, while improperly parsing documents in isolation and taking portions of witnesses' testimony out of context. And even accepting CogniPower's account (that PI supposedly cannot show conception until May 2012, with a reduction to practice supposedly no earlier than July 6, 2012), OmniSwitch is still invalidating prior art under § 102(g).

1. **There Is Considerable Record Evidence From Which a Reasonable Jury Could Find Prior Conception and Diligent Reduction to Practice of the Invalidating OmniSwitch Invention.**

CogniPower ignores overwhelming evidence of conception and reduction to practice of the complete invention by May 30, 2012. A reasonable jury could credit PI's evidence rather than CogniPower's selective story.

Whether a reference or system qualifies as prior art is a question of law based on underlying factual determinations. *ATEN Int'l Co. v. Uniclass Tech. Co.*, 932 F.3d 1364, 1367 (Fed. Cir. 2019). Under § 102(g), Anker can establish that the OmniSwitch invention was prior art by proving "either that it reduced its invention to practice first or that it conceived of the invention first and was diligent in reducing it to practice." *Fox Grp., Inc. v. Cree, Inc.*, 700 F.3d 1300, 1304 (Fed. Cir. 2012). These are fact-intensive inquiries. *In re Jolley*, 308 F.3d 1317, 1323 (Fed. Cir. 2002); *Monsanto Co. v. Mycogen Plant Sci., Inc.*, 261 F.3d 1356, 1369 (2001). The exemplary facts below ably show the PI inventors' prior conception and reduction to practice of OmniSwitch before the July 3, 2012, priority date of CogniPower's Asserted Patents.

Unlike CogniPower, PI has a long history of selling commercially successful power supply controller ICs. In June 2011, PI set out to develop a new controller IC for an isolated, flyback switched-mode power supply. Ex. 64 (Saint-Pierre) 353:2–9; Ex. 65 (Djenguerian) 19:18–20:8; Ex. 66 (Liu) 25:17–26:23; Ex. 67 (Balakrishnan) 335:12–336:21. At the time, PI already offered a number of other controller ICs for isolated, flyback switched-mode power supply topologies,

including "TinySwitch" controller ICs, which used a control methodology that PI called "On/Off" control.  *See* Ex. 68 (Wei Inv. Rpt.) VI.A.3 (summarizing evidence of TinySwitch operation).

The new controller IC design began in June 2011 with an idea for a new way to communicate feedback from the secondary side of the power supply to the primary side.  Ex. 64 (Saint-Pierre) 353:2–9; Ex. 65 (Djenguerian) 19:18–20:8; Ex. 66 (Liu) 25:17–26:23; Ex. 67 (Balakrishnan) 335:12–336:21; Ex. 69 at 1227 (June 2011 notebook sketch) and 1232 (June 2011 whiteboard drawings).  ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████  Ex. 67 (Balakrishnan) 270:8–271:20.  PI would eventually name this new technology "FluxLink."  *Id.*

PI immediately set out to develop a new IC, called "OmniSwitch," that would use this new feedback mechanism to integrate two controllers in a single IC package.  ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████  Ex. 65 (Djenguerian) 52:13–59:14; Ex. 70 at 1084, 1087 ████████████████████████████████████████████

████████████████████████)  ; Ex. 72 (██████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████  Ex. 71 (Kung) 111:4-23; Ex. 69 at 1235 (██████████████████████████).  PI

then began working on schematics for the OmniSwitch IC and "taping out" a series of test die to

test, verify, and refine the design.[2]  Ex. 73 (Saint-Pierre) 174:1–9, 185:20–186:14, 190:12–191:12;

Ex. 72 (Log of Omni Tapeouts); Ex. 67 (Balakrishnan ) 291:12-19.

Ex. 72 (Log of

Omni Tapeouts); Ex. 65 (Djenguerian) 65:12–24; Ex. 66 (Liu) 140:15–141:4.

---

[2] "Tapeout" is an industry term referring to the stage of an IC design process where the design is
frozen and sent off for manufacturing.  *See* Ex. 66 (Liu) 141:1–4.  PI created multiple "tapeouts"
of the OmniSwitch IC as part of the design process.



. Ex. 72 (Log of Omni Tapeouts); Ex. 68 (Wei Inv. Rpt.) ¶ 126 (

); Ex. 80 (Wei Reply Rpt.) ¶ 102 (summarizing status reports).

After this, PI continued to work on testing and implementing the fully realized OmniSwitch into a commercial product.

Ex. 68 (Wei Inv. Rpt.) ¶ 127; Ex. 80 (Wei Reply Rpt.) ¶ 95; Ex. 72 (Log of Omni Tapeouts). Along the way, PI changed the name of the IC from OmniSwitch to InnoSwitch. Ex. 73 (Saint-Pierre) 16:6–14; Ex. 78 (Balakrishnan) 14:14–20; Ex. 71 (Kung) 28:1–12; Ex. 65 (Djenguerian) 13:8–14:3; Ex. 66 (Liu) 150:14–24, 152:2–23, 159:20–160:5. And, the renamed InnoSwitch was released to the public in November of 2014. Ex. 73 (Saint-Pierre) 150:24–151:4.

The OmniSwitch invention is thoroughly documented with contemporaneous notes, schematics, test files, and many other internal PI documents. Six witnesses have provided sworn testimony further supporting PI's prior invention, including both current and former PI employees with knowledge of PI's OmniSwitch development. Anker/PI's expert, Dr. Wei, reviewed the evidence and provided a report with detailed claim charts explaining how the OmniSwitch invention includes each claim element— ███████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████ —using the same claim interpretation CogniPower applies for its infringement contentions against the subsequently released InnoSwitch chip. *See* Ex. 68 (Wei Inv. Rpt.) ¶¶ 124–28, Ex. 81 (Wei Inv. Rpt. Ex. 1A, re '031 patent); Ex. 82 (Wei Inv. Rpt. Ex. 1B, re '713 patent).

In response to opinions by CogniPower's expert Dr. Ricketts ███████████████

████████████████████████████████████████████, Dr. Wei provided additional charts, further showing that PI was in full possession of the claimed subject matter well before May 2012. *See* Ex. 80 (Wei Reply Rpt.) ¶ 66; Ex. 83 (Wei Reply Rpt. Ex. 1C, re '031 patent; Ex. 84 (Wei Reply Rpt. Ex. 1D, re '713 patent). Those charts provide yet additional details of the PI inventors' prior invention before May 2012.

A reasonable jury could accept this evidence that OmniSwitch was conceived and reduced to practice before CogniPower's priority date, and is thus prior art under § 102(g).

> ### 2.    CogniPower's Complaints Merely Pick at the Edges of PI's Conception Evidence and Do Not Show Entitlement to Judgment of No Invalidity.

CogniPower says that PI's conception evidence "is missing elements of the claims." CogniPower is far from clear *which* specific elements it contends are missing but, regardless, CogniPower makes no cogent argument that the evidence as to *any* element is deficient as a matter

of law.  Instead, CogniPower attacks documents in isolation and mischaracterizes the testimony of PI's witnesses and Anker/PI's expert, Dr. Wei.  None of CogniPower's arguments is sufficient to warrant summary judgment on this fact-intensive inquiry.

For example, CogniPower first contends ████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████." D.I. 298 at 7–8.

CogniPower omits that when the PI inventors conceived of FluxLink in June 2011, they immediately set out to implement this new feedback mechanism in a *power supply controller IC*.
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
███████████████████████████  CogniPower's argument that the PI inventors conceived of "just the interface," and not a controller IC that incorporates this interface, ignores virtually all the evidence of what PI was actually developing as part of the OmniSwitch project.

Indeed, CogniPower fails to note that ███████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████



CogniPower next offers that "this alleged conception was outside of the U.S." and implies the Court should simply discard PI's conception evidence for that reason. CogniPower is wrong. The Federal Circuit has expressly said "§ 102(g)(2) allows conception to occur in another country" so long as the invention is disclosed to others, or reduced to practice, in the United States. *Solvay S.A. v. Honeywell Int'l, Inc.*, 742 F.3d 998, 1001 (Fed. Cir. 2014). Indeed, even "the inventor of an invention of foreign origin may rely on the date that the invention was disclosed in the United States, as a conception date for priority purposes." *Scott v. Koyama*, 281 F.3d 1243, 1247 (Fed. Cir. 2002). CogniPower omits contemporaneous evidence reflecting that ██████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████.

    CogniPower next falsely asserts that ███████████████████████████

██████████████████████████████  ██████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████



*See, e.g., id.* at 4 (citing Ex. 90 (PIC00000561)); Anker/PI SOF 40.  As shown above, ██████

████████████████████████████████████████████

████████████████████████████████████████████[3]

For other limitations reflected in the internal operation of the Omni IC itself, Dr. Wei traces

---

[3] ████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████

through the tapeout *schematics* and shows how PI's design of the detailed internal circuitry of the Omni IC satisfies the limitations. *See, e.g.*, Ex. 81 (Wei Inv. Rpt. Ex. 1A) at 15–33 and 36–42.

At deposition, Dr. Wei consistently, and repeatedly, testified ████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████ In his reports, he showed how that conception satisfies each and every claim element, including in his annotated diagram of the PI inventors' design for the power supply circuit shown above. And of course, Dr. Wei also relied on ████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████. Exs. 81–82 (Wei Inv. Rpt. Exs. 1A and 1B). CogniPower pretends as though all of this evidence does not even exist.

The rest of CogniPower's attack on Dr. Wei's supposed admissions proceeds in the same way. CogniPower suggests some admission about a lack of conception evidence showing "a demand pulse generator" or "a secondary-side controller." But in the testimony CogniPower cites, Dr. Wei merely explains that ████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ CogniPower ignores (a) the

13

*other* PI documents showing conception of the demand pulse generator / secondary-side controller, and (b) Dr. Wei's detailed claim charts discussing evidence that every claim element was indeed conceived. *See* Exs. 81–82 (Wei Inv. Rpt. Exs. 1A and 1B); Ex. 92 (Wei) 29:18–24.

As to the supposed admissions of PI's witnesses, CogniPower seeks to win summary judgment based on semantics. ███████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████. Genuine disputes of fact thus exist regarding conception.

Even if CogniPower were to prevail on each of its hodgepodge of attacks on PI's conception evidence, ███████████████████████████████████████████

████████████████████████, summary judgment would still be improper. CogniPower's patents have a priority date, at earliest, of *July 3, 2012* – after May 30, 2012. *See* D.I. 1-1 at Ex. A ('031 patent) at (60) and Ex. B ('713 patent) at (60). CogniPower says it "claims an earlier priority date, but the Court need not reach that issue on this motion." D.I. 298 at 30 n.3. But in fact, CogniPower is estopped from asserting an earlier date. *See* D.I. 285 at 22–24 (PI/Anker MSJ explaining the Court precluded CogniPower from asserting conception before July 3, 2012).

Regardless, for this motion, CogniPower's only alleged priority date is July 3, 2012, and summary judgment is thus inappropriate for this independent reason. *See Fox*, 700 F.3d at 1304 (§ 102(g) can be established by prior conception and subsequent reduction to practice).

### 3. A Jury Could Find That PI Diligently Reduced OmniSwitch to Practice; CogniPower's Complaints Do Not Show Otherwise.

CogniPower's challenge mischaracterizes the evidence and misstates the law of corroboration. CogniPower's argument is also unavailing because so long as PI *conceived* of the invention before CogniPower's priority date (and as discussed above, the evidence supports that finding), OmniSwitch still invalidates the asserted claims under § 102(g) so long as PI was diligent in reducing the invention to practice (and CogniPower does not argue PI was not diligent).

CogniPower raises several criticisms of each piece of evidence on which Dr. Wei relies to show ███████████████████████, attempting to discredit them one by one. But the Federal Circuit has "repeatedly rejected" this type of piecemeal attack on corroboration evidence. *See, e.g., TransWeb, LLC v. 3M Innovative Properties Co.*, 812 F.3d 1295, 1301–03 (Fed. Cir. 2016); *Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364, 1371–73 (Fed. Cir. 2007). Rather, courts employ "a rule of reason analysis . . . to determine the sufficiency of corroboration, under which 'all pertinent evidence is examined in order to determine whether the inventor's story is credible.'" *TransWeb*, 812 F.3d at 1301. "[T]here are no hard and fast rules as to what constitutes sufficient corroboration, and each case must be decided on its own facts." *Id.* at 1302. Ultimately, corroboration is a question of fact to be decided based on a review of all the evidence. *Adenta*, 501 F.3d at 1371–73. Contrary to CogniPower's suggestion, the "analysis 'does not require that every detail of the testimony be independently and conclusively supported' by the corroborating evidence." *Id.* at 1301–02. And the Federal Circuit has repeatedly stated that the rule of reason analysis is incompatible with an element-wise attack on corroboration of oral testimony as

CogniPower advances.  *See id.* at 1303; *Fleming v. Escort Inc.*, 774 F.3d 1371, 1377 (Fed. Cir. 2014); *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1374 (Fed. Cir. 2010).

PI's witness testimony is heavily corroborated by other evidence.  Contrary to CogniPower's allegation, there is indeed a "ubiquitous paper trail" showing both conception and diligent reduction to practice.  *See supra* III.B.1.  Dr. Wei considered that evidence in detail.  *See*, *e.g.*, Exs. 81–82 (Wei Inv. Rpt. Exs. 1A, 1B).  He *also* considered the testimony of PI's witnesses.  Ex. 68 (Wei Inv. Rpt.) § VII.A.  The evidence of record and relied on by Dr. Wei, when viewed "as a whole" as required, at least creates a genuine dispute of material fact for the jury whether ███ ████████████████████████████████████████, whether that reduction to practice satisfies each claim limitation, and whether the testimony of PI inventors' is sufficiently corroborated.

The jury can also conclude that the May 2012 tapeout would work for its intended purpose. ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████  *See* Ex. 79 (status report); Ex.

80 (Wei Reply Rpt.) ¶ 95 (collecting additional evidence).



. Regardless, even if PI did not fully reduce Omni

to practice until July 6, 2012, CogniPower's argument would still fail because § 102(g) requires

only that the prior invention was *conceived* before the asserted patent's priority date, and then

diligently reduced to practice. CogniPower does not challenge PI's diligence, nor does it contend

the outcome would be different if that a reduction to practice occurred in July of 2012 instead of

May. Nor could CogniPower do so on summary judgment—diligence is a fact-intensive inquiry,

and no period between conception and reduction to practice is per se unreasonable.

A reasonable jury could find PI reduced the invention to practice in May of 2012. Even

accepting CogniPower's argument about a July 2012 reduction to practice, there is ample evidence

that PI diligently reduced its invention to practice (even if after May or in July 2012). Either way,

Omni is prior art under § 102(g), and summary judgment is improper. *Fox*, 700 F.3d at 1304.

### C.    OmniSwitch Was Not Abandoned, Suppressed, or Concealed, and Disputes of Fact Preclude Summary Judgment.

CogniPower's argument that OmniSwitch was actively suppressed or concealed misapplies

the law and ignores contrary evidence. The question of whether an invention was actively

suppressed or concealed is fact-intensive, and no length of delay is per se unreasonable. *Flex-Rest,*

*LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1359 (Fed. Cir. 2006). Here, the facts overwhelmingly

show the OmniSwitch invention was not suppressed or concealed, actively or otherwise; PI filed patent applications and released a commercial product embodying the prior invention. CogniPower's arguments that PI should have filed patent applications sooner and that PI maintains certain aspects of its designs as confidential are both immaterial as a matter of law. CogniPower's contention about the commercial release of InnoSwitch not being a disclosure of the OmniSwitch invention is factually wrong and certainly disputed. And CogniPower's contention about InnoSwitch not supporting a public disclosure of the prior invention because "the internal circuitry is not publicly visible" is wrong, misapplies controlling law and, at best, raises factual questions regarding what the public can discern about the InnoSwitch chip.

### 1.    PI Developed and Improved Its OmniSwitch Design and Ultimately Released It to the Public in a Commercial Chip.

There is extensive record evidence that PI reasonably and consistently pursued commercialization of its Omni invention and released a commercial embodiment, and thus PI did not actively suppress or conceal its invention. "Suppression and concealment come in two forms: (i) active or intentional suppression or concealment; and (ii) suppression or concealment inferred from an unreasonable delay in . . . making a public disclosure of the invention." *bioMérieux, S.A. v. Hologic*, No. 18-21, 2020 WL 759546, at *4 (D. Del. Feb. 7, 2020) (citing *Flex-Rest*, 455 F.3d at 1359–60). CogniPower alleges only intentional suppression. However, CogniPower's contention that PI should have immediately turned over to the public its internal documents reflecting ongoing design work finds no support in the law. Intentional suppression requires more than the passage of time and occurs only when an inventor "designedly, and with the view of applying it indefinitely and exclusively for his own profit, withholds his invention from the public." *Flex-Rest*, 455 F.3d at 1358; *Fujikawa v. Wattanasin*, 93 F.3d 1559, 1567 (Fed. Cir. 1996).

As an initial matter, "the law permits an inventor some time to develop, improve, and then

disclose her invention; it does not require immediate disclosure at the risk of a finding of abandonment, suppression, or concealment." *bioMérieux,* 2020 WL 759546, at \*4 (citing *Flex-Rest*, 455 F.3d at 1359). The law also does not dictate *how* the inventor discloses her invention. Commercializing an invention as a product is one way a prior inventor may show public disclosure and rebut allegations of suppression. *Fox*, 700 F.3d at 1306. In cases where the prior inventor discloses the invention by commercialization, the central inquiry is "whether the first inventor engaged in reasonable efforts to bring the invention to market." *Checkpoint*, 54 F.3d at 763. CogniPower neither acknowledges this standard nor applies it.

PI readily disclosed OmniSwitch to the public.



. *See, e.g.*, Ex. 72 (Log of OmniSwitch Tapeouts); Ex. 68 (Wei Inv. Rpt.) ¶ 127; Ex. 80 (Wei Reply Rpt.) ¶ 67. Beginning in late 2012, PI filed multiple patent applications on aspects of the OmniSwitch it believed were novel. *See* D.I. 303-05, Ex. 62; D.I. 301, (3).

Along the way, the project was renamed from OmniSwitch to InnoSwitch, and it was released to the public in November 2014. *Id.* at 16:6–14, 150:24–151:4. Contrary to CogniPower's allegation, there is no evidence PI intended to delay making the OmniSwitch invention public. Rather, PI's witnesses explained that what they were bringing to market was revolutionary and that it took effort to implement the invention in a full-featured, commercial IC: "it was a lot of hard work." *See id.* at 15:9–19, 186:15–187:6.

19

PI's efforts to commercialize its invention over two and a half years is consistent with many

other cases finding no suppression or concealment. *See Dow Chem. Co. v. Astro-Valcour, Inc.*, 267

F.3d 1334, 1343–44 (Fed. Cir. 2001) (finding prior inventor did not suppress invention when it

publicly disclosed it after two and a half years by commercializing it); *Fox*, 700 F.3d at 1306

(affirming prior inventor had not abandoned, suppressed, or concealed invention despite not

commercializing it for nine years after reduction to practice); *see also bioMérieux*, 2020 WL

759546, at *6 (denying summary judgment under § 102(g) where a reasonable factfinder could

consider efforts to bring invention to market through commercialization over four years); *Benedict

v Gen. Motors Corp.*, 184 F. Supp. 2d 1197, 1201–02 (N.D. Fla. 2002) (four years between

conception and public disclosure not unreasonable).

CogniPower's reliance on *Lutzker v. Plet*, 843 F.2d 1364, 1368 (Fed. Cir. 1988), to suggest

PI's commercialization efforts do not refute a claim of suppression or concealment because "when

the activities which cause the delay go to the commercialization of the invention, the delay will

not be excused," is predicated on a misapplication of *Lutzker* that the Federal Circuit explained in

succeeding cases. For example, in *Flex-Rest*, the Federal Circuit explained that *Lutzker* was an

interference case that addressed priority between two patent applicants, where the prior inventor

"disclos[ed] a prior invention only by filing a patent application" and thus *Lutzker* does not apply

where "public disclosure occurred by bringing the invention to market." 455 F.3d at 1360; *Dow

Chem.*, 267 F.3d at 1343 (also distinguishing *Lutzker* from cases in which an invention is disclosed

to the public by commercialization); *Checkpoint*, 54 F.3d at 762–63 (same).

CogniPower does not contend that PI's efforts to bring the OmniSwitch invention to market

were unreasonably slow, nor does it contend that the time between invention and release of the

commercial InnoSwitch chip was inconsistent with industry norms. Thus, a reasonable jury could

find that PI did not actively abandon, suppress, or conceal its prior invention because it engaged in reasonable steps to bring its revolutionary product to market.

### 2. The Timing of PI's Patent Filings and PI's Confidential Designation of Internal Design Files Do Not Show Active Concealment.

CogniPower's next argument—about the timing of PI's OmniSwitch-related patent applications and whether PI "publicly disclosed critical information concerning the OmniSwitch," D.I. 298 at 16—is non-dispositive as a matter of law and raises factual disputes. PI disclosed the invention through commercialization and *also* filed patent applications regarding its invention; as noted, the law does not mandate any specific manner of public disclosure under § 102(g). Nor is an inventor required to disclose its internal design documents showing conception and reduction to practice either before or after it releases a commercial product embodying the invention.

#### (a) The Timing of PI's Patent Filings Raises Fact Questions.

A prior inventor may show that she did not abandon, suppress, or conceal her prior invention through reasonable commercialization efforts that bring the benefits of its prior invention to the public, regardless of whether that prior inventor *also* files a patent application. *E.g.*, *Fox*, 700 F.3d at 1306; *Flex-Rest*, 455 F.3d at 1360; *Dow Chem.*, 267 F.3d at 1343; *Checkpoint*, 54 F.3d at 762; *see also RMDI, LLC v. Remington Arms Co.*, 838 F. Supp. 2d 1248, 1255 (D. Utah 2012); *Teva Pharm. Indus. Ltd. v. AstraZeneca Pharms. LP*, 748 F. Supp. 2d 453, 470–71 (E.D. Pa. 2010). "Section 102(g) does not impose a duty on a prior inventor to use the patent system, or penalize a prior inventor who does not use the patent system, so long as the invention is brought to the public via other means." *bioMérieux*, 2020 WL 759546, at *5. Here, however, PI disclosed the invention by commercialization *and* by filing patents covering its OmniSwitch work.

The timing of PI's patent applications is also not dispositive because intentional suppression or concealment can only be found when the inventor intends to withhold the invention

"indefinitely."  *Flex-Rest*, 455 F.3d at 1358; *Fujikawa*, 93 F.3d at 1567.  Here, CogniPower

concedes PI filed applications on the OmniSwitch invention (in addition to releasing a commercial

product).  *See* D.I. 298 at 21; D.I. 301 at (3), (10).  Indeed, CogniPower concedes that PI began

filing applications just six months after the May 2012 OmniSwitch tapeout.  *Id.*  CogniPower also

notes that PI continued to file several more Omni-related patent applications over the next several

months.  D.I. 301 at (3).  CogniPower also acknowledges the PI testimony explaining that PI filed

applications even before the original InnoSwitch chips based on OmniSwitch were sampled to the

outside world.  *Id.* at (5).  This all refutes CogniPower's fanciful argument about PI intending to

keep its invention secret indefinitely.  And CogniPower cites no law that filing patent applications

mere months after reduction to practice could somehow evidence active concealment.

> **(b)    That PI Maintains Confidentiality Over Its Internal Design
> Files Is Irrelevant.**

CogniPower also wrongly focuses on PI's designation of its internal design files as

confidential; that fact is irrelevant.  Section 102(g) requires public disclosure of the invention

through one, not every, way.  Because the invention was disclosed to the public through a

commercial product, additional disclosure through PI's sensitive business materials is not required.

*See bioMérieux*, 2020 WL 759546, at *6–8; *Benedict*, 184 F. Supp. 2d at 1202 n.11.

CogniPower argues that ████████████████████████████████████

████████████████████████████████  D.I. 298 at 15–16.  Even if true, that fact is

unsurprising of a company actively seeking to commercialize its invention.  Courts have thus

rejected the same argument CogniPower raises here.  In *Benedict*, for example, GM had conceived

the invention before the asserted patent filing and had made no public disclosure except through

commercialization.  184 F. Supp. 2d at 1202 n.11.  Because GM marked its documents describing

the invention as confidential and "took affirmative and sometimes elaborate steps to restrict access

to such materials," the plaintiff argued that GM concealed the invention.  *Id.*  The district court
noted that, under Federal Circuit law, "merely keeping an invention confidential for the time
reasonably required to bring it to market is not abandonment, suppression or concealment within
the meaning of § 102(g)."  *Id.*  The district court further reasoned: "If the first inventor is not
required to disclose the invention until it is brought to market at a reasonable pace, then it makes
no difference whether, in the interim, the inventor exercises his or her prerogative not to disclose
. . . ."  *Id.*; *see also bioMérieux,* 2020 WL 759546, at *7 n.8 (marking sensitive business information
as "confidential" is "common and is not tantamount to suppression or concealment").
CogniPower's contention that PI was required to provide a pre-commercialization sneak peek of
its invention to refute a finding of concealment is illogical and legally unsound.

CogniPower is also wrong in pointing to PI continuing to keep its sensitive design files
confidential.  D.I. 298 at 16.  Once disclosed through commercialization of the InnoSwitch chip,
PI was not required to further disclose its invention through other means.  The question is "whether
the public has gained *knowledge of the invention*."  *Palmer v. Dudzik*, 481 F.2d 1377, 1387
(C.C.P.A. 1973) (emphasis in original).  "Public use of the invention, without disclosing the details
of it, is sufficient to negate any intention to abandon, suppress or conceal."  *Friction Div. Prod.,
Inc. v. E.I. DuPont de Nemours & Co.*, 658 F. Supp. 998, 1014 (D. Del. 1987), *aff'd sub nom.*, 883
F.2d 1027 (Fed. Cir. 1989).  Indeed, this Court has explained that "[m]aking the invention publicly
known requires only that the public enjoy the *benefits* or the use of the prior invention" and not
that all conceivable evidence supporting the invention be made publicly available.  *bioMérieux*,
2020 WL 759546, at *7 (quoting *Friction*, 658 F. Supp. at 1014 (emphasis in original)).

### 3.    PI Made the OmniSwitch Invention Public Through the Commercial Release of InnoSwitch.

CogniPower next argues that the commercial release of InnoSwitch cannot create a genuine

23

issue of fact regarding public disclosure of OmniSwitch because (1) InnoSwitch is not called OmniSwitch and (2) the commercially released chip is packaged such that the internal circuits are not visible. Neither argument has merit. The evidence establishes that PI changed the name of OmniSwitch to InnoSwitch before commercial release. And the InnoSwitch chip indeed made the OmniSwitch invention publicly known under established precedent and, regardless, fact questions exist regarding what claimed features can be discerned from the commercial product.

### (a)    InnoSwitch Was The Commercial Release Of OmniSwitch.

CogniPower's first argument is again semantic. The internal OmniSwitch codename used to refer to the project leading up to the release of a commercial controller IC product is indeed synonymous with InnoSwitch. PI's witnesses explained that before the commercial product was released, the controller IC was renamed from OmniSwitch to InnoSwitch. *Supra* page 8. Contrary to CogniPower's allegations, PI's expert, Dr. Wei, also tethers the OmniSwitch invention to the commercial InnoSwitch release. *E.g.*, Ex. 68 (Wei Inv. Rpt.) § VII.A ("Invalidity Based on PI's Prior Invention of OmniSwitch/InnoSwitch"); ¶ 123 ("In my opinion, the Asserted Claims of the '031 and '713 Patents are anticipated by [PI's] prior invention of OmniSwitch/InnoSwitch."); ¶ 127 ("the controller IC had been renamed from OmniSwitch to InnoSwitch.").

Indeed, CogniPower's counsel previously recognized and affirmatively argued to the Court that the names "OmniSwitch" and "InnoSwitch" refer to the same controller IC. *See* Ex. 95 (12/12/24 Hrg. Tr.) at 43:15–19 ("The OmniSwitch prior art is -- has the name OmniSwitch InnoSwitch. It's the same name. If you go to slide 38, we didn't just ask for all sims for flux link which is what they were asking about. We asked for all sims for all InnoSwitch models, which is OmniSwitch . . . ."); *see also* Ex. 92 (Wei) at 159:7–9 (referring to the "InnoSwitch test chips").

The originally released InnoSwitch chip is the commercial embodiment of the OmniSwitch invention. By any other name, it would still be the same invention. And the fact that the

commercially sold IC chip differs in some respects from the May 2012 tapeout of the invention—that they are not indeed identical because PI added more features before launching the product—is sensible. CogniPower's suggestion that *any* distinction matters is legally incorrect. At best, CogniPower raises a fact question.

### (b)    InnoSwitch Disclosed the Invention to the Public.

CogniPower's argument about PI's commercial release of InnoSwitch and whether the relevant features are discernible through visual inspection is also wrong. CogniPower asks too much as a matter of law and raises numerous questions of fact that preclude summary judgment.

The law requires only that the public "received the benefit" of the invention through commercial use, and courts in this district have expressly rejected CogniPower's "inner workings" argument. *See bioMérieux*, 2020 WL 759546, at *7; *Friction*, 658 F. Supp. at 1014. The public received the benefit of the invention when InnoSwitch was released; nothing more was required.

Even under CogniPower's improper "inner workings" standard, there is still a genuine dispute of fact regarding what InnoSwitch discloses. As an initial matter, CogniPower does *not* contend the relevant features cannot be discerned through reverse engineering. *See Apotex USA v. Merck & Co.*, 254 F.3d 1031, 1039 n.3 (Fed. Cir. 2001) (fact that the salient features can be reverse-engineered refutes suppression or concealment); *see also bioMérieux*, 2020 WL 759546, at *7–8 (reasonable juror could find no concealment where public could reverse-engineer the claimed features from the public disclosure); *Sabasta v. Buckaroos, Inc.*, 507 F.Supp.2d 986, 1001–02 (S.D. Iowa 2007) (denial of summary judgment due to disputed issue of fact about whether publicly sold product enabled one skilled in the art to know the invention through reverse-engineering). This case is thus nothing like the unpublished *Sunoco Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC* case, where the prior inventor never filed any patent applications, actively concealed the invention's details through confidentiality agreements, and the *system itself* was not

visible to the public because it was located in a secured facility, surrounded by a barbed wire fence, and largely underground.  No. 17-1390, 2020 WL 9438750, *4 (D. Del. Feb. 20, 2020).

Moreover, as CogniPower concedes, InnoSwitch was released with public data sheets explaining its features and operation.  CogniPower does not argue that those data sheets cannot be considered when determining what InnoSwitch publicly disclosed.  Nor could it.  *Cf. IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 518–19 (D. Del. 2022) (finding a defendant may "establish anticipation by using several documents that reveal how a single prior art system works"); 3 Annotated Patent Digest § 17:141.50 ("When anticipation is based on the public use of prior art device, i.e., the physical thing, a challenger may rely on . . . multiple documents . . . to show that the single prior art device, when used publicly, contained all of the claim limitations.").  Those data sheets undeniably disclose to the public numerous internal features and functions of InnoSwitch, regardless of what may be readily discerned from a visible inspection of the chip itself (or reverse engineering).  Indeed, CogniPower's own evidence acknowledges that the data sheets contain information "to show some of the basic ideas about how the IC works."  D.I. 301 at (14).

CogniPower contends the public data sheets describing InnoSwitch "only include block diagrams that are insufficient to determine the detailed features/operations of the chip."  But the mere fact that unclaimed features may not be described in detail is irrelevant as a matter of law.  CogniPower cannot "negate" public use by showing "unclaimed aspects . . . were not publicly available."  *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed. Cir. 1997) (emphasis in original).  And CogniPower does not identify any *claimed* features not discernible from the data sheets, and it certainly does not identify any lack of dispute over whether the data sheets lack any features relevant to the claims.  Indeed, CogniPower throughout this case has relied heavily, and at times exclusively, on public InnoSwitch3 data sheets to support its own infringement allegations.

26

*E.g.*, D.I. 1 ¶¶ 39–49 (relying solely on public PI data sheets to allege infringement); Ex. 93 (Contentions) at 1–21 (relying solely on public data sheet and photographs to allege infringement); Ex. 94 (Ricketts Op. Rpt. Appx. 1) at 1–145 (relying extensively on public data sheets). Thus, CogniPower has shown through its own actions that, at a minimum, there are issues of fact regarding whether sufficient information about the OmniSwitch invention was available to the public in data sheets (even under CogniPower's incorrect "inner workings" legal standard).

Finally, neither *TQP Dev., LLC v. Intuit Inc.*, 2014 WL 2809841 (E.D. Tex. June 20, 2014) ("*TQP I*") nor *TQP Dev., LLC v. 1-800-Flowers.com, Inc.*, 120 F. Supp. 3d 600 (E.D. Tex. 2015) ("*TQP II*") supports a finding of summary judgment of no invalidity here. Neither decision found suppression or concealment as a matter of law. The court in *TQP I* denied *an accused infringer's* motion for summary judgment of invalidity based on § 102(b) because the evidence suggested the prior invention was kept confidential as a trade secret, and the inventor testified that he had "no evidence one way or the other" as to whether that invention was ever officially released to the public. *See* 2014 WL 2809841, at *6. The court in *TQP II* upheld *a jury verdict* of no invalidity, viewing the evidence "in a light most favorable to the jury's verdict," when there was evidence the prior inventors took affirmative steps to ensure the prior invention was not made public, through NDAs, confidentiality agreements, and noncompete agreements. 120 F. Supp. 3d at 610–11. No such facts are present here, and all inferences must be drawn in favor of PI/Anker in any event.

A reasonable juror could find that PI's reasonable steps to commercialize the OmniSwitch invention, and PI's disclosure of the InnoSwitch chip (and its data sheets), as well as its filing of multiple patent applications just months after the May 2012 tapeout, all demonstrate that PI did not intentionally suppress or conceal its invention.

**D.    The Court Should Not Enter Summary Judgment on "Infringement" of a Subset of Claim Elements.**

The Court should deny CogniPower's request for summary judgment of "infringement" of isolated claim elements for three reasons: (1) CogniPower's request is not permitted by Rule 56; (2) the elements at issue are intertwined with elements that CogniPower concedes are disputed; and (3) PI and Anker are entitled to put CogniPower to its burden of proof.

*First*, CogniPower's motion for "partial" summary judgment fails because one cannot "infringe" a single claim limitation.  Infringement must be assessed by considering the claim "as a whole," not in parts.  *Gen. Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1274 (Fed. Cir. 1992); ("[O]ne cannot properly speak of any single step as being 'claimed,' for it is not.").  Thus, "[s]ummary judgment is an improper avenue for determination of this specific, single element of a party's cause of action."  *Stross v. Hearst Commc'ns, Inc.*, No. 18-01039, 2020 WL 5250580, at *4 (W.D. Tex. Sept. 3, 2020); *accord Schiff v. Barrett*, No. 10-1051, 2011 WL 6963096, at *21 (N.D. Cal. Sept. 8, 2011) ("Rule 56(g) does not authorize a party to bring an independent motion to establish certain facts as true.")

Moreover, "[a]n accused device cannot infringe, as a matter of law, if even a single limitation is not satisfied."  *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1349 (Fed. Cir. 1998).  Thus, PI and Anker can defeat summary judgment of infringement by demonstrating a dispute of material fact as to just one element of each claim.  In that case, the Court should not even consider whether other elements are satisfied.  *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991) ("Since the failure to meet a single limitation is sufficient to negate infringement of the claim, we will limit our analysis accordingly.").

Here, CogniPower admits that PI and Anker have submitted evidence disputing at least the "demand pulse," "rectifier," and "gating" elements.  D.I. 298 at 22.  Thus, CogniPower's request

for an "element-by-element determination" of infringement on summary judgment is "not appropriate." *Finjan Inc. v. Blue Coat Sys., Inc.*, No. 13-3999, 2015 WL 3630000, at *14 (N.D. Cal. June 2, 2015). Courts in this District routinely deny motions for summary judgment of "partial" infringement, even where only one limitation is disputed; they similarly do not grant summary judgment of "infringement" as to individual limitations, even when undisputed. *E.g.*, *Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*, No. 17-1390, 2020 WL 410633, at *6 (D. Del. Jan. 16, 2020) ("The Court finds that there is a genuine dispute of material fact with respect to this limitation, rendering summary judgment of infringement unwarranted."), *report and recommendation adopted in relevant part*, No. 17-1390, 2020 WL 3060458, at *3 (D. Del. June 9, 2020). CogniPower's motion would not simplify any issue for trial because, regardless of how this motion is resolved, CogniPower still must show that each claim "as a whole" is infringed. CogniPower's motion fails for this reason alone.[4]

*Second*, the claim elements that CogniPower admits are disputed are necessary to evaluate whether the other claim elements are practiced. *See* Ex. 96 (Wei N.I. Rpt.) ¶ 24 (reproducing independent claims). For example, without establishing the presence of a "demand pulse," CogniPower cannot establish "a demand pulse generator galvanically connected to the secondary winding and configured to generate *demand pulses* applied via the galvanic isolation circuitry to the switch to adjust a frequency of the commutation of the input power to supply a desired amount of voltage or current to the load." *Id.* (emphasis added). It would be misleading and prejudicial in the extreme for CogniPower to be able to tell the jury that the Court had found "infringement" of isolated claim elements without considering the claims as a whole.

---

[4] CogniPower's cited cases are not to the contrary. While *SynQor* and *Autoliv* appear to address single claim elements, they do not discuss the propriety of doing so on summary judgment.

*Third*, PI and Anker are entitled to put CogniPower to its burden of proving infringement. The jury could find CogniPower's expert unpersuasive in establishing infringement of any claim "as a whole," even if PI and Anker and their expert do not choose to spend trial time negating particular elements. An accused infringer may, instead, rely on the patentee failing to meet its "ultimate burden of proof to demonstrate infringement by a preponderance of the evidence." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008). Naturally, "the burden remains with the patentee to prove infringement, not on the defendant to disprove it." *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1095 (Fed. Cir. 2008). Therefore, summary judgment of infringement is not automatically required if an accused infringer does not proffer rebuttal expert testimony. *See Moleculon Rsch. Corp. v. CBS, Inc.*, 793 F.2d 1261, 1270 (Fed. Cir. 1986) ("We have never *required* a party to proffer expert testimony . . . on application of claim language to accused devices.") (emphasis in original), *abrogated on other grounds by BASF Corp. v. SNF Holding Co.*, 955 F.3d 958 (Fed. Cir. 2020).[5]

### E.     The Court Should Deny Summary Judgment on PI's Counterclaims.

CogniPower's motion for summary judgment is an improper an attempt to litigate—yet again—the motion to dismiss that this Court denied. *See* D.I. 120 (order denying first motion to dismiss); D.I. 178 (opposition to second motion to dismiss). PI has more than adequately established a dispute with CogniPower based on CogniPower's assertion that *all* users of PI InnoSwitch chips infringe. *See* D.I. 59 at 3 (finding that CogniPower asserts its patents "can be mapped to any power converter containing any [PI] InnoSwitch controller").

In addition, it was not necessary for PI to seek discovery regarding customers besides Anker because the Court has found that PI's "chips lie at the heart of CogniPower's infringement

---

[5] Again, CogniPower's cases are not to the contrary. *Fortinet* and *Chiron* do not hold that expert testimony is always required; they merely find no material disputes on their particular facts.

claims." *Id.*  Thus, by proving that the accused "cycle requests" in the InnoSwitch chips are not the claimed "demand pulses," for example, PI can establish that no power converter based on an InnoSwitch infringes.  *See* D.I. 285 at 7–14 (MSJ explaining noninfringement).  In addition, the record contains evidence of at least one other customer, namely Samsung, CogniPower accuses of infringement based on use of PI's InnoSwitch chips.  *See* D.I. 28 at 2.  Thus, PI is entitled to seek a declaratory judgment of noninfringement, and CogniPower's motion should be again denied.

F.    **The Court Should Deny Summary Judgment on Affirmative Defenses.**

PI and Anker have more than sufficient evidence to take their affirmative defenses to trial.

***First***, as to prosecution estoppel, CogniPower made significant disclaimers to distinguish prior art, including U.S. Patent No. 5,498,995 to Szepesi, which disclosed "PWM pulses."  *See* D.I. 285 at 6–7.  In fact, this Court has already found a disclaimer.  *See* D.I. 292-1 (2/25/21 Hrg.) at 38:20–23 ("CogniPower's repeated statements that the demand pulse control only the on time of the primary side switch and not the off time are clear and unambiguous and they therefore constitute a binding disclaimer").  Should CogniPower be permitted to argue doctrine of equivalents, which it should not be (*see* D.I. 285 at 20–21), PI and Anker will respond with prosecution history estoppel.

***Second***, as to laches, equitable estoppel, and unclean hands, the record establishes that

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████.  And PI declined to sign an NDA or receive any confidential information, so none was disclosed.  *Id.*

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████



. *See* D.I. 93-1.

These facts are more than sufficient to establish unclean hands and equitable estoppel. Unclean hands is an equitable doctrine "rooted in the historical concept of courts of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith" and requires that parties "have acted fairly and without fraud or deceit as to a particular issue." *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 814–15 (1945). As such, courts have flexibility in determining whether and how the doctrine of unclean hands should be applied. To be sure, the Court can find that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ qualifies. The same is true for equitable estoppel, because CogniPower led PI to believe it would not be sued, and this caused harm to PI's customer relationships by delaying PI's efforts to clear its products of the taint of alleged infringement. *See John Bean Techs. Corp. v. Morris & Assoc., Inc.*, 887 F.3d 1322, 1326 (Fed. Cir. 2018) (cited by CogniPower, listing elements of equitable estoppel and reversing grant of summary judgment).

These defenses should be presented to the jury. *See, e.g., Pom Wonderful LLC v. Tropicana Prods., Inc.*, 09-566, 2010 WL 11519185, at *2 (C.D. Cal. Nov. 1, 2010) (allowing facts underlying unclean hands defense to be presented to jury); *Innovation Ventures, LLC v. NVE, Inc.*,

08-11867, 2016 WL 266396, at *3–4 (E.D. Mich. Jan. 21, 2016) (granting "Defendant's motion to present its unclean hands and equitable estoppel to the jury"); *Abbott Point of Care, Inc. v. Epocal, Inc.*, 868 F. Supp. 2d 1310, 1317–18 (N.D. Ala. 2012).

As to laches, Anker will not assert this defense for alleged infringement during the 6-year period prior to the complaint. However, laches would apply if CogniPower ever decides to sue PI.

Thus, the Court should deny CogniPower's motion regarding affirmative defenses.

### G.   The Court Should Not Exclude the Opinions of Technical Expert Dr. Wei.

#### 1.   The Court Should Deny CogniPower's Request to Exclude all of Dr. Wei's Opinions About OmniSwitch.

In seeking to exclude "Dr. Wei's entire discussion of the OmniSwitch," D.I. 298 at 30, CogniPower mischaracterizes both the law and the scope of his opinions about PI's prior invention.

CogniPower is wrong to suggest PI needs a single document disclosing each claim element. *Id*. at 28–29. CogniPower conflates the legal standards for anticipation based on a single prior art *reference* under § 102(a) and anticipation based on another's prior *invention* under § 102(g).[6] Whereas a "determination that a patent is invalid as being anticipated under 35 U.S.C. § 102 requires a finding that 'each and every limitation is found either expressly or inherently in a *single prior art reference*,'" a "determination that a patent is invalid for prior invention under 35 U.S.C. § 102(g) requires a showing of . . . prior *conception* coupled with reasonable diligence in reducing the invention to practice." *Zevo Golf Co., Inc. v. Karsten Mfg. Corp.*, 47 Fed. Appx. 933, 936 (Fed. Cir. 2002) (emphases added, citations omitted). In other words, the question under § 102(g)

---

[6] *See also Thomson, S.A. v. Quixote Corp.*, 166 F.3d 1172, 1175 (Fed. Cir. 1999) ("We have interpreted . . . subsection 102(g) to permit qualifying art to invalidate a patent claim even if the same art may not qualify as prior art under other subsections of § 102."). CogniPower's cited cases are inapplicable because they concern whether a prior art *patent* or *patent application* discloses each claim element, not whether another inventor conceived of the invention first under § 102(g). *Therasense, Inc. v. Becton, Dickinson*, 593 F.3d 1325, 1332–33 (Fed. Cir. 2010); *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 437 (D. Del. 2004).

is whether PI's inventors *conceived* of the subject matter before CogniPower's priority date (and then diligently reduced it to practice), not whether they recorded that conception in a single document that could stand on its own as an invalidating prior art reference under § 102(a).

There is no requirement that prior *conception* of the claimed subject matter be "corroborated in a single document." *Cf. Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1354 (Fed. Cir. 2007) (discussing district court's admitted error in instructing the jury that prior conception under § 102(g) "must be corroborated in a single document"). Instead, a "'rule of reason' analysis is applied to determine whether an inventor's testimony . . . has been corroborated." *Sandt Tech., Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001) (citation omitted). "In applying the 'rule of reason' test, '*all pertinent evidence*' is examined in order to determine whether the 'inventor's story' is credible," and "[e]ach corroboration case must be decided on its own facts with a view to deciding whether the evidence *as a whole* is persuasive." *Id.* (emphases added, citations omitted).

Whether the PI inventors conceived of the subject matter of the asserted claims before CogniPower is an issue for the jury, and Dr. Wei's technical opinions are directly relevant to that issue. Dr. Wei provides a detailed analysis of OmniSwitch development documents corroborating that the OmniSwitch invention satisfies each element of (i.e., anticipates) the asserted claims. Indeed, Dr. Wei discusses evidence showing prior conception of each claim element ████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Ex. 68 (Wei Inv. Rpt.) at ¶¶ 123–28; Ex. 81 (Wei Inv. Rpt. Ex. 1A); Ex. 82 (Wei Inv. Rpt.  Ex. 1B).

As discussed in Section III.B.2, CogniPower's argument that ████████████████ ████████████████████████████████████████████████████████████████████████" (D.I.

34

298 at 27) is based on misleading semantics and selective citations to Dr. Wei's deposition transcript, and in any event, is wrong.



Dr. Wei's opinions are directly relevant to whether the PI inventors conceived of each element of the asserted claims before CogniPower's priority date of July 3, 2012.

Finally, Dr. Wei's technical opinions regarding the PI inventors' prior *conception* as of May 2012 are relevant regardless of when a physical reduction to practice occurred. Dr. Wei is not a fact witness and need not offer a technical opinion on every subsidiary issue related to invalidity under § 102(g) for his opinions about the PI inventors' prior *conception* to be relevant. Regardless, the entire point of a tapeout is to build physical chips and test them, and as Dr. Wei explained in his report and at his deposition,[7] he *did* consider contemporaneous evidence

---

[7] *See, e.g.*, Ex. 92 (Wei Dep.) at 100:5-15, 102:15–18                    ; Ex. 80 (Wei Reply. Rpt.) ¶¶ 95–96.



D.I. 298 at 29–30.

### 2. Dr. Wei's Opinions Are Not Contrary to the Court's Construction of the "Rectifier" Limitations.

Dr. Wei does not advance opinions that are contrary to the Court's construction of the "rectifier" limitations, as CogniPower alleges. CogniPower's motion conflates two different technical issues: (1) whether current flows through the "rectifier" whenever *the primary switch* is on during a switching cycle, and (2) whether current flows through the "rectifier" when *the rectifier itself* is forward biased. The materials CogniPower cites from the claim construction proceedings relate to the former, and the testimony CogniPower cites from Dr. Wei relates to the latter.

During claim construction, Anker proposed constructions for these terms requiring, in part, that the claimed rectifier be "oriented to allow current to flow through it . . . whenever *the primary switch* is on during the switching cycle." D.I. 64-1 at 3-4 (emphasis added). The Court declined to adopt Anker's proposal, finding the specification does not suggest, and prosecution history does not unmistakably require, that the current through the rectifier be "simultaneously and continually related to the status of the *primary side switch*." Ex. 103 (Markman Hrg.) at 57:9–12 (emphasis added). The Court ruled these terms would be given their "plain and ordinary meaning" and noted

that the parties' experts could address whether the "application or identification of something in the real world . . . meets that meaning" if there is a dispute. *Id.* at 41:18–43:4.

Here, Dr. Wei disputes ██████████████████████████████████



But there is nothing inconsistent between Dr. Wei's opinion and the cited claim construction material, which relates to the separate issue of whether the "rectifier" must conduct whenever the primary-side switch is on.

### 3. Dr. Wei Does Not Provide "Inconsistent" Positions for Non-Infringement and Invalidity.

CogniPower is likewise incorrect in suggesting any inconsistencies in Dr. Wei's positions on the rectifier limitations. Dr. Wei's opinion could not be clearer:



. Ex. 96 (Wei NI Rpt.), ¶¶ 82-110. This is one reason why power supplies with PI's InnoSwitch, InnoSwitch3, and InnoSwitch4 ICs do not infringe.

---

[8] As explained in PI's Motion, Dr. Ricketts' opinions should be excluded because CogniPower never identified this transistor in its operative infringement contentions, and CogniPower was denied leave to supplement its contentions to identify this transistor. D.I. 285 at 16-18.
[9] Notably, CogniPower does not point to anything in the reply report of its expert Dr. Ricketts disagreeing with Dr. Wei on this basic technical premise.

With respect to invalidity, Dr. Wei points out that *CogniPower* cannot have it both ways. PI had already developed the accused voltage regulator circuit (including the now-accused diode-connected transistor within it) and incorporated it into an early version of the products called "OmniSwitch" before the priority date of the Asserted Patents. ██████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████

CogniPower is correct that claims must be "given the same meaning for purposes of both validity and infringement analyses." D.I. 298 at 33. However, CogniPower is the one attempting to violate this principle— ████████████████████████████████████████
████████████████████████████████████████████████████████

[10] ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████    Dr. Wei's contingent opinion is not

"inconsistent," and is entirely proper under the law.  *See*, *e.g.*, *Ocean Innovations, Inc. v. Archer*,

145 Fed. Appx. 366, 371 n.3 (Fed. Cir. 2005) (finding "nothing inconsistent" in the defendant's

argument that "that the Ultra did not infringe, but that if the Ultra was found to infringe, then the

'833 patent is invalid under section 102(g) on the basis of prior invention of the Ultra."); *see also*

*Gamevice, Inc. v. Nintendo Co.*, 18-1942, 2023 WL 7194871, at *3–4 (N.D. Cal. Oct. 31, 2023)

(finding a defendant can assert that an accused device does not infringe, while alternatively

asserting invalidity based on prior sales of the accused device).

## H. The Court Should Not Exclude the Opinions of Forensics Expert Mr. Cowen.

CogniPower's complaints about PI and Anker's forensic expert David Cowen are wholly

misplaced, and instead appear to be largely an effort by CogniPower to rely on an untimely and

unauthorized responsive expert report.  But CogniPower does not dispute that Mr. Cowen is an

expert in the field of digital forensic investigation, with over 25 years of experience.  Ex. 104

(Cowen Rpt.) at Appx. A.  He has testified on numerous occasions about these issues, and he

literally wrote the book on the issue of digital forensic investigations.  *Id.* at 4.  ████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████    CogniPower's motion should be denied.

As a preliminary matter, Mr. Cowen did not offer an opinion on intent, nor did he say that

████████████████████████████████████████████████████," as CogniPower

suggests in its brief.  So, all of CogniPower's arguments on that front are beside the point.

Beyond that, CogniPower is simply wrong ██████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

Despite a clear order from Judge Fallon, CogniPower did not permit a full forensic inspection of its native files.  During his inspection, ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████  The fact that CogniPower does not like the results of Mr. Cowen's investigation does not make it unreliable—CogniPower is welcome to cross-examine him at trial.

CogniPower also points to unrelated *PI* documents that were processed for production in

2020, but (unlike CP's SPICE files) none of the PI documents CogniPower mentions have been challenged for the veracity of their contents, and none are the subject of any forensic analysis. And the quotation CogniPower cherry-picks from prior briefing relates to a set of PI documents that were scanned for production in this case from paper copies in binders in 2020 (D.I. 298 at 36), which of course meant those PDFs would reflect a 2020 creation date. CogniPower's misdirection does not undermine Mr. Cowen's analysis ███████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

These conclusions are rationally based on Mr. Cowen's 25 years of experience and the analysis of CogniPower's files he was able to do with the access he was provided by CogniPower's counsel.

The facts of the *UGI* case are readily distinguishable. In *UGI,* the expert used a theory that was not peer reviewed or generally accepted, he based his method on anecdotal experience from his childhood, and the expert's testimony was unhelpful; for example, he said "I put this all in my little mixing bowl and I come up with what I thought was common sense reasonable." *UGI Sunbury LLC v A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 835 (3rd Cir. 2020). The expert in *UGI* even conceded that his theory couldn't be proven. *Id.* No such facts are present here. Mr. Cowen is an expert of longstanding repute in the field of digital forensics. He has testified and been accepted as an expert in the field in numerous cases throughout his career. And nothing in Mr. Cowen's testimony goes beyond the realm of his expert analysis based on the

limited forensic inspection he was permitted of the SPICE files CogniPower wants to rely on in this case. There is nothing unusual in the admission of expert testimony on digital forensics on facts like these. Ex. 104 (Cowen Rpt.) Appx. A; *Robocast, Inc v. Microsoft Corp*, 10-1055, 2014 WL 129800, at *1 (D. Del. Jan. 13. 2014) ("However, many jurors may indeed be confused by the concept of metadata, and Mr. Reisman's testimony may be helpful. The specific objections that Defendants raise in the briefing go to the weight of his testimony, not its admissibility"); *Hallmark Cards Inc. v. Monitor Clipper Partners*, 08-0840, 2012 WL 3047308 (W.D. Mo. July 25, 2012).

The real purpose behind CogniPower's challenge becomes apparent in the final paragraph, when CogniPower requests permission to rely on an untimely and unauthorized responsive expert report. CogniPower's request is a clear attempt to relitigate the schedule M.J. Fallon set for forensic work months ago. In December, Judge Fallon set a schedule for forensic inspections and a limited set of supplemental expert reports including Mr. Cowen's; that schedule did <u>not</u> provide for any further response from CogniPower. D.I. 257. CogniPower did not file any objection to that portion of the order, nor did CogniPower ask to do another report at that time. D.I. 265. Instead, CogniPower waited until February to wage its collateral attack on M.J. Fallon's prior order, first by raising the issue as a "discovery" dispute (D.I. 280), and also by making its backdoor effort here to introduce a further report. The Court should reject such gamesmanship. CogniPower is free to cross-examine Mr. Cowen, but none of CogniPower's complaints justifies the wholesale exclusion of PI's forensic expert. CogniPower's motion should be denied.

## I.    The Court Should Not Exclude the Opinions of Damages Expert Dr. McDuff.

### 1.    Dr. McDuff's Quantification of Power Savings Is a Proper Way to Value the Asserted Patents.

As described in Defendants' affirmative *Daubert* motion, CogniPower seeks damages based on a █████████████████████████████████████████████



D.I. 285 at 38 (quoting D.I. 296-04 Ex. 37 (Ricketts Op. Rpt. § VI) ¶ 226).

. Ex. 105 (McDuff Rpt.) ¶¶ 34, 147–55.

Although CogniPower seeks to exclude Dr. McDuff, CogniPower notably does *not* dispute the reliability or accuracy of Dr. McDuff's calculations.  This bears repeating: CogniPower does not assert that Dr. McDuff's calculations are wrong or unreliable—

CogniPower's argument is unpersuasive.

First, it is CogniPower, not Defendants, that identifies a reduction in standby power consumption as an alleged benefit of the Asserted Patents.  That reduction in standby power consumption is necessarily enjoyed by the *users* of the chargers (i.e., consumers) rather than by the manufacturer of the chargers (i.e., Anker).  It is inconsistent, at best, for CogniPower to seek damages based solely on a consumer-facing benefit, but then to argue that it is improper for those damages to be quantified by an actual measurement of that same benefit.

Second, and relatedly, CogniPower assesses damages ███████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████ Dr. McDuff directly quantifies the *actual* benefit.

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████

### 2.    Dr. McDuff Does Not Offer Improper "State of Mind" Opinions.

Both parties' experts assessed damages using a hypothetical negotiation—what royalty a reasonable licensee (Anker) and a reasonable licensor (CogniPower) would have agreed to had they negotiated a license shortly before infringement allegedly began.  In this case, the experts agree that would have taken place in September of 2018.  Ex. 105 ¶ 145a.  ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

None of the cases cited by CogniPower suggests that an expert cannot rely on a fact witnesses' own statements regarding patented technology.  In fact, one of the cases cited by CogniPower, *Singular Computing LLC v. Google LLC*, 2023 WL 8810187 (D. Mass. Dec. 20, 2023), holds the opposite.  There, the court explained that because "inferences about the intent or motive of parties or others lie outside the bounds of expert testimony," the expert's testimony was excluded "to the extent [he] purport[ed] to opine on the state of mind of Google employees."  *Id.* at *5–6.  *But* where that same expert also "directly quote[d] engineers' statements of their own feelings about the technology," the court held that he could "rely on the statements of Google's employees" and "use the Google internal e-mails to provide context for his permissible opinions." *Id.*  Here, Dr. McDuff is doing exactly what the *Singular* court said was acceptable.

**3.    Dr. McDuff Properly Relied on CogniPower's Own License Offers.**

CogniPower's contention ████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████ contradicts the very Federal Circuit precedent that CogniPower

cites.  In *Whitserve, LLC v. Computer Packages, Inc.*, the Federal Circuit "acknowledge[d] that proposed licenses may have some value for determining a reasonable royalty in some situations," but cautioned that the value could be limited because "patentees could artificially inflate the royalty rate by making outrageous offers."  694 F.3d 10, 29–30 (Fed. Cir. 2012).  In other words, not only did the Federal Circuit recognize that license offers can have value for determining royalties, it also stated that the primary reason why such offers may not have value in some cases is that they could artificially inflate royalties *in patentees' favor*.  Thus, as Dr. McDuff points out in his report, using CogniPower's own proposed license offers is, if anything, favorable to CogniPower.  Similarly, the other cases CogniPower cites all preclude experts *retained by the patentee* from using the patentee's offers made in anticipation of litigation.  Those cases are, thus, inapplicable.

CogniPower further argues that Dr. McDuff's testimony about the offers should be excluded because 

Ex. 107 (Dell Op. Rpt.) ¶¶123–24.  CogniPower cannot have it both ways, having its expert rely on CogniPower offers it likes while seeking to exclude Dr. McDuff from relying on other CogniPower offers.

Dr. McDuff spends nearly twenty pages in his report analyzing the CogniPower offers he relies on, weighing similarities and differences relative to the hypothetical negotiation (which can exert both upward and downward influence on the royalty rate), and explaining three different

calculations for the royalty base to account for alleged additional value added by Anker while apportioning to ensure an apples-to-apples royalty base.  Ex. 105 (McDuff Rpt.) ¶¶ 168–183.  Although CogniPower asserts ███████████████████████████████████████ ████████████████████ D.I. 298 at 42, an examination of Dr. McDuff's report shows the contrary.

██████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

Similarly, CogniPower asserts—again, without citation— ██████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

47

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

The cases CogniPower cites on this point are distinguishable because the licensing indicators discussed in those cases cover patents that are different from the asserted patents in those cases.  That is not the case here, ████████████████████████████████████

████████████████████████████████

4.    **Dr. McDuff's Reliance on CogniPower's Internal Licensing Communications Is Proper.**

As discussed *supra*, Dr. McDuff relies in part on CogniPower's own internal license projection and Mr. Lawson's statements about that projection.  Whereas CogniPower first sought to exclude those communications as "state of mind" opinions (discussed above), CogniPower also seeks to exclude those analyses based on the incorrect assertion that Dr. McDuff "████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████  Thus, Dr. McDuff has explicitly considered economic and technical comparability between technologies and parties.

48

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████

Finally, Dr. McDuff properly considers the rates discussed in CogniPower's documents alongside several other indicators as a check on his rates and analysis of the *Georgia-Pacific* factors, as well as in rebuttal to Mr. Dell's conclusion, rather than as a primary royalty indicator.

5.    **Dr. McDuff Properly Evaluates Industry Licensing Practices and Considerations Under *Georgia-Pacific* Factor 12.**

CogniPower's argument about industry-wide royalty surveys ignores that Dr. McDuff properly considers licensing practices within the context of GP factor 12, which deals with such industry customs and practices. █████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████ Dr. McDuff will not testify that these rates are independently probative of a reasonable royalty, as he opines that CogniPower's own licensing offers and other evidence are the best indicator of a royalty in this case, yet he has properly analyzed them consistent with the plain language of GP factor 12.

*LaserDynamics*, relied on by CogniPower, is distinguishable.  There, the expert (1) relied

on the survey rates as royalty indicators in place of actual agreements relating to the Patent-in-Suit, and (2) did so on behalf of the patentee in that matter. Here, Dr. McDuff has properly considered the surveys as part of an analysis of industry practices under GP factor 12 and relies primarily on CogniPower licensing evidence relating to the patented technologies.

### 6. Dr. McDuff Properly Considers Power Integrations' Patented Contributions as Relevant to Apportionment.

CogniPower's effort to exclude Dr. McDuff's opinions about PI's patented technologies that contribute to lower standby power consumption further illustrates CogniPower's concerted, improper effort to dismiss any evidence on the fundamental requirement of apportionment.

Contrary to CogniPower's assertion, at no point does Dr. McDuff rely on PI's patents to

███████████████████████████████████████████████████████████

█████████ Rather, as explained in Defendants' affirmative *Daubert* motion, Dr. McDuff relies on PI's patented technology to show that things other than the Asserted Patents *also* contribute to reduced standby power and that CogniPower failed to apportion for those other technologies. CogniPower's citations are thus distinguishable, as both involved experts who claimed defendants' patents were invalidating art (*Touchstream*) or that the existence of other patents meant the Asserted Patents did not cover the accused products (*Puma*). Dr. McDuff offers no such opinions. Instead, his opinions on apportionment are primarily to rebut Dr. Reed-Arthurs and Mr. Dell, who

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████. There is no substantial risk of confusion in Dr. McDuff's opinion that CogniPower failed to apportion, a bedrock principle of patent damages.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny all of CogniPower's motions.

Dated:  March 19, 2025

FISH & RICHARDSON P.C.

By: */s/ Warren K. Mabey, Jr.*

    Douglas E. McCann (No. 3852)
    Warren K. Mabey, Jr. (No. 5775)
    222 Delaware Avenue, 17th Floor
    Wilmington, DE  19801
    Telephone: (302) 652-5070
    Email:  dmccann@fr.com; mabey@fr.com

    Frank E. Scherkenbach
    Daniel H. Wade
    One Marina Park Drive
    Boston, MA  02210-1878
    Telephone: (617) 542-5070
    Email: scherkenbach@fr.com; wade@fr.com

    Brian P. Boyd
    1180 Peachtree Street NE, 21st Floor,
    Atlanta, GA 30309
    Telephone: (404) 892-5005
    Email: bboyd@fr.com

    Michael R. Headley
    500 Arguello Street, Suite 400
    Redwood City, CA 94063
    Telephone: (650) 839-5070
    Email: headley@fr.com

    John W. Thornburgh
    12860 El Camino Real, Suite 400
    San Diego, CA 92130
    Telephone: (858) 678-5070
    Email: thornburgh@fr.com

    **ATTORNEYS FOR DEFENDANTS**
    **FANTASIA TRADING, LLC D/B/A ANKERDIRECT**
    **AND ANKER INNOVATIONS LIMITED; AND**
    **INTERVENOR POWER INTEGRATIONS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 19, 2025, the foregoing document was served on the

attorneys of record, at the following e-mail addresses:

Brian E. Farnan
Michael J. Farnan
FARNAN LLP
<u>bfarnan@farnanlaw.com</u>
<u>mfarnan@farnanlaw.com</u>

Andrea Y. Choung
Jennifer Hayes
NIXON PEABODY LLP
DLNP-CognipowervAnker@nixonpeabody.com
<u>jenhayes@nixonpeabody.com</u>
<u>achoung@nixonpeabody.com</u>

Jason G. Sheasby
Michael Harbour
Jonathan M. Lindsay
IRELL & MANELLA LLP
<u>JSheasby@Irell.com</u>
<u>MHarbour@Irell.com</u>
<u>JLindsay@Irell.com</u>


  */s/ Warren K. Mabey, Jr.*
Warren K. Mabey, Jr.